John J. Harris (SBN 93841)
**CASSO & SPARKS, LLP**
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA  91746
jharris@cassosparks.com
Telephone:  626.269.2980

Attorneys for Creditor, Kings County Development Limited

# UNITED STATES BANKUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| In Re<br><br>TEMBLOR PETROLEUM COMPANY, LLC<br><br>       Debtor-in-Possession. | CASE NO.:  20-11367-A-11<br>Chapter 11<br><br>**DC No. LKW-6**<br><br>**OPPOSITION OF KINGS COUNTY DEVELOPMENT LIMITED TO DEBTOR'S MOTION FOR ORDER TO EXTEND TIME TO ASSUME OR REJECT EXPIRED OIL AND GAS LEASES**<br><br>**Date:** September 10, 2020<br>**Time:** 10:00 a.m.<br>**Place:** United States Courthouse<br>510-19th Street<br>Bakersfield, CA<br>**Judge:** Hon. Jennifer E. Niemann |

Creditor, Kings County Development Limited, submits the following opposition to the Debtor's "Motion for An Order To Extend Time To Assume Or Reject Expired Oil And Gas Leases".

///

**I.**

1

CASSO & SPARKS, LLP
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA 91746

# INTRODUCTION

There is no justification for extending the Debtor's time to assume or reject its oil and gas leases. This Chapter 11 bankruptcy sits dead in the water. Since the debtor, Temblor Petroleum Company, LLC ("Temblor" or "Debtor") filed for bankruptcy on April 7, 2020, five months ago, it was done nothing. Currently, the Debtor, an oil and gas producer, is conducting no oil and gas production operations. According to its Monthly Operating Report for July 2020, Temblor has received no revenue from any oil and gas production. It has no financial capability to resume production, nor any realistic ability to obtain any financing. Considering that the great majority of its creditors are the service companies which Debtor owes millions of dollars, it is unlikely that those companies will ever do business with Temblor again. As a result, Temblor most probably will never be able to resume oil and gas production operations.

Temblor has asked this Court to extend the time for it to assume or reject its oil and gas leases, which it describes as its "primary assets" until November 5, 2020. The fundamental assumption underlying its motion is that those leases, which require production in paying quantities, actually remain in effect. They do not.

Kings County Development Limited is the lessor under one of those oil and gas leases, located in the "Witter Field" in Fresno County, which was originally signed in October 2005. As with nearly every oil and gas lease in California, the KCDL Lease would only remain in effect after the primary term expired "for so long thereafter as oil, gas, hydrocarbons or other hydrocarbon substances are produced therefrom in paying quantities." The primary term of the KCDL Lease expired in October 2018. Temblor completed an unsuccessful well on the lease in early 2019. However, that well never produced oil and gas in paying quantities and the lease terminated by its own terms. In August 2018, KCDL demanded that Temblor quitclaim the lease in accordance with its terms and to plug and abandon the well. Temblor refused.

KCDL has now been waiting for more than year for its title to be cleared through a quitclaim from Temblor, so that it can lease the property to one or more other oil companies who actually have the financial and operational capability to drill for and produce oil and gas- a capability that Temblor simply does not have.

The case upon which Debtor primarily relies for its motion, *In re Perfectlite Co.,* 116 B.R. 84, 86 (Bankr. N.D. Ohio 1990), acknowledged that purpose of section 365(d)(4) of the Bankruptcy Code is 'to protect lessors ... from delay and uncertainty by forcing a trustee or a debtor in possession to decide quickly whether to assume unexpired leases." Debtor's motion to extend makes no effort to demonstrate good cause for an extension or satisfy factors set forth in *Perfectlite*.

In particular, Debtor has not demonstrated and cannot demonstrate that either the KCDL Lease, which terminated by its own terms more than a year ago, or any of the oil and leases identified in its schedules, are actually producing in paying quantities so that they would actually remain in effect. The acknowledged fact that Debtor is not currently producing and has not produced oil and gas for an extended period of time confirms that, in the very least, KCDL's lease has terminated by its own terms. Accordingly, there is no lease which the Debtor could assume or reject. The only thing left is Temblor's obligation to deliver a quitclaim and to plug and abandon the well drilled beneath KCDL's leasehold.

Nothing in the motion demonstrates that Debtor needs "additional time to act intelligently in making the judgment to assume or reject".

Nothing in the motion demonstrates that Debtor has "complied with its post petition obligations under the Lease pursuant to section 365(d)(3)".

Lastly, the motion fails to address the fact that Debtor's continued refusal to quitclaim the KCDL Lease is adversely affecting KCDL by delaying its opportunity to lease the property to one or more other oil and gas operators.

Debtor's motion presents no genuine justification for continuing to delay the progress of this case, and its inevitable conversion to Chapter 7. The fact that

CASSO & SPARKS, LLP
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA 91746

Temblor has been dilatory and apparently cannot accomplish anything in the five months since this filing is no excuse. Since Debtor's motion fails to meet the standard for an extension of time to assume or reject its oil and gas leases, its motion should be denied.

## II.
## FACTUAL BACKGROUND

KCDL, as lessor, and Temblor, as lessee, entered "Oil, Gas and Mineral Lease", dated October 3, 2005 ("KCDL Lease"), affecting a portion of the Northwest quarter (NW/4) of Section 21, Township 17 South, Range 17 East, M.D.B.&M. and covering 120.00 acres, more or less, situated in Fresno County, California, (the "Leased Land"), as more particularly described in such Lease. (Declaration of Douglas Donath. ¶ 2, Exhibit "A" [hereinafter, "Donath Decl. ¶ ___"]) That lease terminated over a year ago. (Donath Decl. ¶ 2 and 13.)

The KCDL Lease originally had a three-year primary term, and pursuant to the lease amendments, the primary term was extended, ultimately to October 5, 2018. (Donath Decl. ¶ 4.) The term of the KCDL Lease, as set forth in the Habendum clause of the lease, as amended, provides:

> "TO HAVE AND TO HOLD the same for a term of thirteen (13) years from and after the date hereof (hereinafter referred to as the "primary term"), subject, however, to the provisions of Section 5(a) below, ***and so long thereafter as oil, gas, hydrocarbons or other hydrocarbon substances are produced therefrom in paying quantities;*** or so long thereafter as Lessee shall, in good faith and with due degree of diligence hereinafter specified, conduct drilling (including without limitation, deepening, repairing, redrilling and reworking) operations on the leased land or be excused therefrom as in this lease provided, and should production result from such operations, this lease shall remain in full force and effect so long as oil, gas or other hydrocarbon substances shall be produced therefrom in paying quantities from a well or wells located on the leased land." (Emphasis added.)

"Paying quantities" is defined in the Habendum clause of the KCDL Lease, as amended, as follows:

CASSO & SPARKS, LLP
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA 91746

"The term "paying quantities", when used to extend the life of this Lease beyond the primary term (and in Section 5 of this Lease), means such quantities of hydrocarbon substances as are sufficient to return to Lessee a reasonable profit computed on not more than a six (6) months' basis after first repaying to Lessee all direct and indirect costs of operating all wells completed by Lessee on the leased land, plus all other operating costs (excluding cost of drilling and completing any wells, but including without limitation, taxes and assessments) payable by Lessee in respect of this Lease and its operations hereunder."

Section 5(b) of the KCDL Lease contains the following drilling requirement after a successful well is drilled on the leased land:

"<u>Drilling After Discovery</u>. If hydrocarbon substances are discovered in paying quantities in any well drilled by Lessee on the leased land, then Lessee shall, within one hundred eighty (180) days after the completion of such discovery well, commence drilling on the leased land of an additional well or wells as required and shall thereafter keep at least one (1) string of tools employed continuously, with not more than one hundred eighty (180) days intervening between the completion of one well and the commencement of drilling of another well, in diligently drilling wells to completion on the leased land, until not less than one (1) well shall have been completed as a producer on each Well Tract (as defined below)."

Accordingly, the Lease provided that it would expire by its own terms on October 5, 2018, unless (1) "oil, gas, hydrocarbons or other hydrocarbon substances are produced therefrom in paying quantities" as of that date; or (2) Temblor, as lessee, was conducting in good faith and with due degree of diligence drilling operations on the Leased Land, which resulted in the drilling and completion of a well which produced oil and gas in paying quantities; and, (3) thereafter, Temblor continued to produce oil and gas in paying quantities from one or more wells on the Leased Land.

In 2018, Temblor drilled its "Harnsich-McCormick No. 5" well ("HM #5 Well") to a bottom hole location on the Leased Land. However, the well failed to produce oil or gas in paying quantities. (Donath Decl. ¶10) Since Temblor's

5

**OPPOSITION OF KINGS COUNTY DEVELOPMENT LIMITED TO DEBTOR'S MOTION FOR ORDER TO EXTEND TIME TO ASSUME OR REJECT EXPIRED OIL AND GAS LEASES**

completion of the HM #5 Well, no new drilling operations were commenced by Temblor on the Leased Land within six months following the completion of that well. (Donath Decl. ¶12)

Since oil and gas has not been produced in paying quantities from the HM #5 Well, and is not currently being produced in paying quantities, and Temblor failed to commence drilling operations to drill a subsequent well, the KCDL Lease terminated for lack of production of oil and gas in paying quantities. (Donath Decl. ¶13)

On August 7, 2019, KCDL demanded, pursuant to Section 33 of the KCDL Lease, that Temblor immediately execute, acknowledge and deliver to KCDL a quitclaim deed in recordable form surrendering all of the lessee's interest under the KCDL Lease. KCDL further demanded that Temblor promptly plug and abandon the HM #5 Well pursuant to Section 21 of the KCDL Lease. (Donath Decl. ¶14-15, Exhibit "2".)

California Civil Code Section 883.140(b) requires Temblor to "…within 30 days after demand therefor by the lessor, execute, acknowledge, and deliver, or cause to be recorded, a deed quitclaiming all interest in and to the mineral rights covered by the lease."

Temblor refused to execute, acknowledge and deliver to KCDL a quitclaim deed surrendering all of the lessee's interest under the KCDL Lease. KCDL has been damaged by such actions in that it has been prevented from leasing the Leased Land to a new operator and taking other steps necessary to stop the drainage of oil and gas from is property. (Donath Decl. ¶15)

Temblor further has a statutory duty under the California Public Resources Code and the regulations implementing such statutory requirements to plug and abandon the HM #5 Well. Since the well is not producing, it is a potential nuisance as an idle, deserted well. Temblor's statutory obligation to plug and abandon the HM# 5 Well is an administrative claim.

**OPPOSITION OF KINGS COUNTY DEVELOPMENT LIMITED TO DEBTOR'S MOTION FOR ORDER TO EXTEND TIME TO ASSUME OR REJECT EXPIRED OIL AND GAS LEASES**

## II.

## DISCUSSION

A. **The Debtor Has <u>Not</u> Satisfied the Requirements for An Extension of Its Time to Assume or Reject Its Oil Gas Leases**.

In discussing the standard for an extension of time to assume or reject its oil and gas leases, Debtor only cites a portion of the test set forth in *In re Perfectlite Co.,* 116 B.R. 84, 86 (Bankr. N.D. Ohio 1990):

> "It is now well-established that the primary purpose of section 365(d)(4) is 'to protect lessors ... from delay and uncertainty by forcing a trustee or a debtor in possession to decide quickly whether to assume unexpired leases.' " *In re American Healthcare Management, Inc*., 900 F.2d 827 (5th Cir.1990) (quoting *Sea Harvest Corp. v. Riviera Land Co.,* 868 F.2d 1077, 1079 (9th Cir.1989). Only when the debtor establishes cause should the court extend the time provided in section 365(d)(4). A number of factors should be taken into account in determining whether or not cause exists for extending the 60–day period in subsection (d)(4): (a) Is the Lease a primary asset central to the reorganization? (b) Does the Debtor need additional time to act intelligently in making the judgment to assume or reject? (c) Is the lease in question one of a number of business properties whose acceptance or rejection requires additional time for study and determination? (d) Has the Debtor complied with its post petition obligations under the Lease pursuant to section 365(d)(3)? (e) How will the Debtor's continued possession of the premises affect the Lessor?"

Here, as in *Perfectlite*, Debtor has offered no plausible reason to explain why it has not already made a decision to assume or reject its oil and gas leases or to even suggest that its determination could be made before November. As in *Perfectlite*, the Debtor has already had five months to make that decision.

Furthermore, the rights of the lessors have to be considered. Here, KCDL has been waiting over a year for a quitclaim from the Debtor of its terminated oil and gas lease and for Temblor to perform its obligation to plug and abandon the well on the lease. Indisputably, the Debtor has failed to perform all of its obligations under the KCDL Lease. The Debtor has made no payments to KCDL in over a year and a

7

half. (Donath Decl. ¶10) It has failed to comply with its obligation to plug and abandon the HM#5 Well. (Donath Decl. ¶15) It has failed to comply with its obligation under the KCDL Lease and under California law to deliver a quitclaim surrendering the lease.

The Court in *Perfectlite* denied the requested extension, holding at 116 B.R. 88:

> "In summary, it appears that Debtor has made no real effort to comply with the requirement of section 365(d)(3) or (4) but is intent only on occupying the leased premises as long as possible without paying rent. Debtor apparently thought it had a free ride for its 120–day exclusivity period notwithstanding section 365(d)(3) and (4); it does not. But even if Debtor's extension were to be granted, it has failed to indicate any basis to suggest that Debtor will in the next six weeks be in any better position to decide whether to assume or reject the Lease. This Court, as a court of equity, would be derelict if it permitted the Debtor to continue to exploit this Landlord in contravention of section 365(d)(3) on the basis of the Debtor's behavior in this case."

Other factors to be considered were set forth in *In re Wedtech Corp.*, 72 B.R. 464, 472 (Bankr. S.D.N.Y. 1987):

> "[T]he following criteria weigh against granting an extension of time: (i) failure to pay for the use of property, 681 F.2d at 105, or, now in light of § 365(d)(3) in the cases of commercial leases, failure to pay the rent reserved in the lease; (ii) damage to the lessor "beyond the compensation available under the Bankruptcy Code" through the debtor's continued occupation of the land and its failure to pay taxes, 681 F.2d at 105–06; and (iii) where the debtor fails or is unable to formulate a plan when it has had more than enough time to do so, 681 F.2d at 106."

(See, also *In re Columbus One Parcel Serv., Inc.*, 138 B.R. 194, 195 (Bankr. S.D. Ohio 1992); *In re Channel Home Centers, Inc.,* 989 F.2d 682, 686 (3d Cir. 1993) [Section 365(d)(4) was intended to prevent undue delay.]

Here, as in Perfectlite, the Debtor is seeking a free ride and to continue to hold on to the KCDL Lease without any payment to the lessor, or otherwise satisfying any of its obligations under the KCDL Lease. This court cannot allow the

8

**OPPOSITION OF KINGS COUNTY DEVELOPMENT LIMITED TO DEBTOR'S MOTION FOR ORDER TO EXTEND TIME TO ASSUME OR REJECT EXPIRED OIL AND GAS LEASES**

Debtor to continue to exploit its oil and gas lessors in this way.

**B. The KCDL Lease Terminated Over A Year Ago.**

Debtor cites *Montana-Fresno Oil Company v. Powell*, 219 Cal.App.2d 653 (1963), in support of its contention that "its Working Interests in the Oil Fields are fee simple determinable interests under California law are not "executory contracts" ort "unexpired leases as those terms are defined under the bankruptcy law". Montana-Fresno was an action to quiet title to property as against an oil and gas lease with defendant lessee/ operator. However, Debtor fails to actually mention the actual holding of the case. The principal questions to be determined are the meaning of the habendum clause of the oil lease itself, and whether under the evidence the lease terminated. Initially, the Court noted at 219 Cal. App. 2d 659, that: "***An operating oil lease is both a conveyance and a contract*** designed to fit the needs of the owner of the land and the operator of the oil properties in making them productive. As such, it contains traditional conveyancing portions and particularly phrased contractual portions." (Emphasis added.)

Following a long line of California authority, the Court in *Montana-Fresno* held at 219 Cal.App.2d 665-667 that the lease, the "fee simple determinable interest", automatically terminated upon the occurrence of the stated condition, the lack of production in "paying quantities" and that the complete cessation of production ended the term of the lease (See, also, *Lough v. Coal Oil, Inc.*, 217 Cal.App.3d 1518, 1528-1529 (1990); *San Mateo Community College Dist. v. Half Moon Bay, L.P.*, 65 Cal.App.4th, 401, 410 (1998*); Renner v. Huntington Hawthorne Oil and Gas Co.*, 39 Cal.2d 93, 98-99 (1952).)

As set forth in the Declaration of Douglas Donath, Temblor has *never* produced oil and gas in paying quantities from the HM #5 Well. The well is not currently being produced in paying quantities, and Temblor never commenced any drilling operations to drill a subsequent well. Accordingly, the KCDL Lease terminated for lack of production of oil and gas in paying quantities. (Donath Decl.

9

**OPPOSITION OF KINGS COUNTY DEVELOPMENT LIMITED TO DEBTOR'S MOTION FOR ORDER TO EXTEND TIME TO ASSUME OR REJECT EXPIRED OIL AND GAS LEASES**

¶10-13.) As a result, Temblor no longer has a working interest or any other interest in the Leased Land. All that is left is Temblor's obligation to plug and abandon the HM#5 Well and to delver a quitclaim. It is already a year late in satisfying those obligations. There is nothing else left for Temblor to do.

## III.
## CONCLUSION

For the foregoing reasons, Creditor, Kings County Development Limited, request that the Court deny the Debtor's "Motion for An Order to Extend Time To Assume Or Reject Expired Oil And Gas Leases".

KCDL consents to the Court's resolution of disputed material factual issues pursuant to Fed. R. Civ. P. 43(c) as made applicable by Fed. R. Bankr. P. 9017 and Local Rule 9014-1(f)(1)(B).

Dated: August 27, 2020　　　　　　　CASSO & SPARKS, LLP

　　　　　　　　　　　　　　　　　　By:　/s/ John J. Harris
　　　　　　　　　　　　　　　　　　　　John J. Harris
　　　　　　　　　　　　　　　　　　　　Attorney for
　　　　　　　　　　　　　　　　　　　　Kings County Development Limited

**CASSO & SPARKS, LLP**
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA 91746