**25**

LEONARD K. WELSH, CSB No. 097954
LAW OFFICES OF LEONARD K. WELSH
4550 California Avenue, Second Floor
Bakersfield, California 93309
Telephone: (661) 328-5328
Email: lwelsh@lkwelshlaw.com

Attorney for Debtor-in-Possession

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No. 20-11367-A-11 |
| TEMBLOR PETROLEUM COMPANY, LLC | Chapter 11 |
| Debtor-in-Possession. | DC No. LKW-13 |
| | Date: January 7, 2021<br>Time: 10:30 a.m.<br>Place: United States Courthouse<br>510-19th Street<br>Bakersfield, CA<br>Judge: Honorable Jennifer E. Niemann |

## DEBTOR'S PLAN OF LIQUIDATION DATED NOVEMBER 24, 2020

### Introduction

TEMBLOR PETROLEUM COMPANY, LLC ("Debtor") proposes the following *Debtor's Plan of Liquidation Dated November 24, 2020* ("the Plan") pursuant to Section 1121(a)[1] of the Code[2]. Debtor is the proponent of the Plan under Section 1129.

The Plan contemplates Debtor's liquidation and the resolution of all outstanding Claims against Debtor. Debtor will confirm the Plan under Section 1129(b) if any Impaired Class of Claims entitled to vote on the Plan does not accept the Plan by the requisite majority required by Section 1126(c).

---

[1] All section numbers refer to the sections of Title 11 of the United States Code unless otherwise indicated.
[2] Capitalized terms used and not otherwise defined herein will have the meanings ascribed to them in Section XV of this Plan.

Votes to accept or reject a plan of reorganization or liquidation cannot be solicited from holders of Claims or Interests entitled to vote on the plan until a disclosure statement has been approved by a Bankruptcy Court and distributed to such holders under Section 1125(b). The Debtor's Disclosure Statement that accompanies the Plan ("the Disclosure Statement") contains information about Debtor's history, business, assets, liabilities, income, expenses, risk factors associated with the Plan, and a summary and analysis of the Plan.

## ARTICLE I

## TREATMENT OF ADMINISTRATIVE EXPENSES, UNITED STATES TRUSTEE FEES, AND PRIORITY TAX CLAIMS

### Section 1.01    Unclassified Claims

Under Section 1123(a)(1), administrative expense claims and priority claims pursuant to Section 507(a)(2), (a)(3), and (a)(8) are not required to be classified. Debtor does not have any Section 507(a)(2) or (a)(3) claims. Therefore, no treatment is provided for such claims in the Plan. Treatment of administrative expense claims and priority claims are as forth below.

### Section 1.02    Administrative Expense Claims

Each holder of an Administrative Claim allowed under Section 503 will be paid in full on the Effective Date of the Plan ("the Effective Date") or as soon as practicable thereafter. Applications for an Administrative Claim, exclusive of Professional Fee claims, shall be filed and served no later than the Administrative Claims Bar Date to the extent Court approval of an Administrative Claim is required. The Administrative Claims include post-petition accounts payable and professional fees owed by Debtor. Debtor believes that its post-petition accounts payable will be about $250,000.00 and its unpaid professional fees will be $30,000.00 on the Effective Date.

### Section 1.03    United States Trustee Fees

Debtor will pay all fees required under 28 U.S.C. Section 1930(a)(6) until the case is Administratively Closed, dismissed, or converted to another Chapter of the Code. Debtor will pay any United States Trustee Fees owed on or before the Effective Date of the Plan on the Effective Date.

## ARTICLE II

## CLASSIFICATION AND TREATMENT OF PRIORITY CLAIMS

Section 2.01    Class One Claims:

**Classified Priority Claims.**    The Class One claims will consist of the Allowed Claims of Debtor's priority creditors.    Debtor believes that the allowed Class One claim will be $10,316.91 owed to the State of California – Franchise Tax Board on the Effective Date.

**Treatment of the Class One Claims:**  The Class One claims shall be paid in full during the Term of the Plan.  The Class One claims shall accrue interest at the rate of 6.0 percent per annum from the Effective Date.  The Class One claims shall be paid in full from proceeds received by Debtor from the sale of its assets as required by the Plan or the collection of Debtor's accounts receivable.  The Class One claims shall be paid in full on or before April 15, 2023.

## ARTICLE III

## CLASSIFICATION AND TREATMENT OF SECURED CLAIMS

Section 3.01    Secured Claimants will be paid consistent with the provisions of Sections 3.03 through 3.05 of the Plan.  Secured Claimants will retain all rights set forth in their loan and security documents and Debtor will perform all terms of the agreements with such claimants except as modified by the Plan.  The security interests held by the Class Two through Class Four Claimants will be extinguished when their secured Claims have been paid in full or after the liquidation of their collateral.  Each Secured Claimant will release its security interest from its collateral after its secured claim is paid in full.

Section 3.02    All monetary defaults have been considered in the Plan.  All such defaults will be deemed cured on Confirmation of the Plan.  All nonmonetary defaults will be deemed cured on the Effective Date if there was a prepetition default on any Claim held by the secured creditor.  A Secured Claimant may proceed in accordance with the terms of its security

3

documents and applicable law without further order of the Court if Debtor defaults in any payment due after the earliest of (a) the time the case is closed or (b) the time the case is dismissed.

Section 3.03    Class Two Claim:

**Secured Claim Held by Inproinvest, LLC**.  The Class Two claim of Inproinvest, LLC ("Inproinvest") is impaired under the Plan.  The Class Two claim represents an obligation owed to Inproinvest secured by a first priority lien against Debtor's working interest in the oilfield located in Fresno County, California identified as "the Witter Field" and machinery and equipment associated with the Witter Field ("the Machinery and Equipment").

Debtor's obligation to Inproinvest arises out of an agreement for Purchase and Sale of Oil and Gas Leasehold Interest dated October 26, 2018 ("the Sales Agreement") between the parties.  Under the Sales Agreement.  Debtor sold part of its interest in the Witter Field to Inproinvest and Debtor granted a first priority security interest in 10.00 percent of Debtor's interest in the Witter Field to Inproinvest to secured payment of obligations owed to Inproinvest under the "Additional Interest – Claw Back" provision of the Sales Agreement. Debtor's grant of security to Inproinvest was limited to a lien against 10.00 percent of Debtor's interest in the Witter Field under Section 9(a) and (b) of the Sales Agreement. Debtor believes that its interest in the Witter Field and the Machinery and Equipment has a value of $3,039,818.00 and, for that reason, Debtor estimates that the Class Two claim will be $303,982.00 for purposes of the Plan.

Inproinvest shall retain its lien against Debtor's working interest in the Witter Field and the Machinery and Equipment and Debtor's working interest in the Witter Field and Machinery and Equipment shall secure repayment of the Class Two claim.

**Treatment of Class Two Claim:** Inproinvest filed a Proof of Claim on August 28, 2020 ("the Proof of Claim") indicating that its claim against Debtor is between $1,755,000.00 and $2,633,200.00. However, the Proof of Claim misstates the amount of Inproinvest's secured claim under the terms of the Sales Agreement as indicated above. The Class Two claim will be 10.00 percent of whatever proceeds Debtor receives from the sale of its interest in the Witter Field and the Machinery and Equipment. Debtor estimates that the Class Two claim will be $303,982.00.

The Class Two claim shall be fully secured under the Plan. However, the Class Two claim shall not accrue interest before or after the Effective Date. The Class Two claim will be paid from proceeds received from the sale of the Witter Field and the Machinery and Equipment.

**Section 3.04    Class Three Claim:**

**Secured Claim Held by Key Energy Services, LLC.** The Class Three claim of Key energy Services, LLC ("Key Energy") is impaired under the Plan. The Class Three claim represents an obligation owed to Key Energy secured by a second priority lien against the Machinery and Equipment associated with the Witter Field ("the Machinery and Equipment"). Key Energy shall retain its lien against the Machinery and Equipment and the Machinery and Equipment shall secure repayment of the Class Three claim.

**Treatment of Class Three Claim:** The Class Three claim was $213,811.30 on the Petition Date according to Key Energy's Proof of Claim filed on August 17, 2020. Interest has accrued on the Class Three claim at the rate of 10.00 percent per annum since the Petition Date. Debtor believes the Class Three claim will be about $235,000.00 on the Effective Date.

The Class Three claim shall be fully secured under the Plan. The Class Three claim shall accrue interest at the rate of 6.00 percent per annum from the Effective Date. The Class Three claim will be paid from proceeds received by Debtor from the sale of the Machinery and Equipment.

Section 3.05    Class Four Claim:

**Secured Claim Held by Commercial Trade, Inc.** The Class Four claim of Commercial Trade, Inc. ("Commercial Trade") is impaired under the Plan. The Class Four claim represents an obligation owed to Commercial Trade secured by a judicial lien against Debtor's working interests in the Witter Field and oilfields located in Monterey County, California identified as "the Lynch Canyon Field" and "the Hangman Hollow Field" ("the Monterey County Properties'). Commerical Trade's lien against Debtor's working interest in Witter Filed is junior and subordinate to Inproinvest's lien and a first priority lien against Debtor's working interests in the Monterey County Properties. Commercial Trade shall retain its lien against the Witter Field and the Monterey County Properties and the Witter Field and the Monterey County Properties shall secure repayment of the Class Four claim.

**Treatment of Class Four Claim:** The Class Four claim was $2,352,219.05 on the Petition Date according to Commercial Trade's Proof of Claim filed on May 4, 2020. Interest has accrued on the Class Four claim since the Petition Date at the rate of 10.00 percent per annum. Debtor believes that the Class Four claim will be about $2.5 million on the Effective Date.

The Class Four claim shall be fully secured under the Plan. The Class Four claim shall accrue interest at the rate of 6.00 percent per annum from the Effective Date. The Class Four claim will be paid in full from proceeds received by Debtor from the sale of Debtor's working interest in the Witter Field and Monterey County Properties.

# ARTICLE IV.

## CLASSIFICATION AND TREATMENT OF
## NON-PRIORITY UNSECURED CLAIMS

**Section 4.01.**     **Class Five Claims:**

**Allowed Claims of General Unsecured Creditors other than Debtor's Insiders.** The Class Five claims of general unsecured creditors other than Debtor's Insiders are impaired under the Plan. The Class Five claims consist of the Allowed Claims of Debtor's general unsecured creditors other than Debtor's Insiders. The Class Five claims include (a) general unsecured claims existing on the Petition Date, (c) the unsecured portion of any secured claim as provided for in Section 506 of the Code, and (c) deficiency claims against Debtor following the liquidation of a secured creditor's collateral to the extent allowed by applicable law.

**Treatment of the Class Five Claims:** The Class Five claims will be between $3,945,807.13 and $11,550,014.81 on the Effective Date depending on the amount of California Energy Exchange Corporation's ("CEE") claim allowed under the Plan. See Section 4.02 below. The Class Five claims have not accrued interest since the Petition Date. See 11 USC Section 502(b)(2). The Class Five claims shall accrue interest at the rate of 3.00 percent per annum from the Effective Date. The Class Five claims will be paid in full from proceeds received by the Debtor from the sale of its assets and the collection of Debtor's accounts receivable as required by the Plan. **Class Five claimants will receive a pro rata share of proceeds received from the sale of Debtor's assets and the collection of Debtor's accounts receivable if the sale of Debtor's assets and collection of Debtor's accounts receivable do not produce sufficient income to satisfy in full all allowed Class Five claims.**

**Section 4.02.  Class Six Claims:**

**Claims against Debtor asserted by California Energy Exchange Corporation**.  The Class Six claim of California Energy Exchange Corporation ("CEE") is impaired under the Plan.  The Class Six claim consists of general unsecured claims asserted against Debtor by CEE.  Debtor DISPUTES that validity of CEE's claims asserted against Debtor and Debtor contends that it has valid but unliquidated claims against CEE.

**Treatment of Class Six Claims**:  The Class Six claim was $7,604,207.00 on the Petition Date according to CEE's Proof of Claim filed on May 28, 2020.  Debtor DISPUTES the validity of CEE's claims asserted against it.  The validity of CEE's claims against Debtor and the amount of any such claim will be determined in litigation between Debtor and CEE pending in the Sacramento County Superior Court ("the State Court Lawsuit") or by an agreement between the parties.   The State Court Lawsuit's jurisdiction will be limited to liquidating the validity and amount of CEE's claim against Debtor.  Any claim against Debtor determined to be owed by the Sacramento County Superior Court or by an agreement between the parties shall be treated and allowed as a Class Five claim.

**Section 4.03.  Class Seven Claims:**

**Claims against Debtor held by Debtor's Insiders**.  The Class Seven claims of Debtor's Insiders are impaired under the Plan.  The Class Seven claims represent money loaned to Debtor by Debtor's Insiders over time.

**Treatment of Class Seven Claims**:  The Class Seven claims shall be subordinate to all other Allowed Claims under the Plan.  This means that:

       a.   the Class Seven claims shall be separately classified from all other claims in Debtor's case and

       b.   the Class Seven claimants shall not receive any payment on their Allowed Claims until all other Allowed Claims have been paid in full through the Plan.

Class Seven claims shall accrue interest at the rate of 3.00 percent per annum from the Effective Date. Class Seven claimants shall share pro rata in any distribution available to creditors after all other Allowed Claims have been paid in full.

Nothing in the Plan will release, terminate, or otherwise affect Debtor's Insiders' claims except to (a) subordinate the Insiders' Claims to the claims held by all other creditors and (b) provide the treatment of the Class Seven claims described above.

## ARTICLE V.

## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**Section 5.01  Class Eight Claims:**

**Executory Contracts and Unexpired Leases.**  Class Eight claims will consist of Debtor's executory contracts and unexpired leases. Class Eight claims are unimpaired under the Plan. Executory contracts not rejected prior to the Effective Date will be assumed under the Plan. Any general unsecured claim arising out of the rejection of executory contracts will be treated as a Class Eight Claim and such claim will be filed no later than thirty days following the Administrative Claims Bar Date or the date of an Order approving the rejection of such contract or lease. Allowed Administrative Claims arising out of the rejection of the executory contracts after Confirmation of the Plan will be treated as a Class One claim.

## ARTICLE VI

## CLASSIFICATION AND TREATMENT OF DEBTOR'S MEMBERS' INTERESTS

**Section 6.01      Class Nine Claims:**

**Interests of Debtor's Members**  Class Nine consists of the ownership interest held by Debtor's Members. Debtor's Members shall retain their interest in Debtor during the Term of the Plan and nothing in the Plan shall divest Debtor's Members of their interest in Debtor. Debtor's Members shall not receive any dividends from Debtor during the Term of the Plan

until all Allowed Claims are paid in full. This means that Debtor's Members are impaired under the Plan and that Debtor's Members shall be entitled to vote to accept or reject the Plan.

Debtor shall not make any distribution to its Members during the Term of the Plan except for the distribution to Class Seven claimants described above.

## ARTICLE VII
## PROVISIONS FOR INTEREST OF DEBTOR

**Section 7.01    Class Ten Claims:**

**Interests of Debtor.** The Class Ten claims consist of the interests held by Debtor. Debtor will liquidate all of its assets during the Term of the Plan until all Allowed Claims have been paid in full.   Debtor will manage its affairs subject to the provisions of the Plan without the appointment of a trustee or other outside management or control. Confirmation of the Plan will not vest property of the estate in Debtor as provided in Section 1141(b) of the Code. Instead, property of the estate will vest in Debtor when all Allowed Claims are paid in full.

## ARTICLE VIII
## MEANS FOR EXECUTING THE PLAN

**Section 8.01    Summary.** The Plan shall be executed by Debtor (a) selling its assets including its working interests in oilfields located in the State of California ("the Oilfields") and the machinery and equipment associated with those working interests and (b) collecting the accounts receivable owed to it. Debtor has not been able to operate its working interests in the Oilfields since the Petition Date and Debtor's operating the working interests is not critical to the Plan's success because the Plan is a "Liquidation Plan". Details concerning the sale of Debtor's assets and collection of Debtor's accounts receivable are given below.

**Section 8.02    Debtor's Business.** Debtor's business and liquidation efforts will be managed and supervised by Philip F. Bell during the Term of the Plan. Debtor will manage its business during the Term of the Plan and without limitation:

   a.  Debtor is authorized to employ managers, agents, brokers, laborers, representatives and attorneys to carry out any activity authorized by the Plan;

  b. Debtor is authorized to pay ordinary operating costs and current taxes without further order of the Court;

  c. Debtor retains the right to prosecute all claims arising from any dispute involving Debtor or any property within its control;

  d. Debtor is authorized to distribute the payments to creditors and those entitled to receive such payments under the terms of the Plan except as otherwise provided in the Plan;

  e. Debtor may prosecute any claim against other entitles including any avoidance actions to recover fraudulent transfers or preferential payments;

  f. Debtor may object to any claim pursuant to the Plan and may pursue such litigation as is appropriate to resolve such disputes and objections; and

  g. Debtor may pursue any claim for monetary damages that Debtor determines are appropriate against any person or entity.

**Section 8.03**  **Sale of Assets**.  Debtor will sell its working interests in the Witter Field, the Lynch Canyon Field, the Hangman Hollow Field, the Los Alamos Field, and the Lander Avenue Prospect ("the Working Interests") and the machinery and equipment associated with the Working Interests ("the Machinery and Equipment") as expeditiously as possible.  Debtor believes that the Working Interests including the Machinery and Equipment have the following values:

| | | |
|---|---|---|
| a. | Witter Field: | $3,039,818.00 |
| b. | Lynch Canyon Field: | $7,407,594.00 |
| c. | Hangman Hollow Field: | $  9,315.00 |
| d. | Los Alamos Field: | $  69,819.00 |
| e. | Lander Avenue Prospect: | $  20,176.00 |
| | TOTAL: | $10,546,722.00 |

Proceeds received from the sale of the Working Interests and the Machinery and Equipment will be paid in the following order and priority:

a.   Cost of Sale including sales commissions, escrow fees, closing costs, and the like estimated to be $421,868.90 or 4.00 percent of proceeds received from the sales,

b.   Allowed Claims secured by liens and encumbrances of record against the property being sold estimated to be about $3,038,982.00 including (i) $303,982.00 to Inproinvest, (ii) $235,000.00 to Key Energy, and (iii) $2,500,000.00 to Commercial Trade.  See Class Two, Class Three, and Class Four claims described above,

c.   Post-petition Accounts Payable estimated to be $250,000.00,

d.   Post-confirmation professional fees including attorneys fees and accountant fees estimated to be $50,000.00,

e.   Class One claims estimated to be $10,316.91 on the Effective Date,

f.   Class Five claims on a pro rata basis until the claims have been paid in full, and

g..  Class Seven claims

**Section 8.04   Collection of Accounts Receivable.**  Debtor's accounts receivable total $2,010,834.51.  Debtor expects to collect its accounts receivable within two years of the Effective Date.  Accounts receivable collected by Debtor will be paid in the following order and priority:

a.   Collection costs estimated to be $301,625.17 or 15.00 percent;

b.   Post-petition Accounts Payable,

c.   Post-confirmation professional fees,

d.   Class Five claims on a pro rata basis until the claims have been paid in full, and

d.   Class Seven claims.

**Section 8.05   Employment of Energy Advisors Group.**  Debtor has employed Energy Advisors Group ("EAG") to be its marketing and sales agent in connection with the sale of the Working Interests and the Machinery and Equipment.  EAG is a leader in providing

negotiated sales and sealed-bid packages in the oil and gas industry and represents the best person available to market the Working Interests and Machinery and Equipment.

Section 8.06.  **Post-confirmation Expenses**.  Debtors will be entitled to expend funds necessary to carry out the terms of the Plan.  Pre-confirmation Professional Fee Claims will be paid after approval by the Court and will be paid within thirty days following the entry of an Order approving the fees.  Expenses that can be paid in the ordinary course of business, including post-confirmation professional fees, will be paid in the ordinary course of business. Debtor estimates that its post-confirmation professional fees including fees owed to its General Counsel and Litigation Counsel will be about $50,000.00.

## ARTICLE IX
## CLAIMS HANDLING

Section 9.01    **Ownership and Transfer of Claims.**  For purposes of any Distribution under the Plan, Debtor has no obligation to recognize any transfer of Claims occurring on or after the Distribution Date.  Debtor is permitted to recognize and deal with only those Claimants of record stated on the Claims Docket maintained by the Court or scheduled in the list of creditors filed with the Court under Bankruptcy Rule 1007 and not listed as disputed, contingent, or unliquidated as to amount, and to which no objection has been interposed.

Section 9.02    **Amendments to Claims.**  In order for Debtor to settle disputes and otherwise implement the Plan, a Proof of Claim may be amended to increase or liquidate the amount or priority of such Claim after the Bar Date, but only as agreed upon by Debtor and the holder of such Claim, or as otherwise permitted by the Court or applicable law.  Without limiting the previous sentence, Proofs of Claim will not be filed or amended after Confirmation of the Plan unless the amendment is solely to decrease the amount or priority of the Claim. Any such new or amended Claim filed after the Confirmation of the Plan is disallowed in full and is expunged without any action by Debtor.

Section 9.03    **Disputed Claims.**  Except as otherwise provided in the Plan, Debtor may object to the allowance of Claims filed with the Court if Debtor disputes liability, priority,

or amount of a claim including objections to Claims that have been assigned to a third party. All objections may be litigated to Final Order, compromised, or withdrawn. Unless otherwise ordered by the Court, Debtor will file and serve all objections to Disputed Claims no later than the Objection Date or such other date as may be approved by the Court.

**Section 9.04     Objection Date.** There will be no fixed Objection Date for any Claims other than the Class Five Claims. The Objection Date with respect to Class Five Claims will be (a) sixty days after the Effective Date or (b) sixty days after the filing of an amended claim whichever is later.

**Section 9.05     Estimation of Claims.** Unless otherwise limited by a Final Order of the Court, Debtor may request at any time the Court to estimate for final distribution purposes any contingent, unliquidated or Disputed Claim pursuant to section 502(c) of the Code regardless of whether Debtor or others objected to such Claim, and the Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to a Claim.

**Section 9.06     Allowance of Disputed Claims.** When a Disputed Claim becomes an Allowed Claim, Debtor will distribute to the Claimant the distributions the Claimant is entitled to under the Plan together with any permitted interest. Such distribution will be made on or after the date that the order or judgment of the Court allowing such Disputed Claim becomes a Final Order but not more than thirty days thereafter.

**Section 9.07     Deficiency Claims.** Creditors holding deficiency claims assertable as a liability against Debtor shall file such claims no later than sixty days following the event giving rise to the deficiency claim. In the event such deficiency claim is determined through the estimation process described in Section 9.05, no further Proof of Claim need be filed. Any such allowed deficiency claim shall be treated and paid as a Class Five Claim.

**ARTICLE X**

**PAYMENTS TO CREDITORS UNDER THE PLAN**

**Section 10.01     Distributions.** There will be distributions to creditors under the Plan. Timing of such distributions will be made as described in the Plan. However, nothing in the

Plan shall prevent Debtor from repaying any allowed claim in a shorter period of time than the Term of the Plan if such payment can be paid without prejudicing Debtor's business or payment to other creditors required by the Plan.

**Section 10.02     Method of Payment.** The method of payment will be at Debtor's election and may include bank check, business check, or wire transfer.

**Section 10.03     Means of Distribution.** Distributions by mail to holders of Allowed Claims will be made as follows: (a) at the addresses set forth on the Proofs of Claim filed by such holders; (b) at the addresses set forth in any written notices of address changes delivered to Debtor after the date of any related Proof of Claim; or, (c) at the address designated in any written agreement between Debtor and such Claimants or so designated by order of the Court.

**Section 10.04     Holding of and Failure to Claim Undeliverable Distributions.** All Distributions are to be made by Debtor to the holder of each Allowed Claim at the holder's address as described under section 10.03. If any holder's Distribution is returned as undeliverable, no further Distributions to such holder will be made unless Debtor is notified of such holder's current address, at which time all required Distributions will be made to such Claimant. Undeliverable Distributions will be held by Debtor until such Distributions are claimed, so long as they are claimed within ninety days following a Distribution. After ninety days, all unclaimed Distributions revert to Debtor and the Claim of any Claimant or its successor with respect to the Distribution will be discharged and forever barred.

**Section 10.05     Payment of Discounted Amount of Allowed Claims.** After the Effective Date, Debtor will have the right to negotiate a payment of less than the full amount of any Allowed Claim in exchange for a payment in a shorter period of time than those provided in the Plan. Nothing in the Plan will require Debtor to enter into any such negotiations but Debtor will have the right to enter into agreements for discounted payments to creditors if such agreements can be made without prejudice to the Plan's feasibility or Debtor's business operations.

# ARTICLE XI

## VOTING

**Section 11.01    Acceptance/Rejection Votes.**  Debtor requests confirmation of the Plan under Section 1129(b) to the extent any Class impaired under the Plan and entitled to vote does not accept the Plan by the requisite majority provided in Section 1126(c) or is deemed to have rejected the Plan.

**Section 11.02    Impaired Classes to vote.**  Each holder of a Claim or interest in an impaired Class will be entitled to vote to accept or reject the Plan unless such holder is deemed to accept or reject this Plan.

**Section 11.03    Acceptance by Class of Creditors.**  An impaired Class of holders of Claims will have accepted the Plan if the Plan is accepted by at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims of such Class that have voted to accept or reject this Plan.  A Class of holders of Claims will be deemed to accept the Plan in the event that no holder of a Claim within that Class submits a ballot by the deadline for the return of ballots.  Debtor requests Confirmation of the Plan under Sections 1129(a) or 1129(b).

# ARTICLE XII

## EFFECT OF CONFIRMATION

**Section 12.01    Terms Binding.**  On the Effective Date, all provisions of the Plan will be binding upon Debtor, all Claimants, and all other individuals and entities who are affected by the Plan.

**Section 12.02    Discharge.**  Confirmation of the Plan shall not discharge Debtor from any obligation it owes to creditors because (a) the Plan provides for the liquidation of all or substantially all of the property of the estate, (b) Debtor may not engage in business after consummation of the Plan, and (c) Debtor would be denied a discharge in a Chapter 7 case.  See Sections 1141(d)(3) and 727(a).  Nothing in the Plan will be deemed to discharge any Claim against any non-Debtor guarantor or obligor on any Claim.

**Section 12.04    Injunction.** Claimants are permanently enjoined from commencing or continuing any action to collect, recover, or offset any released Claim as a liability of Debtor to the extent permitted by Sections 1141 and 524.

**Section 12.04    Preservation of Avoidance Actions Claims and Rights.** After the Effective Date, Debtor will retain any avoidance actions including any preference claims or fraudulent conveyance claims. Debtor may assert such avoidance actions in the context of defeating any Disputed Claim. Except for the releases and waivers stated in the Plan, nothing in the Plan waives the avoidance and other powers of Debtor under the Code or the Bankruptcy Rules. Debtor retains all powers granted by the Code and the Bankruptcy Rules, including all claims held by a trustee or debtor in possession arising on or before the Effective Date, after Confirmation, and after the Effective Date. Confirmation of the Plan does not release any Claim held by Debtor or the estate unless the Plan or Confirmation Order so provides.

**Section 12.04    Statutes of Limitation.** All applicable statutes of limitations and extensions thereto will remain in full force and effect and available to Debtor as if Debtor were a trustee in bankruptcy including any applicable state law statute of limitations and Sections 108, 546, and 550 except as modified by the Plan.

## ARTICLE XIII

## AMENDMENTS OR MODIFICATIONS TO THE PLAN

**Section 13.01    General Arrangements.** The Plan may be modified in the manner prescribed in Section 1127. A holder of a Claim that has accepted or rejected the Plan will be deemed to have accepted or rejected the Plan as modified unless such holder changes its previous acceptance or rejection.

**Section 13.02    Modification of the Plan.** At any time before Confirmation of the Plan, Debtor may modify the Plan under Section 1127(a) provided that such modification does not adversely affect the treatment and rights of the holders of Claims under the Plan. After the Confirmation of the Plan and before substantial consummation of the Plan as defined in Section 1101(2), Debtor may institute proceedings in the Bankruptcy Court to remedy any

defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, and such matters as may be necessary to carry out the Plan so long as such proceedings will not adversely affect the treatment of holders of Claims under the Plan and provided that prior notice of such proceedings are served in accordance with the Bankruptcy Rules or applicable order of the Court. At any time after Confirmation of the Plan, Debtor may modify the Plan so long as such modification is consistent with the Code.

Section 13.03     **Revocation or Withdrawal of the Plan.** Debtor reserves the right to revoke or withdraw the Plan at any time before Confirmation of the Plan.

Section 13.04     **Reservation of Rights.** Neither the filing of the Plan or Disclosure Statement, or any provision contained in the Plan or in the Disclosure Statement, will (a) be or be deemed to be an admission against interest, and (b) be or be deemed to be a waiver of any rights any party in interest may have (i) against any other party in interest, or (ii) in any of the assets of any other party in interest until the Effective Date and all such rights are reserved until the Effective Date. In the event that the Plan is not confirmed, neither the Plan nor the Disclosure Statement may be used in any manner in any suit, action, proceeding, or controversy involving Debtor or the estate except with respect to Confirmation of the Plan.

Section 13.05     **Jurisdiction of the Court.** The Court will retain jurisdiction until the Plan has been fully administered and a Final Decree is entered consistent with the Bankruptcy Code including the following purposes:

Section 13.06     **Classification of Claims.** The Court will retain jurisdiction until the Plan has been completed for the purpose of classifying Claims, reexamining Claims, and determining objections to Claims. The failure to object to or examine any Claims for the purposes of voting will not be deemed to be a waiver of the right to object to or reexamine the Claim.

Section 13.07     **Administrative Closure of Case.** Debtor will be entitled to seek Administrative Case Closure upon substantial consummation of the Plan and before receipt of its discharge.

**Section 13.08     Determination of Disputes.**  The Court will retain jurisdiction to determine questions and disputes about the estate's assets and determine causes of action, controversies, disputes, or conflicts between Debtor and any party relating to assets or Claims whether or not subject to action pending as of the Confirmation Date.

**Section 13.09     Correction of Defect.**  The Court will retain jurisdiction to correct any defect, curing any omissions, or to reconcile any inconsistency in the Plan as may be necessary to carry out the Plan.

**Section 13.10     Modification.**  The Court will retain jurisdiction to modify or clarify the Plan after confirmation.

**Section 13.11     Enforcement.**  The Court will retain jurisdiction to enforce and interpret the Plan and enter any order necessary to enforce Debtor's rights, title, and powers and to impose such limitations, restrictions, terms, and conditions concerning such rights, title, and powers as the Court may deem necessary.

**Section 13.12     Determination of Default.**  The Court will retain jurisdiction to determine whether a default has occurred under the Plan and to make such orders as the Court may deem necessary to enforce the Plan including ordering a modification of the Plan, converting the case to Chapter 7, or such other relief as may be appropriate.

**Section 13.13     Causes of Action.**  Debtor will retain any prepetition causes of action arising before confirmation of the Plan including causes of action held by a trustee under the Code.  The right to pursue such actions will continue after Confirmation of the Plan and the Court will have jurisdiction to hear such complaints.  The inclusion of this provision will not confer jurisdiction upon the Bankruptcy Court in excess of the extent otherwise authorized under the Code.

**Section 13.14     Termination.**  The Court will retain jurisdiction to enter an order concluding and terminating this case.

## ARTICLE XIV

## MISCELLANEOUS PROVISIONS

**Section 14.01      Taxes.** Each holder of an Allowed Claim that has received a Distribution has the responsibility for the satisfaction or payment of any tax obligation imposed by any governmental unit. For tax purposes, Distributions received in respect of Allowed Claims will be allocated first to unpaid accrued interest and then to the principal amount of such Claims.

**Section 14.02      Severability.** If any provision of the Plan is determined to be unenforceable, the enforceability of any other provision of the Plan is not affected. So long as the Plan fulfills its essential purpose, any unenforceable provision is severed from the Plan.

**Section 14.03      Successor and Assigns.** The rights and obligations of any party in interest to the Plan are binding on and inure to the benefit of the successors and assigns of such party in interest.

**Section 14.04      Effectuating Documents and Further Transactions.** Debtor is authorized to take such actions as may be necessary or appropriate to effectuate the terms of the Plan and the Confirmation Order and to take all actions necessary or appropriate to effectuate the Plan. Debtor may engage counsel to assist in its duties including counsel who may have represented Debtor or Debtor-in-possession.

**Section 14.05      Modification of Payment Terms.** At any time after the Effective Date, Debtor may modify the treatment of any Allowed Claim so long as the holder whose Allowed Claim is being adversely affected consents in writing.

**Section 14.06      Incorporated Provisions to Reconcile with the Disclosure Statement.** The Plan and the Disclosure Statement are interactive and they should be reconciled and consistent with each other. However, the terms of the Plan supersede any statements in the Disclosure Statement and will control.

**Section 14.07      Payment of Quarterly Fees.** The Court will retain jurisdiction until the Plan has been substantially consummated and the Court enters an order concluding and

administratively terminating the case. Debtor will pay Quarterly Fees to the United States Trustee after the Effective Date and until the Court enters an order concluding and administratively terminating the case. Debtor will pay the Quarterly Fees owed to the United States Trustee from revenue generated by its business and the payment of Quarterly Fees will not affect feasibility of the Plan.

**Section 14.08    Post-Confirmation Status Reports.**  Debtor will file Post-confirmation Status Reports with the Bankruptcy Court one time every three months until the dismissal of the case, conversion of the case, Administrative Case Closure, or the entry of a Final Decree. The Post-confirmation Status Reports will explain the progress made by Debtor toward substantial consummation of the Plan. A Post-confirmation Status Report will be filed with the Court for the quarter within which the Plan is confirmed. Post-confirmation Status Reports will be filed with the Court and served on the United States Trustee not later than thirty-two days after the expiration of a reporting period. Post-confirmation Status Reports will be served on the United States Trustee not later than the day on which the report is filed with the Court. The Post-confirmation Status Reports will include information to enable the Court to determine:

a.    whether the order Confirming the Plan of Reorganization has become a Final Order;

b.    whether deposits required by the Plan have been made;

c.    whether any property proposed by the Plan to be transferred has been transferred;

d.    whether the reorganized Debtor has assumed the business or management of property dealt with under the Plan;

e.    whether payments under the Plan have been commenced;

f.    whether fees owed to the United States Trustee pursuant to 28 U.S.C. Section 1930 have been paid to the date of the Post-confirmation Status Report; and

g.    whether all motions, contested matters, adversary proceedings, and other litigation involving Debtor have been concluded.

## ARTICLE XV

## <u>DEFINITIONS AND RULES OF INTERPRETATION</u>

**Section 15.01      Definitions.**

**"Administrative Claim"** means a Claim for payment of an administrative expense of a kind specified in section 503(b) of the Code and entitled to priority under section 507(a)(2) of the Code including Professional Fee Claims and claims for unpaid post-petition rents filed on or before the Administrative Claims Bar Date.

**"Administrative Claims Bar Date"** means thirty days after the entry of the Order confirming the Plan.

**"Administrative Case Closure"** means the closure of Debtor's case for administrative purposes only and not entry of a Final Decree.

**"Administratively Closed"**  means that the Court shall have entered an order providing for the closure of the Case as an administrative matter, relieving the Debtor of its administrative obligations, including payment of fees to the United States Trustee and preparing Post-confirmation Status Reports.

**"Allowed Claim"** means a claim (a) for which a Proof of Claim has been filed within the period fixed by Bankruptcy Rule 3001 or Final Order of the Court or (b) scheduled in the list of creditors filed with the Court pursuant to Bankruptcy Rule 1007(b) and not listed as disputed, contingent, or unliquidated as to amount and to which no objection has been interposed.

**"Claim"** means any right to payment against Debtor in existence upon Confirmation of the Plan, whether or not such right to payment is reduced to judgment, liquidated, unliquidated, disputed, undisputed, legal, secured, or unsecured.

**"Claimant"** means the person or entity holding a Claim.

**"Claims Bar Date"** means sixty days after the Effective Date of the Plan.

**"Class"** means any class into which Claims are classified pursuant to this Plan.

**"Code"** means Title 11 of the United States Code.

**"Confirmation"** means the entry of an order of the Court confirming the Plan.

"**Confirmation Date**" means the date of the entry of an order of the Court confirming the Plan.

"**Court**" means the United States Bankruptcy Court for the Eastern District of California.

"**Debtor**" means Temblor Petroleum Company, LLC.

"**Debtor's Insiders**" means the persons defined in Section 101(31) of the Code including Debtor's members and their families.

"**Disclosure Statement**" means the Debtor's Disclosure Statement Dated November 24, 2020 filed by Debtor concurrently herewith.

"**Disputed Claims**" means claims for payment filed by individuals or entities seeking to be paid from assets of the estate that Debtor believes are not owed, are not owed in the amount and priority of the claim filed, and to which Debtor objects on or before the date required by the Plan.

"**Distributions**" means payments to the holder of an Allowed Claim as provided by the Plan.

"**Effective Date**" means the thirtieth day following the date Order Confirming Debtor's Plan is entered by the Court.

"**Executory Contracts**" means contracts and unexpired leases that were executory on the Petition Date within the meaning of section 365 of the Code.

"**Final Decree and Order Closing the Chapter 11 Case**" and/or "**Final Decree**" means the Order of the Court determining that (a) Debtor's estate has been fully administered, (b) the Plan has been substantially consummated, (c) Debtor's discharge has been entered and (d) Debtor's case has been closed for all purposes.

"**Final Order**" means an order or judgment of the Court or other court of competent jurisdiction that has not been reversed, stayed, modified and as to which the time to appeal has expired without such an appeal.

"**Impaired Claim**" means a Claim that will not receive full payment under the Plan consistent with the contractual rights of the claimant.

**"Insider Transfers"** means any payments or other transfers made to Debtor's Insiders before Debtor filed its Chapter 11 case except for wages paid to Debtor's Insiders.

**"Loan Documents"** means any and all loan documents pertaining to a claim including any loan agreements, security agreements, forbearance agreements, modifications, or amendments.

**"Objection Date"** means the date set by the Plan or by order of the Court setting the deadline for Debtor to file objections to any timely filed proof of claim filed by a Claimant.

**"Petition Date"** means April 9, 2020 - the date on which Debtor commenced its Chapter 11 case.

**"Plan"** means this Plan of Liquidation Dated November 24, 2020.

**"Plan Payment"** means any payment required under the Plan.

**"Professional Fee Claims"** means an Administrative Claim of a professional for compensation for services rendered or reimbursement of costs, expenses, or other charges and disbursements incurred during the period from the Petition Date through the last day of the calendar month immediately preceding the date of Confirmation.

**"Term of the Plan"** means that period of time from the date on which Debtor filed its Voluntary Petition until the earlier of (a) date that the Court enters its Final Decree and Order Closing the Chapter 11 Case or (b) two years from the Effective Date.

**"Unimpaired Claim"** means a Claim that will receive payment in full under the Plan consistent with the contractual rights of the Claimant.

**Section 15.02     Computation of Time.** The provisions of Bankruptcy Rule 9006(a) apply in computing any period of time prescribed or allowed by the Plan unless otherwise provided. In the event that any payment, act, or deadline under the Plan is required to be made or performed or occurs on a day that is not a business day, the making of such payment, the performance of such act or the occurrence of such deadline, is deemed to be on the next business day, but will be deemed to have been completed or to have occurred as of the required date.

**Section 15.03      Exhibits and Schedules.** All exhibits to the Disclosure Statement are incorporated into the Plan as if set forth in the Plan. To the extent any exhibit is inconsistent with the Plan, the Plan will control unless otherwise ordered by the Court.

The undersigned submit and agree to be bound by the terms of the Amended Plan.

Date: November __24__, 2020

TEMBLOR PETROLEUM COMPANY, LLC

By___/s/ Philip F. Bell_____
PHILIP F. BELL
Managing Member

**APPROVED:**

LAW OFFICES OF LEONARD K. WELSH

By__/s/ Leonard K. Welsh_____
LEONARD K. WELSH
Attorneys for Debtor-in-Possession