John J. Harris (SBN 93841)
**CASSO & SPARKS, LLP**
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA  91746
jharris@cassosparks.com
Telephone:  626.269.2980

Attorneys for Creditor, Kings County
Development Limited

# UNITED STATES BANKUPTCY COURT

# EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

In Re

TEMBLOR PETROLEUM
COMPANY, LLC

             Debtor-in-Possession.

CASE NO.:  20-11367-A-11
Chapter 11

**DC No. LKW-15**

**OBJECTIONS AND OPPOSITION OF KINGS COUNTY DEVELOPMENT LIMITED TO APPROVAL OF DEBTOR'S PROPOSED FIRST AMENDED DISCLOSURE STATEMENT**

Date:  February 24, 2021
Time:  9:30 a.m.
Place:  United States Courthouse
          2500 Tulare St., 5th Fl.
          Fresno, CA
Judge:  Hon. Jennifer E. Niemann

.

**CASSO & SPARKS, LLP**
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA  91746

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CASSO & SPARKS, LLP
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA 91746

## **TABLE OF AUTHORITIES**

**Page(s)**

I.      INTRODUCTION.................................................................................7

II.     FACTUAL BACKGROUND ............................................................10

   A.  The KCDL Lease Is Not An Asset of the Debtor's Estate.....................10

   B.  Inproinvest's Claim ...............................................................13

   C.  Temblor's Unaddressed Contractual Obligations ..................................14

   D.  Temblor's Unaddressed Regulatory Obligations .................................14

III.    DISCUSSION ...................................................................................15

   A.  No Evidence Supports Any of the Valuations Contained in the Proposed Disclosure Statement .................................................................16

   B.  The Proposed Disclosure Statement Contains No Information on the Collectability of Temblor's Accounts Receivables .................................18

   C.  Terminated Oil and Gas Leases Are Not Assets of the Estate. ...............19

   D.  The Proposed Amended Disclosure Statement Does Not Address Executory Contracts....................................................................22

   E.  The Proposed Disclosure Statement Cannot be Approved Since the Plan is Patently Unconfirmable. ...............................................................

   1. The Plan is Only A Visionary Scheme  ..........................................22

   2. The Proposed Plan Treats Gives Preferential Treatment to the Unsecured Claim of Inproinvest .......................................................................25

   3.  The PFAP Does Not Explain or Justify Its Two-Year Term After Approval. ..................................................................................28

   4. The Proposed Amended Disclosure Statement and PFAP Do Not State What Amounts Unsecured Creditors Would Receive in Liquidation or When Payments Would Be Made. ...........................................................28

IV.     CONCLUSION ..................................................................................28

1

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*In re American Capital Equipment, LLC*,
    688 F.3d 145 (3d Cir. 2012)..................................................................25, 27

*In re Armstrong World Indus., Inc.*,
    348 B.R. 111 (D. Del. 2006) ............................................................................23

*Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*,
    526 U.S. 434 (1999) ........................................................................................23

*In re Bellows*,
    554 B.R. 219 (Bankr. D. Alaska 2016) .....................................................15, 24

*In re Bellows*,
    *supra*, 554 B.R. 228–29 ..................................................................................24

*In the Matter of Boyd v. United States*,
    11 F. 3d 59 (5th Cir. 1994), cert denied 511 U.S. 1107 (1994) ...................20

*In re Breitburn Energy Partners LP*,
    582 B.R. 321 (Bankr. S.D.N.Y. 2018) .......................................................17, 23

*Butner v. United States*,
    440 U.S. 48, 99 S. Ct. 914, 59 L. ed. 2d 136 (1979).....................................19

*In re Cardinal Congregate I*,
    *supra*, 121 B.R. 764 .......................................................................................25

*In re City of Colorado Springs Spring Creek Gen. Imp. Dist.*,
    177 B.R. 684 (Bankr. D. Colo. 1995) ............................................................17

*In re Civitella*,
    15 BR 206 (Bankr E.D. Pa. 1981) ..................................................................16

*In re Copy Crafters Quickprint, Inc.*,
    92 B.R. 973 (Bankr.N.D.N.Y.1988*)*..............................................................24

*In re Copy Crafters Quickprint, Inc.*
    (Bankr. N.D. NY 1988) 92 BR 973.............................................................16, 17

*In re Cypresswood Land Partners, I*,
    409 B.R. 396 (Bankr. S.D. Tex. 2009) ...........................................................23

*In re Dakota Rail, Inc.*,
    *supra,* 104 BR 149 ........................................................................................16

**CASSO & SPARKS, LLP**
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA 91746

*Delaware v. New York,*
    507 U.S. 490, 113 S. Ct. 1550, 123 L. Ed. 2d 211(1993) ........................................ 13, 19

*In re Divine Ripe, L.L.C.,*
    *supra,* 554 B.R. 411 ................................................................................................ 18

*In re East Redley Corporation,*
    16 B.R. 429.............................................................................................................. 16

*In re Ferretti,*
    128 B.R. 16 (Bankr.N.H.1991) ............................................................................... 15

*In re Fierman,*
    21 B.R. 314 (Bankr. E.D. Pa. 1982)........................................................................ 16

*In re Filex,*
    116 B.R. 37 (Bankr. S.D.N.Y. 1990) ..................................................................... 23

*In re Forest Grove,*
    448 B.R. 729 (Bankr.D.S.C..2011) ........................................................................ 24

*Good Hope Refineries, Inc. v. Benavides,*
    602 F. 2d 998 (1st Cir. 1979) ................................................................................. 20

*Hall v. Vance,*
    887 F.2d 1041 (10th Cir. 1989) .............................................................................. 16

*In re Heritage Organization, LLC,*
    376 B.R. 783 (Bankr. N.D. Tex. 2007) .................................................................. 15

*In re Indian National Finals Rodeo Inc.,*
    453 B.R. 387 (Bankr. D. Mont. 2011)..................................................................... 24

*In re Jasik,*
    727 F.2d 1379 (5th Cir.1984).................................................................................. 23

*In re Johns-Manville Corp.,*
    68 B.R. 618 (Bankr. S.D.N.Y. 1986), aff'd, 78 B.R. 407 (S.D.N.Y. 1987), aff'd,
    843 F.2d 636 (2d Cir. 1988) ................................................................................... 26

*Johnson v. Home State Bank,*
    501 U.S. 78 (1991) .................................................................................................. 19

*In re Jones,*
    77 B.R. 541 (Bankr. N.D. Tex. 1987) .................................................................... 26

*In re Jorgensen,*
    66 B.R. 104 (9th Cir. BAP 1986) ........................................................................... 24

**CASSO & SPARKS, LLP**
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA 91746

**OBJECTIONS AND OPPOSITION OF KINGS COUNTY DEVELOPMENT LIMITED TO APPROVAL OF DEBTOR'S PROPOSED FIRST AMENDED DISCLOSURE STATEMENT**

CASSO & SPARKS, LLP
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA 91746

*Kane v. Johns–Manville Corp.*,
 843 F.2d 636 (2d Cir. 1988) ............................................................................ 23

*In re Lason, Inc.*,
 300 B.R. 227 (Bankr. D. Del. Oct. 15, 2003) ................................................. 23

*In re Ligon*,
 50 B.R. 127 (Bankr. M.D. Tenn. 1985) ........................................................... 16

*In re Liljeberg Eners., Inc.*,
 304 F.3d 410 (5th Cir. 2002) ........................................................................... 22

*In re Motors Liquidation Co*.,
 447 B.R. 198 (Bankr. S.D.N.Y. 2011) ............................................................ 26

*In re Nat'l Gypsum Co.*,
 208 F.3d 498 (5th Cir. 2000) ........................................................................... 22

*In re Pecht*,
 57 B.R. 137 (Bankr. E.D. Va. 1985) ............................................................... 22

*In re Phoenix Petroleum Co*.,
 278 B.R. 385 (Bankr. E.D. Pa. 2001) .............................................................. 24

*In the Matter of Pizza of Hawaii, Inc.*,
 761 F.2d 1374 (9th Cir.1985) .......................................................................... 24

*In re Presswood*,
 559 B.R. 204 (Bankr. S.D. Ill. 2016) .............................................................. 19

*In re Quigley Co., Inc.*,
 377 B.R. 110 (Bankr. S.D.N.Y. 2007) ............................................................ 27

*In re Quigley Co., Inc.*,
 437 B.R. 102 (Bankr. S.D.N.Y. 2010) ............................................................ 26

*In re Raborn*,
 470 F. 3d 1319 (11th Cir. 2006) ...................................................................... 19

*RPD Holdings, L.L.C. v. Tech Pharmacy Servs. (In re Provider Meds, L.L.C.)*,
 907 F.3d 845 (5th Cir. 2018), cert. denied, 139 S. Ct.1347 (2019) ............... 22

*In re Sandy Ridge Development Corp.*,
 881 F.2d 1346 (5th Cir. 1989) ......................................................................... 23

*In re Segerstrom*,
 247 F. 3d 218 (5th Cir. 2001) .......................................................................... 19

*In re Sentry Operating Co. of Texas, Inc.*,
 264 B.R. 850 (Bankr. S.D. Tex. 2001) ........................................................... 26

**OBJECTIONS AND OPPOSITION OF KINGS COUNTY DEVELOPMENT LIMITED TO APPROVAL OF DEBTOR'S
PROPOSED FIRST AMENDED DISCLOSURE STATEMENT**

*In re Sierra-Cal,*
   210 B.R. 168 (Bankr. E.D. Cal. 1997) ........................................................................ 25

*In re Silberkraus,*
   253 B.R. 890 (Bankr.C.D.Cal.2000) .......................................................................... 24

*In re Simmons,*
   765 F. 2d 547 (5th Cir. 1985) ................................................................................... 19

*In re Solly,*
   392 B.R. 692 (Bankr. S.D. Tex. 2008) ...................................................................... 18

*In re Thorpe,*
   546 B.R. 172 (Bankr. C.D. Ill.2016) ......................................................................... 19

*In re Trigg,*
   630 F. 2d 1370 (10th Cir. 1980) ............................................................................... 20

*In re West Electronics, Inc.,*
   852 F.2d 79 (3d Cir. 1988) ....................................................................................... 22

*Westland Oil Dev. Corp. v. MCorp. Mgmt. Solutions, Inc. (In re Westland Oil),*
   157 B.R. 100 (S.D. Tex. 1993) ................................................................................. 15

*In re Whitlow,*
   410 B.R. 220 (Bkrptcy. W.D.Va. 2009) .................................................................... 20

**California Cases**

*Lough v. Coal Oil, Inc.,*
   217 Cal.App.3d 1518 (1990) ..................................................................................... 20

*Montana-Fresno Oil Company v. Powell,*
   219 Cal.App.2d 653 (1963) ....................................................................................... 20

*Renner v. Huntington Hawthorne Oil and Gas Co.,*
   39 Cal.2d 93 (1952) .................................................................................................. 20

*San Mateo Community College Dist. v. Half Moon Bay, L.P.,*
   65 Cal.App.4th, 401, 410 (1998) .............................................................................. 20

**Other State Cases**

*In re Hungerford,*
   19 Mont. B.R. 103, 120, 2001 WL 36211305 (Bankr.D Montana 2001) ................ 24

**Federal Statutes**

11 U.S.C.
   § 1107 ....................................................................................................................... 19

**CASSO & SPARKS, LLP**
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA 91746

**CASSO & SPARKS, LLP**
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA 91746

Bankruptcy Code
  § 365(b) .................................................................................................. 22
  § 541 ...................................................................................................... 19
  § 544(a) .................................................................................................. 26
  § 1123(a)(4) ............................................................................................ 25
  § 1125(a) ................................................................................................ 16
  § 1125(b) ............................................................................................ 9, 15
  § 1129(a)(7) ............................................................................................ 28

**California Statutes**

California Civil Code
  § 883.140(b) ........................................................................................... 12

California Commercial Code
  § 9301 .................................................................................................... 27
  § 9501 .................................................................................................... 27
  § 9501(a) ................................................................................................ 27

**Other Authorities**

47 Cal. Jur. 3d Oil and Gas § 5 .................................................................. 27

Fed. R. Bankr. P. 9017 ............................................................................... 29

Fed. R. Civ. P. 43(c) .................................................................................. 29

Local Rule 9014-1(f)(1)(B) ......................................................................... 29

**OBJECTIONS AND OPPOSITION OF KINGS COUNTY DEVELOPMENT LIMITED TO APPROVAL OF DEBTOR'S PROPOSED FIRST AMENDED DISCLOSURE STATEMENT**

**CASSO & SPARKS, LLP**
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA 91746

1    Creditor, Kings County Development Limited ("KCDL"), submits the

2    following Objections and Opposition to the proposed "Debtor's First Amended

3    Disclosure Statement Dated February 3, 2021" ("Proposed First Amended

4    Disclosure Statement" or "PFADS") and its "Debtor's First Amended Plan of

5    Liquidation Dated February 3, 2021" ("Proposed First Amended Plan" or "PFAP")

6    filed by Debtor, Temblor Petroleum Company, LLC ("Temblor" or "Debtor").

7                                    **I.**

8                            **INTRODUCTION**

9        In its January 7, 2021 ruling sustaining most of KCDL's many objections to

10   Temblor's original Proposed Disclosure Statement, the Court specifically directed

11   Temblor to amend the statement to provide additional and sufficient information

12   regarding many important aspects of the liquidation plan. Temblor agreed to do so.

13   Temblor did not fulfill that commitment which it made to the Court and to its

14   creditors last month. Its Proposed First Amended Disclosure Statement only made a

15   few, very minor changes.

16       For example, one of Temblor's largest claimed assets is its claimed account

17   receivables, which it values at $2,010,834.51. The Court directed Temblor to

18   provide information as to those receivables sufficient for the court and its creditors

19   to determine the actual value of any such receivables, which would include, at least,

20   who the account debtors were, the basis for each debt, collection efforts to date,

21   offsets, and some reason why the accounts had not been collected already. Temblor

22   provided none of that information and simply stated:

23       "The accounts receivable owed to Debtor represent money owed to Debtor by

24       customers and its partners associated with Debtor's business. Debtor has

25       worked to collect the money owed to it without having to employ a

26       collection agency or litigation being required. However, Debtor will retain a

27       commercial collection agency to assist it in collecting the accounts receivable

28       owed to it if Debtor cannot collect the receivables before the Effective Date

of the First Amended Plan. Debtor does not believe that the accounts
receivable owed to it are subject to setoffs or other reductions available to the
persons who owe money to Debtor." (PFADS, p. 12, ln. 25- p. 13, ln. 6)

Nothing in the PFADS identifies (1) any account debtor; (2) the amount of
each account; (3) the agreement upon which the account is based; (4) the date and
age of each account; (5) the collectability as to each account debtor; (6) when the
debt will likely be received; (7) the anticipated net recovery; (8) the potential
amount of any offset or counterclaim by the account debtor; or (9) why Temblor has
not already retained a collection agency.

Temblor notably refers to the accounts as "money owed to Debtor by
customers and its partners associated with Debtor's business." However, Temblor is
not a retailer; its is an oil producer and its only "customers" are the companies
which purchase produced oil and gas. By its own admission, it has not produced oil
and gas for over a year. So, who could those "customers" possibly be?  Similarly,
Temblor refers to unidentified "partners associated with Debtor's business."
However, nothing in the Amended Disclosure Statement identifies any "partners" or
any partnership agreement.  Nor does it identify any joint operating agreements or
other agreements that may be the basis for these alleged debts. In fact, in Section
VII.2.c, Temblor asserts that it does not have any executory contracts (PFADS, p.
13, lns. 7-9) This is just one more glaring example of Temblor's complete failure to
amend its Disclosure Statement to meet to provide the additional information which
this Court ordered.

The Court also directed Temblor to provide information regarding the
potential impact of its oil and gas leases by their own terms for failure to produce in
paying quantities.  The PFADS fails to do so.

Other than changing references from the original Disclosure Statement to the
"Amended Disclosure Statement, Temblor hardly charged or added anything. As a
result, Temblor's Proposed Disclosure Statement fails to meet the minimum

CASSO & SPARKS, LLP
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA  91746

**OBJECTIONS AND OPPOSITION OF KINGS COUNTY DEVELOPMENT LIMITED TO APPROVAL OF DEBTOR'S
PROPOSED FIRST AMENDED DISCLOSURE STATEMENT**

**CASSO & SPARKS, LLP**
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA 91746

informational requirements of Section 1125(b) of the Bankruptcy Code. Among other things the Proposed Disclosure Statement ***still fails*** to contain the following information:

- A complete description of the available assets and their *current* value- not just their acquisition cost

- Any estimated valuation of Temblor's assets if the KCDL Lease or any of its other oil and gas leases have terminated for lack of production in paying quantities.

- Any estimate of the cost of plugging and abandoning the well beneath the KCDL Lease, or any of the other wells operated by Temblor and any remediation obligations.

- Any estimate of the financial obligations of the other owners of the remaining working interests in the Witter Field.

- Any estimate of Temblor's financial obligations to the operator and other working interests in the Lynch Canyon Field and other fields.

- Any explanation why Temblor has apparently not received a single offer for any of its assets and why it thinks that it is capable of sell Temblor's assets and implement the plan of liquidation.

- What will happen if Temblor cannot sell within a defined period of time.

- An explanation as to why Temblor has not attempted to resume production when oil prices have increased roughly 65% since its bankruptcy filing and the impact of lack of production on the value of its assets and its sales efforts.

- Any information regarding claims against the estate.

- Any estimate of the time for payment on claims.

- A coherent liquidation analysis setting forth the estimated return that creditors would receive under Chapter 7.

OBJECTIONS AND OPPOSITION OF KINGS COUNTY DEVELOPMENT LIMITED TO APPROVAL OF DEBTOR'S
PROPOSED FIRST AMENDED DISCLOSURE STATEMENT

- Any information relevant to the risks being taken by the creditors and interest holders under Temblor's PFAP
- The actual or projected value that can be obtained from avoidable transfers.
- Any information regarding the existence, likelihood and possible success of non-bankruptcy litigation.

Furthermore, the PFADS still tries to improperly treat the *unsecured* claim of Inproinvest, LLC ("Inproinvest") as a *secured* claim.

Aside from these basic deficiencies, the Proposed First Amended Plan remains "patently unconfirmable.

Since Temblor filed for bankruptcy on April 7, 2020, nine months ago, it has done nothing. Currently, the Debtor, an oil and gas producer, is conducting no oil and gas production operations. According to its Monthly Operating Report for December 2020, Temblor has received no revenue from any oil and gas production post-petition. It has only incurred expenses. The reason for this bankruptcy was not the pandemic- it was and is Temblor's complete inability to operate an oil company at a profit. Eleven months into this bankruptcy, it is time to convert this case to a Chapter 7 liquidation. The Proposed First Amended Disclosure Statement also does nothing to fully meet the Debtor's obligation to inform each of its creditor what it is going to get, when it is going to get it, and what contingencies exist to getting it as required by the Bankruptcy Code. As a result, this Court should not approve the disclosure statement.

## II.

## FACTUAL BACKGROUND

### A.  The KCDL Lease Is Not An Asset of the Debtor's Estate.

At the January 7, 2021 hearing, the Court directed Temblor to address the issue of the valuation of its assets if the KCDL Lease or any of the other oil and gas leases have terminated for lack of production in paying quantities. The only

CASSO & SPARKS, LLP
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA 91746

additional information which Temblor provided was the following:

 "Kings County Development Limited ("KCDL"), a creditor, contends that Debtor's interests in the Witter Field terminated before Debtor filed its Chapter 11 case and Debtor's interests in the Witter Field are not property of the Chapter 11 estate. Debtor disagrees with KCDL's contentions and the Court may be required to determine the validity of KCDL's contentions before Debtor's interest in the Witter Field can be sold." (PFADS, p. 6, lns. 16-21)

Saying that it disagrees is not an explanation. KCDL is the lessor under one of the oil and gas leases as which Temblor claims to be the lessee. The Lease was originally signed in October 2005. As with nearly every oil and gas lease in California, the KCDL Lease would only remain in effect after the primary term expired "for so long thereafter as oil, gas, hydrocarbons or other hydrocarbon substances are produced therefrom in paying quantities." The KCDL Lease terminated by its own terms in 2018.

In August 2019, KCDL demanded that Temblor quitclaim the lease in accordance with its terms and to plug and abandon the well.  KCDL, as lessor, and Temblor, as lessee, entered an "Oil, Gas and Mineral Lease", dated October 3, 2005 ("KCDL Lease"), affecting a portion of the Northwest quarter (NW/4) of Section 21, Township 17 South, Range 17 East, M.D.B.&M. in Fresno County (the "Leased Land"). (Declaration of Douglas Donath. ¶ 2, Exhibit "A" [hereinafter, "Donath Decl. ¶ ___"]) In 2018, Temblor drilled its "Harnsich-McCormick No. 5" well ("HM #5 Well") to a bottom hole location on the Leased Land. However, the well failed to produce oil or gas in paying quantities. (Donath Decl. ¶13) Since Temblor's completion of the HM #5 Well, no new drilling operations were commenced by Temblor on the Leased Land within six months following the completion of that well.  (Donath Decl. ¶14) Since oil and gas has not been produced in paying quantities from the HM #5 Well, and is not currently being produced in paying quantities, and Temblor failed to commence drilling operations

CASSO & SPARKS, LLP
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA  91746

to drill a subsequent well, the KCDL Lease terminated for lack of production of oil and gas in paying quantities. (Donath Decl. ¶15)

On August 7, 2019, KCDL demanded, pursuant to Section 33 of the KCDL Lease, that Temblor immediately execute, acknowledge and deliver to KCDL a quitclaim deed in recordable form surrendering all of the lessee's interest under the KCDL Lease.  KCDL further demanded that Temblor promptly plug and abandon the HM #5 Well pursuant to Section 21 of the KCDL Lease. (Donath Decl. ¶16, Exhibit "2".) California Civil Code Section 883.140(b) also required Temblor to "…within 30 days after demand therefor by the lessor, execute, acknowledge, and deliver, or cause to be recorded, a deed quitclaiming all interest in and to the mineral rights covered by the lease."

Temblor refused to execute, acknowledge and deliver to KCDL a quitclaim deed surrendering all of the lessee's interest under the KCDL Lease. (Donath Decl. ¶17) Nothing in the PFADS explains why Temblor would have any plausible argument that the KCDL Lease, or for that matter, all of its other leases whose terms are tied to production in paying quantities, could possibly remain in effect when Temblor admits that it has not produced oil or gas for over a year. Nevertheless, Temblor asserts in at Section VII. 2.a"

"Debtor's inability to operate its working interests in the Oilfields and the volatility of oil prices since the Petition Date may have a negative impact on the value and marketability of Debtor's working interests in the Oilfields. However, Debtor believes that the value of its assets indicated in its Schedule A/B continues to represent the value of the assets at the present time." (PFADS, p. 12, lns. 8-12)

Again, a completely unsupported assertion that oil and gas leases which have terminated by their own terms have not changed in value is not only unbelievable, but frivolous.

CASSO & SPARKS, LLP
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA 91746

**B. Inprovest's Claim.**

Section IVII.1.b of the PFADS continues to identify Inproinvest, LLC ("Inproinvest") as secured creditor. Despite the characterization of the claim as "secured", the UCC-1 Financing Statement attached to Inproinvest's own proof of claim filed on August 28, 2020 and listed in the Claims Register Claim No. 26 (attached as Exhibit C to the Declaration of John J. Harris In Support of KCDL's Request For Judicial Notice[1]) demonstrates that its financing statement was only filed in *Delaware*, and *was never recorded in Fresno County, the location of the collateral which it purported to secure*. Furthermore, although its proof of claim asserts that its lien is secured, the only "property" which Inproinvest describes as being secured is "Revenue of the debtor under certain oil and gas leases". Inproinvest specifically did *not* check the box on the proof of claim describing its lien as being secured by "Real estate." The Debtor's Monthly Operating Reports show no post-petition revenue from the Debtor's oil and gas leases in the Witter Field. So, there is no collateral that would have possibly secured any lien by Inproinvest. The PFADS does not address any of these issues and only cryptically states: "KCDL believes that Inprovest's claim is unsecured because Inproinvest did not perfect its lien against Debtor's assets before Debtor filed its Chapter 11 case. Debtor disagrees with KCDL's belief in this matter and Inproinvest's claim is treated as a secured claim in the First Amended Plan." (PFADS, p. 9, ln. 28- p. 10, ln.4) Again, an unsupported statement of disagreement is not information or an explanation. Furthermore, Temblor identifies Inproinvest's claim as a "disputed claim" in the same section.

**C. Temblor's Unaddressed Contractual Obligations.**

The PFADS contains a number directly contradictory assertions and statements. For example, in Section VII. 2. C (Executory Contracts and Unexpired

---

[1] KCDL has filed a separate Request for Judicial Notice asking the court to take judicial notice of Inproinvest's proof of claim.

CASSO & SPARKS, LLP
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA 91746

OBJECTIONS AND OPPOSITION OF KINGS COUNTY DEVELOPMENT LIMITED TO APPROVAL OF DEBTOR'S
PROPOSED FIRST AMENDED DISCLOSURE STATEMENT

Leases", Temblor asserts: "Debtor does not believe that it will have any executory contracts or unexpired leases to assume, assign, or reject on the Effective Date of the First Modified Plan. (p.13, lns. 7-9). On the other hand, as noted above, it claims to be owed money by "partners" (PFADS, p. 12, ln. 28- p. 13, ln.1). Temblor also states in Section X.1:

> "Debtor owns fractional interests in the working interests associated with the Oilfields and other persons holding working interests in the Oilfields may have rights of first refusal concerning the purchase of Debtor's interests in the Oilfields. Debtor will honor any right of first refusal that may exist; however, any right of first refusal that may exist will not prevent Debtor from selling its working interests in the Oilfields as expeditiously as possible." (PFADS, p. 14, lns. 13-18)

Similarly, Temblor only owns a percentage of the non-operating working interest in the Lynch Canyon field, which is undoubtedly operated by an operator under a joint operating agreement. Why have each of these contracts not been identified and what other obligations does Temblor have? Furthermore, the KCDL Lease, like most oil and gas leases has a requirement that Temblor obtain KCDL's consent to assignment. Even assuming for the sake of argument that the KCDL Lease has not terminated, there is no discussion in the PFADS as to how Temblor intends to obtain KCDL's or any other lessor's consent without curing all outstanding defaults. Here, the PFADS simply ignores these obvious executory contractual obligations.

### D. Temblor's Unaddressed Regulatory Obligations.

All of Temblor's wells are idle. If its oil and gas leases have terminated, Temblor would have a statutory duty under the California Public Resources Code and the regulations implementing such statutory requirements to plug and abandon those wells. Since the well is not producing, it is a potential nuisance as an idle, deserted well. Yet, the PFADS still fails to address any of Temblor's environmental

CASSO & SPARKS, LLP
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA 91746

1    or regulatory obligations.

## III.

## <u>DISCUSSION</u>

Full disclosure is the critical concept in the reorganization process under the Bankruptcy Code. A disclosure statement must inform a creditor what it is going to get, when it is going to get it, and what contingencies exist to getting it. (*In re Ferretti*, 128 B.R. 16, 19 (Bankr.N.H.1991).)  The Proposed First Amended Disclosure Statement fails to do so. Under Section 1125(b) of the Bankruptcy Code, a debtor cannot solicit acceptance of a plan unless its disclosure statement is first approved by the court as having "adequate information," which is: "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan." (*In re Bellows*, 554 B.R. 219, 225 (Bankr. D. Alaska 2016).) Approval of a disclosure statement should be denied when it does not contain adequate information.

As the Court further held in *Bellows*: "The debtors, as plan proponents, have the burden of proving, by a preponderance of the evidence, that the Plan complies with all of the statutory requirements for confirmation found in § 1129.21.*" (Ibid*., 554 B.R. 226) This requires that a debtor "adequately, not selectively, disclose fully and precisely all information a creditor would reasonably want before voting on the plan." (*Westland Oil Dev. Corp. v. MCorp. Mgmt. Solutions, Inc. (In re Westland Oil),* 157 B.R. 100, 104 (S.D. Tex. 1993). ) A disclosure statement should contain "[a] all factors presently known to the Plan proponent that bear upon the success or failure of the proposals contained in the Plan." (*Ibid*, 157 B.R. 102). Section 1125 was designed to "discourage the undesirable practice of soliciting acceptance or rejection at a time when creditors and stockholders were too ill-informed to act capably in their own interests." (*In re Heritage Organization, LLC*, 376 B.R. 783,

**CASSO & SPARKS, LLP**
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA  91746

794 (Bankr. N.D. Tex. 2007).

A disclosure statement will not be approved where it fails, among other things: (1) to enumerate the assets and liabilities, accounts receivable, physical condition and maintenance required for each parcel of real property; (2) to provide the reason for debtors' financial difficulty; (3) to provide the creditors with the cash requirements needed by the debtors to operate the properties; or (4) to reveal the status of any pending litigation against the debtors and their assets. (*Hall v. Vance*, 887 F.2d 1041, 1043 (10th Cir. 1989).) A disclosure statement is misleading where it contains glowing opinions or projections having little or no basis in fact. *(In re Copy Crafters Quickprint, Inc.,* (Bankr. N.D. NY 1988) 92 BR 973, 981)

The result of the many substantive omissions in the PFADS is that it fails to meet these minimal requirements for approval. In its current form, the Disclosure Statement is both facially and substantively deficient with respect to critical Plan-related issues and fails to satisfy the basic disclosure requirements of Bankruptcy Code section 1125(a).

## A. <u>No Evidence Supports Any of the Valuations Contained in the Proposed Disclosure Statement.</u>

The proponent of a plan "must set forth a factual basis for the purported value of the real property. Such information is essential for a party weighing the credibility and merits of the plan." (*In re East Redley Corporation*, 16 B.R. 429, 430 (Bkrtcy.E.D.Pa.1982).) Factual support must be given for any opinion set forth in the disclosure statement. (*In re Civitella*,15 BR 206, 208 (Bankr E.D. Pa. 1981); *In re Copy Crafters Quickprint, Inc., supra*, 92 BR 981; *In re Dakota Rail, Inc., supra,*104 BR 149.) Furthermore, "... opinions without factual support are not proper content of a disclosure statement and do not provide the parties voting on the plan with adequate information." (*Ibid*., 16 B.R. at 430; see also, *In re Fierman*, 21 B.R. 314, 315 (Bankr. E.D. Pa. 1982).) Conclusory allegations and opinions without supporting facts are generally not acceptable. (*In re Ligon*, 50 B.R. 127, 130

CASSO & SPARKS, LLP
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA 91746

(Bankr. M.D. Tenn. 1985).) The Debtor's own opinion of the value of its assets, is not adequate. (*Redley Corp.*, supra, 16 B.R. 430.)

In this case, Temblor has submitted no declarations or other evidentiary support to substantiate any part of its Proposed Disclosure Statement.

A plan which is dependent on the sale of the Debtor's assets requires a recent valuation of the property by a qualified individual. A disclosure statement premised on an unsupported and self-serving valuation and a speculative sale cannot be approved. (*In re Copy Crafters Quickprint, Inc.*, *supra*, 92 B.R 981.) Where a plan is dependent on the sale of property, the disclosure statement should contain a discussion of any efforts to date, as well as intended future efforts, to bring about a sale or refinancing of the property.

The market value of the Temblor's assets is the central issue in this proceeding. "There are three primary methods used to determine the total enterprise value, or TEV, of an oil and gas E & P company: (a) a net asset value ("NAV") analysis, (b) a precedent transaction analysis and (c) a comparable company analysis." (*In re Breitburn Energy Partners LP*, 582 B.R. 321, 330 (Bankr. S.D.N.Y. 2018).) Temblor has made no attempt to utilize any of these methods to value its assets.

Here, importantly, the Proposed Disclosure Statement also fails to disclose the potential impact of any decrease in the value of the oil and gas leases comprises the Debtor's assets. On that ground, alone the Proposed Disclosure Statement could be found to be inadequate. (*In re City of Colorado Springs Spring Creek Gen. Imp. Dist.*, 177 B.R. 684, 690 (Bankr. D. Colo. 1995).)

Nevertheless, the Proposed Disclosure Statement continues to assert that "Debtor believes that its interests in the Oilfields have a value of $5,323,016.00. See Schedule A/B Assets: Real and Personal Property filed by Debtor on April 25, 2020." (PFADS, p. 12, lns 4-5) Temblor's original petition valued its "48.56% working interest" in the Witter Field at $1,519,909.00. That valuation is not

**CASSO & SPARKS, LLP**
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA 91746

allocated between the different leases comprising that working interest, nor does the Proposed Disclosure Statement contain any information as to how that amount was calculated and why it has not changed in the last nine months. Nor has any evidence been submitted to support the valuation. Nor has any evidence been provided to demonstrate that the value has not changed substantially since April 2020, considering that the leases have not been operating for well over a year now. On these grounds alone, the Court should not approve the Proposed Disclosure Statement.

**B. <u>The Proposed Disclosure Statement Contains No Information on the Collectability of Temblor's Accounts Receivables.</u>**

A proposed disclosure statement should not be approved where it does not disclose adequate information about potential or actual account receivables that may be collectible and, if so, the extent to which the account receivables are collectible. (*In re Divine Ripe, L.L.C., supra*, 554 B.R. 411) Temblor continues asserts that its account receivables remain $2,010,834.51. However, it does not state in the PFADS whether any of its account receivables are actually collectible. (See, PFADS, p. 12-p. 13, ln.6). The Proposed Amended Disclosure Statement still fails to identify the source of those accounts, the collectability, and why it thinks that a collection agency would have any success in collecting any of them. For all that the PFADS tells us, all of the account debtors may also be in Chapter 11 like Temblor or its insiders whom it is trying to protect.

Here, the value of Temblor's account receivables depends on its likelihood of success in prevailing in a lawsuit against the account debtor. (See, *In re Solly*, 392 B.R. 692, 696 (Bankr. S.D. Tex. 2008) ("The value [("The value [of a cause of action] is determined by estimating the value of the claim on the petition date multiplied by the percentage likelihood that the debtor will prevail in the lawsuit."); In re Hall, 304 F.3d 743, 748 (7th Cir. 2002) ("[Causes of action are] . . . contingent assets whose value must be assessed in light of the probability that they will be

realized."); *In re Presswood*, 559 B.R. 204, 211 (Bankr. S.D. Ill. 2016) (the value of a cause of action "is determined by multiplying the amount of the judgment that the plaintiff would recover if he litigated and won by the probability of prevailing"). The PFADS contains none of this information.

## C. Terminated Oil and Gas Leases Are Not Assets of the Estate.

In a Chapter 11 case in which the debtor continues to operate the business after filing the bankruptcy petition, the debtor is a "debtor in possession" and has the same limitations, authority and power of a bankruptcy trustee. (11 U.S.C. §1107.) It is an "elemental rule" of bankruptcy that the trustee or debtor in possession acquires no greater right or title to property than the debtor and takes the property subject to the same conditions and burdens as the debtor. (*In re Raborn*, 470 F. 3d 1319, 1323 (11th Cir. 2006). The scope of the bankruptcy "estate" is defined by Section 541 of the Bankruptcy Code. 11 U.S.C. §541. Section 541 cannot create a right or title in the debtor that does not exist under state law. Property interests are created and defined by state law absent a countervailing federal interest. (See, *Delaware v. New York*, 507 U.S. 490, 501-02, 113 S. Ct. 1550, 1557, 123 L. Ed. 2d 211(1993); *Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 918, 59 L. ed. 2d 136 (1979); *In re Thorpe*, 546 B.R. 172, 176 (Bankr. C.D. Ill.2016); *In re Segerstrom,* 247 F. 3d 218, 223 (5th Cir. 2001) ("*Butner* espouses the principle that property rights within a state should remain the same within and outside of bankruptcy"). A bankruptcy discharge impacts only *in personam* claims, and does not alter property rights or otherwise adjust the in rem rights of non-debtors. *Johnson v. Home State Bank,*501 U.S. 78, 84 (1991); *In re Simmons*, 765 F. 2d 547 (5th Cir. 1985).) The Bankruptcy Act does not authorize a debtor to sell or to distribute other people's property among its creditors. Such property rights existing before bankruptcy in persons other than the bankrupt must be recognized and respected in bankruptcy.

Temblor asserts that its "Debtor owns fee simple determinable interests in the

Oilfields". (PFADS p.12, ln. 3) However, as the Court held in *Montana-Fresno Oil Company v. Powell*, 219 Cal.App.2d 653, 659 (1963): "***An operating oil lease is both a conveyance and a contract*** designed to fit the needs of the owner of the land and the operator of the oil properties in making them productive. As such, it contains traditional conveyancing portions and particularly phrased contractual portions." (Emphasis added.) Following a long line of California authority, the Court in *Montana-Fresno* ultimately held at 219 Cal.App.2d 665-667 that the lease, the "fee simple determinable interest", automatically terminated upon the occurrence of the stated condition, the lack of production in "paying quantities" and that the complete cessation of production ended the term of the lease (See, also, *Lough v. Coal Oil, Inc*., 217 Cal.App.3d 1518, 1528-1529 (1990); *San Mateo Community College Dist. v. Half Moon Bay, L.P.*, 65 Cal.App.4th, 401, 410 (1998); *Renner v. Huntington Hawthorne Oil and Gas Co.*, 39 Cal.2d 93, 98-99 (1952).) Because the termination of the mineral lease for lack of production is self-operative under California law, termination is not prevented by the automatic stay arising from the filing of the bankruptcy petition. (*In re Trigg*, 630 F. 2d 1370, 1373 (10th Cir. 1980) [self-operative termination of mineral lease not barred by automatic stay]; *Good Hope Refineries, Inc. v. Benavides*, 602 F. 2d 998 (1st Cir. 1979) [Texas mineral lease terminated automatically for failure to tender delay rentals, without regard to bankruptcy]).

Plan confirmation cannot "magically revest" property that was not part of the bankruptcy estate. (*In the Matter of Boyd v. United States*, 11 F. 3d 59 (5th Cir. 1994), cert denied 511 U.S. 1107 (1994) [classification of foreclosed real estate as exempt property of debtor in confirmed plan did not restore property to debtor.]; *See also, In re Whitlow*, 410 B.R. 220, 223 (Bkrptcy. W.D.Va. 2009). [where debtor's interest in property terminated, property not revested in debtor by bankruptcy plan].)

CASSO & SPARKS, LLP
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA 91746

20

**OBJECTIONS AND OPPOSITION OF KINGS COUNTY DEVELOPMENT LIMITED TO APPROVAL OF DEBTOR'S PROPOSED FIRST AMENDED DISCLOSURE STATEMENT**

CASSO & SPARKS, LLP
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA 91746

Among the oil and gas leases which Temblor claims as an asset in the Witter Field is the KCDL Lease. As set forth in the Declaration of Douglas Donath ("Donath Decl.") filed in support of this Opposition demonstrates, Temblor has *never* produced oil and gas in paying quantities and the KCDL Lease terminated for lack of production of oil and gas in paying quantities. (Donath Decl. ¶10-13.)  As a result, Temblor no longer has a working interest in that lease.  Accordingly, the KCDL Lease could not be considered an asset of the estate. Considering that Temblor's other oil and gas leases in the Witter Field also have not been producing for an extended period, there is a reasonable likelihood that also terminated for lack of production in paying quantities.  (Donath Decl. ¶4.)

All that remains is Temblor's obligation to plug and abandon the well in the KCDL Lease and to deliver a quitclaim.  However, the effect of the termination of the KCDL Lease and Temblor's other leases is not discussed, and the administrative expense of abandonment has not been quantified in the PFADS, nor have any other abandonment obligations of Temblor.

Also, Temblor has a number of obligations to KCDL and to other lessors under the oil and gas leases which it claims as assets, including, royalty payment requirements, drilling obligations, audit rights, consent-to-assignment rights, and lease termination provisions. Knowledge of the impact of the plan on continuing maintenance of oil and gas leases is material to any lessor or any other creditor considering the Plan. For that reason, any disclosure statement addressing Temblor's oil and gas leases must fully address the preservation of any working interest  rights and needs to  further  disclose  that  the automatic termination of those leases for non-production under California law. These rights are not  "claim" and are not subject to "discharge and/or release" by the Plan. Absent such disclosure, a creditor reviewing  the  plan  might erroneously conclude that the Plan functions to revive or extend otherwise-terminated oil and gas leases.

**D.    The Proposed Amended Disclosure Statement Does Not Address Executory Contracts.**

Section 365(b) of the Bankruptcy Code requires a debtor to cure all defaults, compensate the counterparty for any pecuniary loss, and provide adequate assurance of future performance prior to the assumption of any contract or lease.  (See, *In re Nat'l Gypsum Co.,* 208 F.3d 498, 506 (5th Cir. 2000) ("Where the debtor assumes an executory contract, it must assume the entire contract, *cum onere*—the [trustee] accepts both the obligations and the benefits of the executory contract" and a trustee may not "blow hot and cold.")  The decision to reject a contract or lease must be made *before* confirmation.  (See, *Fla. Dep't of Revenue v. Piccadilly Cafeterias*, Inc., 554  U.S. 33, 46 (2008); *RPD Holdings, L.L.C.  v. Tech Pharmacy Servs. (In re Provider Meds, L.L.C.)*, 907 F.3d 845, 851 (5th Cir. 2018), cert. denied, 139 S. Ct.1347 (2019).)

Similarly, "[I]f a contract could not be assigned under applicable law, it may not be assumed or assigned by the [debtor]." *In re West Electronics, Inc*., 852 F.2d 79, 83 (3d Cir. 1988) ["[Section 365(c)(1)'s prohibition against] assumption of contracts is applicable to any contract subject to a legal prohibition against assignment."]. A debtor may not assume an executory contract unless and until all defaults are cured; i.e., the debtor's cure obligations include the obligation to cure all existing defaults as of the time of assumption and assignment. (*In re Liljeberg Eners., Inc.*, 304 F.3d 410 (5th Cir. 2002).)

Temblor indisputably has executory contracts, including operating agreements and other agreements with other working interest owners, which it has completely failed to disclose. The PFADS contains no information or discussion as to how Temblor proposes to perform under its executory contracts and to cure any of its defaults.

**E    The Proposed Disclosure Statement Cannot Be Approved Since the Plan Is Patently Unconfirmable.**

CASSO & SPARKS, LLP
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA  91746

A bankruptcy court may address confirmability issues in advance of a hearing on confirmation. See, e.g., *In re Pecht*, 57 B.R. 137, 139 (Bankr. E.D. Va. 1985) ["If, on the face of the plan, the plan could not be confirmed, then the Court will not subject the estate to the expense of soliciting votes and seeking confirmation."]; See also, *In re Filex*, 116 B.R. 37, 71 (Bankr. S.D.N.Y. 1990).) As the Plan proponent, the Debtor bears the burden of proving that the Plan satisfies the confirmation requirements contained in Section 1129(a) and, as applicable, the "cramdown" provisions of Section 1129(b).(See, e.g., *In re Cypresswood Land Partners, I,* 409 B.R. 396, 422 (Bankr. S.D. Tex. 2009); *In re Armstrong World Indus., Inc.,* 348 B.R. 111, 120 n.14 (D. Del. 2006); *In re Breitburn Energy Partners LP*, 582 B.R. 321, 349 (Bankr. S.D.N.Y. 2018); 7 Collier on Bankruptcy ¶ 1129.02[4].)

Under the "best interests" test, Temblor must demonstrate that the Plan provides creditors with a recovery of at least as much as such creditor would receive in a liquidation of the Debtors' assets. The best interests test applies to each individual, impaired creditor who did not accept the plan. (See *Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 442 n.13 (1999); *In re Lason, Inc.*, 300 B.R. 227, 232 (Bankr. D. Del. Oct. 15, 2003) ["Section 1129(a)(7)(A) requires a determination whether 'a prompt chapter 7 liquidation would provide a better return to particular creditors or interest holders than a chapter 11 reorganization.'"].)

The debtor must also demonstrate that the plan has been proposed in "good faith". This requires that Temblor prove that its Plan "has been proposed in good faith and not by any means forbidden by law." The "good faith" requirement "is to be determined by the totality of the circumstances," and has generally been interpreted as requiring "honesty and good intentions" in formulating and proposing a Chapter 11 plan. (See, *In re Sandy Ridge Development Corp.*, 881 F.2d 1346, 1353 (5th Cir. 1989); *In re Jasik*, 727 F.2d 1379, 1383 (5th Cir.1984)); *Kane v. Johns–Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988) ("The good-faith test means that

CASSO & SPARKS, LLP
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA 91746

**OBJECTIONS AND OPPOSITION OF KINGS COUNTY DEVELOPMENT LIMITED TO APPROVAL OF DEBTOR'S PROPOSED FIRST AMENDED DISCLOSURE STATEMENT**

the plan was proposed with honesty and good intentions and *with a basis for expecting that a reorganization can be effected*."). Temblor cannot satisfy these confirmation requirements and, therefore, the Proposed Amended Plan could not be confirmed.

1. <u>The Plan is Only A Visionary Scheme</u>.

Where, as here, the plan's inadequacies are patent, they may, and should be addressed at the disclosure statement stage. (*In re Copy Crafters Quickprint, Inc*., 92 B.R. 973, 980 (Bankr.N.D.N.Y.1988*); In re Phoenix Petroleum Co*., 278 B.R. 385, 394 (Bankr. E.D. Pa. 2001).) A plan "…is feasible if the sale of the [assets] will generate sufficient proceeds to pay all secured and priority debt." (*In re Bellows, supra*, 554 B.R. 228–29.) "[W]here a plan is on its face nonconfirmable, as a matter of law, it is appropriate for the court to deny approval of the disclosure statement describing the nonconfirmable plan." (*In re Silberkraus*, 253 B.R. 890, 899 (Bankr.C.D.Cal.2000).) A plan cannot be confirmed unless it is feasible, meaning that confirmation "is not likely to be followed by the liquidation, or need for further financial reorganization, of the debtor." (*In re Bellows, supra*, 554 B.R. 227; *In re Forest Grove*, 448 B.R. 729, 736 (Bankr.D.S.C..2011).)

The Debtor's plan here depends upon the sale of its assets. As the Court held in *Bellows, supra*, 554 B.R. 228–29: "When evaluating the feasibility of the sale of a business, courts are tasked to ensure that the debtors' plan is not 'a visionary scheme which promises more than the [debtors] can deliver.'" The Court has a duty under § 1129(a)(11) to protect creditors against such "visionary schemes." (*In the Matter of Pizza of Hawaii, Inc.,* 761 F.2d 1374, 1382 (9th Cir.1985).)

The Ninth Circuit BAP has defined feasibility as a factual determination, and "as whether the things which are to be done after confirmation can be done as a practical matter under the facts." *In re Jorgensen*, 66 B.R. 104, 108 (9th Cir. BAP 1986).) The Debtors bear the burden of establishing the feasibility of its plan by a preponderance of the evidence. *In re Hungerford*, 19 Mont. B.R. 103, 120, 2001 WL

36211305, *11 (Bankr.D Montana 2001).  The Court cannot confirm a plan unless it has at least a reasonable chance of success. (*In re Indian National Finals Rodeo Inc.*, 453 B.R. 387, 402 (Bankr. D. Mont. 2011).)

The Proposed Disclosure Statement contains no information that could satisfy this court or the creditors that Temblor could possibly sell its assets within a reasonable time for any amount that would exceed abandonment costs. In the meantime, Temblor continues to unnecessarily incur administrative expenses with no income to pay them.

If a prompt chapter 7 liquidation would provide a better return to particular creditors or interest holders than a chapter 11 reorganization, then a reorganization is inappropriate and a chapter 11 plan should *not* be confirmed. (*In re Sierra-Cal*, 210 B.R. 168, 172 (Bankr. E.D. Cal. 1997).) Courts generally have agreed that it may be appropriate to consider issues at the disclosure hearing stage which could otherwise be raised at confirmation, if the described plan is fatally flawed so that confirmation would not be possible. If the disclosure statement describes a plan that is so "fatally flawed" that confirmation is "impossible," the court should exercise its discretion to refuse to consider the adequacy of disclosures. *In re Cardinal Congregate I, supra,* 121 B.R. 764.) Such an exercise of discretion is appropriate because undertaking the burden and expense of plan distribution and vote solicitation is unwise and inappropriate if the proposed plan could never legally be confirmed. (*In re American Capital Equipment, LLC*, 688 F.3d 145, 154–55 (3d Cir. 2012).)  In this case, Chapter 7 liquidation is the only plausible outcome.

2.  The Proposed Plan Treats Gives Preferential Treatment to the Unsecured Claim of Inproinvest.

The PFAP here improperly diverts substantial estate value away from the Debtor's unsecured creditors and delivers it, instead, to an allegedly secured party, Inproinvest, in violation of the Bankruptcy Code's confirmation requirements. Section 1123(a)(4) of the Bankruptcy Code requires a plan to provide the same

CASSO & SPARKS, LLP
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA  91746

treatment for each claim of a particular class. "That means, as practical matter, that all allowed claims within a particular class should get the same treatment, and that if claims are disputed and not yet allowed (but have the potential to be allowed), reasonable measures must be taken to ensure that the required same treatment is received if and when they're allowed." (*In re Motors Liquidation Co*., 447 B.R. 198, 215 (Bankr. S.D.N.Y. 2011).) Here, the Plan provides significantly better treatment for Inproinvest than the treatment afforded other unsecured creditors. There is no legitimate justification for such disparate treatment. (See, e.g., *In re Sentry Operating Co. of Texas, Inc*., 264 B.R. 850, 864 (Bankr. S.D. Tex. 2001) (differential treatment of substantially similar classes of claims unfair discrimination); *In re Johns-Manville Corp.*, 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986), aff'd, 78 B.R. 407 (S.D.N.Y. 1987), aff'd, 843 F.2d 636 (2d Cir. 1988) (disparate treatment of substantially similar claims unfairly discriminated). The Plan cannot comply with the "good faith" requirements of Section 1129(a)(3), because it over-compensates a preferred party. (See, e.g., *In re Quigley Co., Inc*., 437 B.R. 102 (Bankr. S.D.N.Y. 2010) (plan process benefitting certain preferred creditors to the detriment of others not proposed in "good faith")).

Section 544(a) of the Bankruptcy Code "…provides the debtor-in-possession the ability to avoid certain unperfected pre-petition liens thereby relegating that purported secured claim to an unsecured claim. Section 544 gives the Trustee the rights of a bona fide purchaser and an attaching lien creditor (the strong-arm powers). *These rights cut off most unrecorded interests and unperfected security interests*." (*In re Jones*, 77 B.R. 541, 548 (Bankr. N.D. Tex. 1987) The practical effect of this provision is that the debtor-in-possession takes the position of a judgment lien creditor under state law and may avoid most security interests not properly perfected pre-petition.

State law governs with regard to whether or not perfection is proper. Debtor contends that its interests in its oil and gas leases lease are interests in real property.

**CASSO & SPARKS, LLP**
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA  91746

1  As such, a lien on such an interest must be properly recorded in order to be

2  perfected or that interest is subject to avoidance under the strong-arm-provisions.

3  California law, where the wells and leases are located governs perfection, the effect

4  of perfection or non-perfection, and the priority of a security interest in as-extracted

5  collateral. (Cal. Com. Code § 9301 (West); 47 Cal. Jur. 3d Oil and Gas § 5.)  For a

6  security interest to be perfected in such collateral, Cal. Com. Code § 9501(a)

7  requires that the financing statement be filed in "(1) The office designated for the

8  filing or recording of a record of a mortgage on the related real property, if either of

9  the following conditions is satisfied: (A) The collateral is as-extracted collateral or

10  timber to be cut."

11        Accordingly, to perfect a lien as required by California Commercial Code §

12  9501, Inproinvest had to record in each of the counties in which Temblor's assets

13  are located a deed of trust securing any lien on any oil and gas leases and a

14  financing statement perfecting any lien in any oil and gas produced. Since it

15  indisputably failed to do so, no lien attached to either any oil and gas leases, or to

16  any as-extracted collateral, such as any oil and gas produced or the proceeds

17  therefrom. As a result, Inproinvest is no more than an unsecured creditor and is not

18  entitle to any special class treatment.

19        Where, as here, classes of the same priority are segregated without any

20  justification, and the result is a materially less favorable recovery for one such class,

21  the Court may address the Plan's patent unconfirmability through denial of the

22  Disclosure Statement. (*In re Am. Capital Equip., LLC*, 688 F.3d 145, 154 (3d Cir.

23  2012) ["Courts have recognized that if it appears there is a defect that makes a plan

24  inherently or patently unconfirmable, the  Court  may  consider  and resolve that

25  issue at the disclosure stage[.]'"] *In re Quigley Co., Inc*., 377 B.R. 110, 115-16

26  (Bankr. S.D.N.Y. 2007) (if a plan is patently unconfirmable on its face, solicitation

27  of votes on the plan would be futile).)

28

**OBJECTIONS AND OPPOSITION OF KINGS COUNTY DEVELOPMENT LIMITED TO APPROVAL OF DEBTOR'S
PROPOSED FIRST AMENDED DISCLOSURE STATEMENT**

### 3. The PFAP Does Not Explain or Justify Its Two-Year Term After Approval.

One important element of any disclosure statement or plan of reorganization is a statement of when the claims will be paid. Nothing in the PFADS discusses this question. Section 10.01 of the PFAP states in a circular manner: "There will be distributions to creditors under the First Amended Plan. Timing of such distributions will be made as described in the First Amended Plan." However, nothing in the plan or the PFADS states when that will occur.

Furthermore, nothing in the PFAP or the PFADS states an outside limit on the sale of any assets or the collection of any accounts receivable, other than the unsupported assertion the PFAP that "Debtor expects to collect its accounts receivable within two years of the Effective Date (PFAP, p. 13, lns. 7-8). The PFAP also provides for a two-year term of the plan. (PFAP, p. 25, lns. 23-25). However, nothing in the PFADS explains or justifies why the Debtor should have two years to liquidate when it is completely incapable of operating right now and has not been able to sell any assets or collect any accounts in the last year.

### 4. The Proposed Amended Disclosure Statement and PFAP Do Not State What Amounts Unsecured Creditors Would Receive in Liquidation or When Payments Would Be Made.

Procrastination is not a plan for reorganization. Under the "best interests test" under Section 1129(a)(7) of the Bankruptcy Code, if the holder of a claim impaired under a plan of reorganization has not accepted the plan, then such holder must receive on account of such claim property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive if the debtor were liquidated under Chapter 7. (11 U.S.C. § 1129(a)(7).) The Liquidation Analysis in Section XIII (p. 19, lns. 6-16) provides no such analysis. As noted, the PFADS provides no information on the collectability of account receivables. It provides no legitimate information regarding the likely sales proceeds from the sale

CASSO & SPARKS, LLP
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA 91746

**OBJECTIONS AND OPPOSITION OF KINGS COUNTY DEVELOPMENT LIMITED TO APPROVAL OF DEBTOR'S PROPOSED FIRST AMENDED DISCLOSURE STATEMENT**

of Temblor's assets or when they might occur. Temblor claims that creditors would see a better result under the Plan, but fails to explain how that would be achieved in the two years after confirmation in a situation where the Debtor is not conducting any operations, is not paying creditors, is not maintaining its leases and facilities, and apparently, has not been able to identify a single prospective buyer after a year of sales efforts. Temblor cannot explain how its assets would be more valuable two years from now after having been neglected for so long. Without this information, the PFADS fails to adequately inform creditors of the true probable recovery in the hypothetical chapter 7 liquidation contemplated by the best interests test, and creditors lack sufficient information to make an informed decision regarding the Plan. Also, the PFADS does not provide any analysis regarding the number and amount of the scheduled and filed unsecured claims against the Debtor.

## IV.

## CONCLUSION

For the foregoing reasons, Creditor, Kings County Development Limited, requests that this Court enter an order sustaining its objections to the Proposed Amended Disclosure Statement, deny the approval of Debtor's Proposed First Amended Disclosure Statement, and provide such other and further relief as may be just and proper. KCDL reserves the right to amend or supplement this Objection at any time prior to approval of the Disclosure Statement or during the Plan confirmation hearing. Further, KCDL reserves the right to raise additional objection points at the Plan confirmation hearing, and to introduce evidence in supports of its objections to both the Proposed Amended Disclosure Statement and the Proposed Amended Plan. KCDL consents to the Court's resolution of disputed material factual issues (Fed. R. Civ. P. 43(c), Fed. R. Bankr. P. 9017 and Local Rule 9014-1(f)(1)(B).)

**CASSO & SPARKS, LLP**
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA 91746

**OBJECTIONS AND OPPOSITION OF KINGS COUNTY DEVELOPMENT LIMITED TO APPROVAL OF DEBTOR'S PROPOSED FIRST AMENDED DISCLOSURE STATEMENT**

1    Dated:  February 12, 2021          CASSO & SPARKS, LLP

2

3                                By:    /s/ John J. Harris

4                                       John J. Harris
                                        Attorneys for
5                                       Kings County Development Limited

     4829-6140-6428, v. 1
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CASSO & SPARKS, LLP**
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA  91746

**OBJECTIONS AND OPPOSITION OF KINGS COUNTY DEVELOPMENT LIMITED TO APPROVAL OF DEBTOR'S PROPOSED FIRST AMENDED DISCLOSURE STATEMENT**