John J. Harris (SBN 93841)
**CASSO & SPARKS, LLP**
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA 91746
jharris@cassosparks.com
Telephone: 626.269.2980

Attorneys for Creditor, Kings County Development Limited

# UNITED STATES BANKUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| In Re<br><br>TEMBLOR PETROLEUM COMPANY, LLC<br><br>    Debtor-in-Possession. | CASE NO.: 2020-11367<br><br>Chapter 7<br><br>**DC: JMV-1**<br>     **DMG-7**<br><br>**OBJECTIONS, OPPOSITION AND RESPONSE OF KINGS COUNTY DEVELOPMENT LIMITED TO NOTICE OF INTENT TO ABANDON INTEREST IN ESTATE PROPERTY AND MOTION TO EXTEND DEADLINE TO ASSUME EXECUTORY CONTRACTS AND LEASES; REQUEST FOR HEARING**<br><br>Date: June 29, 2022<br>Time: 1:30 p.m.<br>Place: United States Courthouse<br>       2500 Tulare St., 5th Fl.<br>       Fresno, CA<br>Judge: Hon. Jennifer E. Niemann |

.

1
**OBJECTIONS, OPPOSITION AND RESPONSE OF KINGS COUNTY DEVELOPMENT LIMITED TO NOTICE OF INTENT TO ABANDON INTEREST IN ESTATE PROPERTY AND MOTION TO EXTEND DEADLINE TO ASSUME EXECUTORY CONTRACTS AND LEASES**

Creditor, Kings County Development Limited ("KCDL"), submits the following Objections, Opposition and Response to the "Notice of Intent to Abandon Interest in Estate Property" ("Notice of Intent to Abandon Interest"), filed by the Chapter 7 Trustee dated June 1, 2022 and the Chapter 7 Trustee's "Motion to Extend Deadline to Assume Executory Contracts And Leases", also dated June 1, 2022 ("Motion to Extend"). KCDL further requests a hearing on the proposed abandonment pursuant to Bankruptcy Rule 6007(b).

## I.
## INTRODUCTION

The Trustee's motion to abandon "Any and all oil, gas and/or mineral interests claimed by the Debtor Temblor Petroleum Company, LLC, including those associated with and described as the Witter Field", assumes without any evidentiary support whatsoever, that the bankruptcy estate actually has an interest in those oil, gas and mineral rights. The Trustee has identified KCDL's expired oil and gas lease with the Debtor, Temblor Petroleum Company, LLC ("Temblor" or "Debtor") as one of the leases which it seeks to abandon. However, that lease terminated by its own terms. Accordingly, the Trustee has no property interest which it could abandon.

KCDL has been waiting for years to receive a quitclaim of the KCDL Lease. The lack of a quitclaim has created a cloud on its title to its mineral rights and, as a result, is impairing its ability to lease the property to another operator and, potentially to sell the property. While KCDL appreciates the fact that the Trustee does not want the KCDL Lease, the most appropriate course of action would be for the Trustee to perform its obligation under that lease and deliver a quitclaim to KCDL

///

///

CASSO & SPARKS, LLP
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA 91746

1

**OBJECTIONS, OPPOSITION AND RESPONSE OF KINGS COUNTY DEVELOPMENT LIMITED TO NOTICE OF INTENT TO ABANDON INTEREST IN ESTATE PROPERTY AND MOTION TO EXTEND DEADLINE TO ASSUME EXECUTORY CONTRACTS AND LEASES**

CASSO & SPARKS, LLP
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA 91746

## II.

## FACTUAL BACKGROUND

**A. <u>The KCDL Lease Is Not An Asset of the Debtor's Estate</u>.**

The Trustee's Notice of Intent to Abandon Interest states that:

"The Trustee intends to abandon that are encumbered by consensual liens or otherwise claimed as exempt by the above-caption debtors' liens: Any and all oil, gas and/or mineral interests claimed by the Debtor Temblor Petroleum Company, LLC, including those associated with and described as the Witter Field."

One of the oil and gas leases claimed by the Debtor, Temblor Petroleum Company, LLC ("Temblor") was between Temblor, as lessee, and KCDL as lessor and dated October 3, 2005 ("KCDL Lease"), which affected a portion of the Northwest quarter (NW/4) of Section 21, Township 17 South, Range 17 East, M.D.B.&M. in Fresno County (the "Leased Land"). (*Declaration of Douglas Donath.* ¶ 4, Exhibit "A" [hereinafter, "*Donath Decl.* ¶ ___"])

As with nearly every oil and gas lease in California, the KCDL Lease could only remain in effect after the primary term expired "for so long thereafter as oil, gas, hydrocarbons or other hydrocarbon substances are produced therefrom in paying quantities." (Donath Decl. ¶ 7-10)

In 2018, Temblor drilled its "Harnsich-McCormick No. 5" well ("HM #5 Well") to a bottom hole location on the Leased Land. However, the well failed to produce oil or gas in paying quantities. (*Donath Decl.* ¶12) Since Temblor's completion of the HM #5 Well, no new drilling operations were commenced by Temblor on the Leased Land within six months following the completion of that well. (*Donath Decl.* ¶13)

Since oil and gas has not been produced in paying quantities from the HM #5 Well, and the well is not currently being produced in paying quantities, and Temblor failed to commence drilling operations to drill a subsequent well, the KCDL Lease

terminated for lack of production of oil and gas in paying quantities. (*Donath Decl.* ¶14)

California Civil Code Section 883.140(b) required Temblor to "…within 30 days after demand therefor by the lessor, execute, acknowledge, and deliver, or cause to be recorded, a deed quitclaiming all interest in and to the mineral rights covered by the lease."

Accordingly, on August 7, 2019, KCDL demanded, pursuant to Section 33 of the KCDL Lease, that Temblor immediately execute, acknowledge and deliver to KCDL a quitclaim deed in recordable form surrendering all of the lessee's interest under the KCDL Lease. (*Donath Decl.* ¶15, Exhibit "B".)

Temblor refused to execute, acknowledge and deliver to KCDL a quitclaim deed surrendering all of the lessee's interest under the KCDL Lease. (*Donath Decl.* ¶16).

KCDL has now been waiting for more than two and half years for its title to be cleared through a quitclaim from Temblor, so that it can lease the property to one or more other oil companies who actually have the financial and operational capability to drill for and produce oil and gas- a capability that Temblor simply does not have. The lack of a quitclaim of the KCDL Lease with Temblor has been identified in KCDL's discussions with prospective buyers, lessees and operators as being a fundamental obstacle to moving forward with any contractual or other arrangement. (*Donath Decl.* ¶17)

Since the Trustee obviously has no intention to resume production and has not been able to interest a buyer in purchasing any of the Witter Field Leases, the Trustee and the estate have no recognizable legitimate interest in continuing to cloud KCDL's title to the Leased Land by refusing to quitclaim the KCDL Lease.

Once this case was converted to a Chapter 7 proceeding, KCDL through its attorney of record, John J. Harris, requested that the Trustee quitclaim the lease. That request was most recently documented in the letter dated May 16, 2022 to Max

OBJECTIONS, OPPOSITION AND RESPONSE OF KINGS COUNTY DEVELOPMENT LIMITED TO NOTICE OF INTENT TO ABANDON INTEREST IN ESTATE PROPERTY AND MOTION TO EXTEND DEADLINE TO ASSUME EXECUTORY CONTRACTS AND LEASES

CASSO & SPARKS, LLP
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA 91746

1  Gardner, the Trustee's attorney of record. (*Donath Decl.* ¶18; See, Mr. Harris' May
2  16, 2022 letter is attached to the Donath Decl. as "Exhibit C".)

3  If the Trustee does not deliver a quitclaim, KCDL will be forced to file a
4  motion for relief from the automatic stay in order to file and prosecute a quiet title
5  action to clear its title to the Leased Land. The Trustee would be compelled to
6  unnecessarily incur attorney's fees and other costs in defending such an action, as to
7  which it would have no legal or factual basis to oppose. At this point, it is unclear
8  that the Trustee even has funds that could be utilized to defend such a lawsuit.
9  (*Donath Decl.* ¶19)

10  Accordingly, to spare the Trustee from incurring any further unnecessary
11  expenses, and since the Trustee clearly has no interest in retaining the KCDL Lease,
12  KCDL asks the Court to authorize the Trustee to deliver to KCDL a quitclaim of the
13  KCDL Lease. *(Donath Decl.* ¶20)

14  Contrary to the assertion by the Trustee in Paragraph 4 of his declaration in
15  support of the Motion to Extend, and to the arguable extent that the KCDL Lease
16  could be considered an "executory contract" subject to 11 U.S.C. § 365, KCDL has
17  been and will continue to be harmed by any further extensions of the deadline to
18  assume or reject the KCDL Lease. KCDL needs to have title cleared to its Leased
19  Land immediately. *(Donath Decl.* ¶21)

20

## III.
## DISCUSSION

**A. Since the KCDL Lease Is Not An Asset of the Estate, the Lease Should Not Be Included in Any Abandonment Order and the Trustee Should Be Authorized to Deliver A Quitclaim of the Lease to KCDL.**

26  Section 554 of the Bankruptcy Code allows abandonment of property that "is
27  burdensome to the estate or that is of inconsequential value and benefit to the
28  estate." 11 U.S.C. § 554(a). Property abandoned under this section ceases to be part

CASSO & SPARKS, LLP
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA 91746

of the estate. Following abandonment, "whoever had the possessory right to the property at the filing of bankruptcy again reacquires that right." Abandoned property is not property administered by the estate. *In re Dewsnup*, 908 F.2d 588, 590 (10th Cir. 1990), aff'd sub nom. *Dewsnup v. Timm*, 502 U.S. 410, 112 S. Ct. 773, 116 L. Ed. 2d 903 (1992); *Moses v. Howard University Hospital*, 606 F.3d 789, 791 (D.C. Cir. 2010).

By definition, the Trustee cannot abandon property which is not part of the estate. It is an "elemental rule" of bankruptcy law that a trustee or debtor in possession acquires no greater right or title to property than the debtor and takes the property subject to the same conditions and burdens as the debtor. (*In re Raborn*, 470 F. 3d 1319, 1323 (11th Cir. 2006). The scope of the bankruptcy "estate" is defined by Section 541 of the Bankruptcy Code. 11 U.S.C. §541. Section 541 cannot create a right or title in the debtor that does not exist under state law. Property interests are created and defined by state law absent a countervailing federal interest. (See, *Delaware v. New York*, 507 U.S. 490, 501-02, 113 S. Ct. 1550, 1557, 123 L. Ed. 2d 211(1993); *Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 918, 59 L. ed. 2d 136 (1979); *In re Thorpe*, 546 B.R. 172, 176 (Bankr. C.D. Ill.2016); *In re Segerstrom,* 247 F. 3d 218, 223 (5th Cir. 2001) ("*Butner* espouses the principle that property rights within a state should remain the same within and outside of bankruptcy"). Property rights existing before bankruptcy in persons other than the bankrupt must be recognized and respected in bankruptcy.

### B. Terminated Oil and Gas Leases Are Not Assets of the Estate.

11 U.S.C.A. § 541(b)(2) provides that the" Property of the estate does not include--

"any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease before the commencement of the case under this title, and ceases to include

any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease during the case; ...."

An oil and gas lease which has terminated by its own terms either prior to the bankruptcy, or during the pendency of a bankruptcy is *not* the property of the estate. (*In re Riverwood Gas & Oil, LLC*, 601 B.R. 685, 690 (Bankr. C.D. Cal. 2019)

Under applicable California law, the KCDL Lease expired by its own terms for lack of production in paying quantities. As the Court held in *Montana-Fresno Oil Company v. Powell*, 219 Cal.App.2d 653, 659 (1963): "**An operating oil lease is both a conveyance and a contract** designed to fit the needs of the owner of the land and the operator of the oil properties in making them productive. As such, it contains traditional conveyancing portions and particularly phrased contractual portions." (Emphasis added.) Following a long line of California authority, the Court in *Montana-Fresno* ultimately held at 219 Cal.App.2d 665-667 that the lease, the "fee simple determinable interest", automatically terminated upon the occurrence of the stated condition, the lack of production in "paying quantities" and that the complete cessation of production ended the term of the lease. (See, also, *Lough v. Coal Oil, Inc.*, 217 Cal.App.3d 1518, 1528-1529 (1990); *San Mateo Community College Dist. v. Half Moon Bay, L.P.*, 65 Cal.App.4th, 401, 410 (1998); *Renner v. Huntington Hawthorne Oil and Gas Co.*, 39 Cal.2d 93, 98-99 (1952).)

Because the termination of a mineral lease for lack of production is self-operative under California law, termination is not prevented by the automatic stay arising from the filing of the bankruptcy petition. (*In re Trigg*, 630 F. 2d 1370, 1373 (10th Cir. 1980) [self-operative termination of mineral lease not barred by automatic stay]; *Good Hope Refineries, Inc. v. Benavides*, 602 F. 2d 998 (1st Cir. 1979) [Texas mineral lease terminated automatically for failure to tender delay rentals, without regard to bankruptcy]).

Among the oil and gas leases which the Trustee has identified as an asset in

CASSO & SPARKS, LLP
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA 91746

the Witter Field is the KCDL Lease. As set forth in the Declaration of Douglas Donath filed in support of this Opposition demonstrates, Temblor has *never* produced oil and gas in paying quantities and the KCDL Lease terminated for lack of production of oil and gas in paying quantities. (*Donath Decl*. ¶7-14.) As a result, Temblor no longer has a working interest in the KCDL Lease and that interest could not be considered an asset of the estate.

All that remains of the KCDL Lease is the obligation to surrender the lease back to KCDL.

The execution of a quitclaim deed surrendering the KCDL Lease does not necessarily import that the quitclaiming party possesses any interest at all. (*In re Atlantic Gulf Communities Corp.*, 326 B.R. 294, 300 (Bankr. D. Del. 2005).) A quitclaim is a release of whatever present title or interest the party executing the quitclaim has in the property quitclaimed, and when made by the owner of a dominant tenement, such as an oil and gas lease, to the owner of the servient tenement operates as a release and extinguishment. (*Westlake v. Silva*, 49 Cal. App. 2d 476, 478 (1942).) Customarily, the release is in the form of a quitclaim deed by the owner of the easement to the owner of the servient tenement. (6 *Miller & Starr*, Cal. Real Est. § 15:74 (4th ed.).) Accordingly, the Trustee would not be selling or transferring any interest to KCDL, but rather would simply acknowledging the termination of the KCDL Lease and the surrendering and releasing any lessee's interest by operation of law, thereby extinguishing the lease.

Considering that the Trustee does not want to retain the lessee's interest in the KCDL Lease, the most appropriate course of action would be for the Trustee to surrender the lease through the execution of a quitclaim in recordable form. To the extent an order of the court is necessary, KCDL is prepared to stipulate to an order authorizing the Trustee to execute such a quitclaim.

///

///

CASSO & SPARKS, LLP
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA 91746

### C. A Further Extension of the Deadline to Assume or Reject Executory Contracts and Leases Is Not Warranted.

Most courts which have addressed the issue have held that oil and gas leases are *not* among the types of leases or contracts subject to 11 U.S.C. § 365 which can be assumed or rejected by the Trustee. (*See*, *In re Heston Oil Co.*, 69 B.R. 34, 36 (N.D. Okla. 1986); *Matter of Topco, Inc.*, 894 F.2d 727, 740, fn. 17 (5th Cir. 1990); *In re Sandridge Energy, Inc.*, No. 16-32488, 2018 WL 889357, at *10 (Bankr. S.D. Tex. Feb. 5, 2018)] [oil and gas lease is *not* that of an executory contract for purposes of 11 U.S.C. § 365].

Nevertheless, assuming for the sake of argument that the Trustee's motion is proper with respect to the KCDL Lease, the Trustee has already requested and obtained multiple extensions. It is simply not accurate to assert that "no harm or interest will occur to other parties to the executory contracts by the grating of this motion", as the Trustee asserts in his declaration. KCDL has been and will continue to be harmed by the delay. KCDL needs to have title cleared to its Leased Land immediately. (*Donath Decl*. ¶21). Accordingly, the Trustee's motion should be denied.

### CONCLUSION

For the foregoing reasons, Creditor, Kings County Development Limited, requests that this Court enter an order sustaining its objections and denying the approval of the abandonment of the KCDL Lease. Instead, the Court can and should authorize the Trustee to execute a quitclaim of the KCDL Lease in recordable form so that KCDL can finally clear title to is property.

///
///
///
///

KCDL consents to the Court's resolution of disputed material factual issues (Fed. R. Civ. P. 43(c), Fed. R. Bankr. P. 9017 and Local Rule 9014-1(f)(1)(B).)

Dated: June 14, 2022        CASSO & SPARKS, LLP

                            By: /s/ John J. Harris
                                John J. Harris
                                Attorneys for
                                Kings County Development Limited

4874-0921-5525, v. 2

CASSO & SPARKS, LLP
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA 91746

9

**OBJECTIONS, OPPOSITION AND RESPONSE OF KINGS COUNTY DEVELOPMENT LIMITED TO NOTICE OF INTENT TO ABANDON INTEREST IN ESTATE PROPERTY AND MOTION TO EXTEND DEADLINE TO ASSUME EXECUTORY CONTRACTS AND LEASES**