`John J. Harris (SBN 93841)
**CASSO & SPARKS, LLP**
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA 91746
jharris@cassosparks.com
Telephone: 626.269.2980

Attorneys for Creditor, Kings County Development Limited

# UNITED STATES BANKUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| In Re<br><br>TEMBLOR PETROLEUM COMPANY, LLC<br><br>　　　Debtor-in-Possession. | CASE NO.: 2020-11367<br><br>**Chapter 7**<br><br>**DMG-9**<br><br>**OPPOSITION AND OBJECTIONS OF KINGS COUNTY DEVELOPMENT LIMITED TO MOTION TO SELL ESTATE'S INTEREST IN PROPERTY PURSUANT TO 11 U.S.C. SECTION 363(b) (DEBTOR'S WORKING INTEREST IN WITTER FIELD AKA WEST FIVE POINTS); REQUEST FOR HEARING**<br><br>Date: September 14, 2022<br>Time: 1:30 p.m.<br>Place: United States Courthouse<br>　　　　2500 Tulare St., 5th Fl.<br>　　　　Fresno, CA<br>Judge: Hon. Jennifer E. Niemann |

.

1

**OPPOSITION AND OBJECTIONS OF KINGS COUNTY DEVELOPMENT LIMITED TO MOTION TO SELL ESTATE'S INTEREST IN PROPERTY PURSUANT TO 11 U.S.C. SECTION 363(b) (DEBTOR'S WORKING INTEREST IN WITTER FIELD AKA WEST FIVE POINTS**

CASSO & SPARKS, LLP
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA 91746

1  Creditor, Kings County Development Limited ("KCDL"), hereby submits pursuant to Rule 6004(b) of the Federal Rules of Bankruptcy Procedure, the following Opposition and Objections to the "Motion to Sell Estate's Interest in Property Pursuant to 11 U.S.C. Section 363(b) (Debtor's Working Interest in Witter Field aka West Five Points)" ("Motion to Sell Estate's Interest in Property"), filed by Jeffrey Vetter, the Chapter 7 Trustee ("Trustee") dated August 10, 2022.

KCDL further requests a hearing on the motion pursuant to Bankruptcy Rule 6007(b).

## I.

## **INTRODUCTION**

At the June 29, 2022 hearing on the Trustee's "Motion to Extend Deadline to Assume Executory Contracts and Lease", the Trustee's counsel informed the Court that the Trustee was prepared to ask the Court for authority to quitclaim the October 3, 2005 oil and gas lease Temblor, as lessee, and KCDL as lessor. However, the Trustee took no further steps to do so. Despite his representation, the Trustee appears to be trying to sell that lease, something that the estate does not own since that lease terminated long before Temblor's bankruptcy was filed. By definition, 11 U.S.C. Section 363(b) does not authorize the Trustee to sell a property interest which is not included in the estate.

The Trustee's motion to sell "… the real property commonly known as Debtor Temblor Petroleum Company, LLC's Oil and Gas Working Interest, Witter Field", assumes without any evidentiary support whatsoever, that the bankruptcy estate actually has a working interest in those oil, gas and mineral rights.

The Trustee previously identified Temblor's working interest in the expired KCDL oil and gas lease as one of the leases which it sought to abandon. However, since that lease terminated by its own terms, the Trustee has no property interest which it could either sell or abandon.

KCDL has not consented to the transfer of the terminated lease to Petro Lud,

CASSO & SPARKS, LLP
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA 91746

the nominal purchaser or to anyone else.

For that reason, KCDL, the owner of the oil, gas and mineral rights that were previously subject to the oil and gas lease with Temblor, opposes the Trustee's motion to the extent that the Trustee is trying to sell a non-existent working interest in a lease covering KCDL's property.

Instead, the Trustee needs to keep his promise and quitclaim the lease back to KCDL. KCDL has been waiting for years to receive a quitclaim of the KCDL Lease which expired prior to this bankruptcy. The lack of a quitclaim has created a cloud on its title to KCDL's mineral rights and, as a result, is impairing its ability to lease the property to another operator and, potentially to sell the property. While KCDL understands that the Trustee does not want the KCDL Lease, the most appropriate course of action would be for the Trustee to perform its obligation under that lease and deliver a quitclaim to KCDL

## II.
## FACTUAL BACKGROUND

### A. The KCDL Lease Is Not An Asset of the Debtor's Estate.

The Trustee's Motion states that:

> ""Chapter 7 Trustee Jeffrey M. Vetter ("Trustee") moves this court for an order authorizing the sale of the real property commonly known as Debtor Temblor Petroleum Company LLC's Oil and Gas Working Interest, Witter Field, aka West Five Points pursuant to 11 U.S.C. § 363(b)… .""

The Trustee's Motion fails to identify any specific property or oil and gas lease in the Witter Field. The Trustee's Motion appears to be intended to include the oil and gas leases which had been claimed by the Temblor to be located in the Witter Field. One of those leases was the oil and gas lease between Temblor, as lessee, and KCDL as lessor, dated October 3, 2005 ("KCDL Lease"), and which affected a portion of the Northwest quarter (NW/4) of Section 21, Township 17 South, Range 17 East, M.D.B.&M. in Fresno County (the "Leased Land"). (*Declaration of*

*Douglas Donath.* ¶ 3, Exhibit "A" [hereinafter, "*Donath Decl.* ¶ ___"]) The KCDL Lease ultimately was amended seven times to extend the primary term ultimately to October 5, 2018[1]. (*Donath Decl.* ¶ 3 and 6)

As with nearly every oil and gas lease in California, the KCDL Lease could only remain in effect after the primary term expired "for so long thereafter as oil, gas, hydrocarbons or other hydrocarbon substances are produced therefrom in paying quantities." (*Donath Decl.* ¶ 7-10)

In 2018, Temblor drilled its "Harnsich-McCormick No. 5" well ("HM #5 Well") to a bottom hole location on the Leased Land. However, the well failed to produce oil or gas in paying quantities. (*Donath Decl.* ¶11) Since Temblor's completion of the HM #5 Well, no new drilling operations were commenced by Temblor on the Leased Land within six months following the completion of that well. (*Donath Decl.* ¶12)

Since oil and gas has not been produced in paying quantities from the HM #5 Well, and the well is not currently being produced in paying quantities, and Temblor failed to commence drilling operations to drill a subsequent well, the KCDL Lease terminated for lack of production of oil and gas in paying quantities well before Temblor filed its bankruptcy petition on April 9, 2020. (*Donath Decl.* ¶12-15)

California Civil Code Section 883.140(b) required Temblor to "…within 30 days after demand therefor by the lessor, execute, acknowledge, and deliver, or cause to be recorded, a deed quitclaiming all interest in and to the mineral rights covered by the lease."

Accordingly, on August 7, 2019, KCDL demanded, pursuant to Section 33 of the KCDL Lease, that Temblor immediately execute, acknowledge and deliver to

---

[1] Each of the lease amendments is attached to KCDL's Amended Proof of Claim filed with this court August 10, 2021, as well as KCDL's original proof of claim dated and filed with this court on September 8, 2020 as Claim No. 27.

Filed 08/30/22    Case 20-11367    Doc 433

KCDL a quitclaim deed in recordable form surrendering all of the lessee's interest under the KCDL Lease. (*Donath Decl.* ¶16, Exhibit "C".)

Temblor refused to execute, acknowledge and deliver to KCDL a quitclaim deed surrendering all of the lessee's interest under the KCDL Lease. (*Donath Decl.* ¶17).

KCDL has now been waiting for *more than three years* for its title to be cleared through a quitclaim from Temblor or the Trustee, so that it can lease or sell the property to one or more other oil companies who actually have the financial and operational capability to drill for and produce oil and gas- a capability that neither Temblor nor the Trustee simply does not have. The lack of a quitclaim of the KCDL Lease with Temblor has been identified in KCDL's discussions with prospective buyers, lessees and operators as being a fundamental obstacle to moving forward with any contractual or other arrangement. (*Donath Decl.* ¶18)

Since the Trustee obviously has no intention to resume production, the Trustee and the estate have no recognizable legitimate interest in continuing to cloud KCDL's title to the Leased Land by refusing to quitclaim the KCDL Lease. Once this case was converted to a Chapter 7 proceeding, KCDL through its attorney of record, John J. Harris, asked the Trustee to quitclaim the lease. That request was most recently documented in the letter dated May 16, 2022 to Max Gardner, the Trustee's attorney of record. (*Donath Decl.* ¶21; See, Mr. Harris' May 16, 2022 letter is attached to the Donath Decl. as "Exhibit D".)

If the Trustee does not deliver a quitclaim, KCDL could be forced to file a motion for relief from the automatic stay in order to file and prosecute a quiet title action to clear its title to the Leased Land. The Trustee would be compelled to unnecessarily incur attorney's fees and other costs in defending such an action, as to which it would have no legal or factual basis to oppose. At this point, it is unclear that the Trustee even has funds that could be utilized to defend such a lawsuit. (*Donath Decl.* ¶22)

4

**OPPOSITION AND OBJECTIONS OF KINGS COUNTY DEVELOPMENT LIMITED TO MOTION TO SELL ESTATE'S INTEREST IN PROPERTY PURSUANT TO 11 U.S.C. SECTION 363(b) (DEBTOR'S WORKING INTEREST IN WITTER FIELD AKA WEST FIVE POINTS**

Accordingly, to spare the Trustee from incurring any further unnecessary expenses, and since the Trustee clearly has no interest in retaining the KCDL Lease, KCDL believes that the Court should authorize the Trustee to deliver to KCDL a quitclaim of the KCDL Lease. *(Donath Decl.* ¶22-23)

Furthermore, Paragraph 40 of the KCDL Lease provides:

> " Any assignments or transfers of this oil and gas lease may only be assigned upon advance written consent of the lessor, which consent shall not be unreasonably withheld. "

Even assuming for the sake of argument that the Trustee had the ability to sell a terminated oil and gas lease, KCDL has not been asked to consent and has not consented to the transfer of the KCDL Lease to any third party nor has the Trustee proposed to cure the outstanding breaches of the lease. *(Donath Decl.* ¶25) The Trustee's Motion does not address his failure to obtain KCDL's consent to transfer or the uncured breaches or otherwise propose any protections for KCDL.

Necessarily, since the KCDL Lease has terminated, KCDL will not consent to any assignment considering Temblor's many uncured breaches of the KCDL Lease before it terminated, as set forth in KCDL's Amended Proof of Claim dated August 10, 2021 (*Donath Decl.* ¶25 and Exhibit "E" thereto.).

### III.
### DISCUSSION

**A. Since the KCDL Lease Is Not An Asset of the Estate, the Trustee Cannot Sell the Lease and the Trustee Should Be Directed Authorized to Deliver A Quitclaim of the Lease to KCDL.**

Section 363 does not allow and the Trustee cannot sell property which is not part of the estate. It is an "elemental rule" of bankruptcy law that a trustee or debtor in possession acquires no greater right or title to property than the debtor and takes the property subject to the same conditions and burdens as the debtor. (*In re Raborn*,

5

470 F. 3d 1319, 1323 (11th Cir. 2006). The scope of the bankruptcy "estate" is defined by Section 541 of the Bankruptcy Code. 11 U.S.C. §541. Section 541 cannot create a right or title in the debtor that does not exist under state law.

Property interests are created and defined by state law absent a countervailing federal interest. (See, *Delaware v. New York*, 507 U.S. 490, 501-02, 113 S. Ct. 1550, 1557, 123 L. Ed. 2d 211(1993); *Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 918, 59 L. ed. 2d 136 (1979); *In re Thorpe*, 546 B.R. 172, 176 (Bankr. C.D. Ill.2016); *In re Segerstrom,* 247 F. 3d 218, 223 (5th Cir. 2001) ("*Butner* espouses the principle that property rights within a state should remain the same within and outside of bankruptcy"). Property rights existing before bankruptcy in persons other than the bankrupt must be recognized and respected in bankruptcy.

### B. Terminated Oil and Gas Leases Are Not Assets of the Estate.

11 U.S.C.A. § 541(b)(2) provides that the " Property of the estate does not include--

> "any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease before the commencement of the case under this title, and ceases to include any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease during the case; …."

An oil and gas lease which has terminated by its own terms either prior to the bankruptcy, or during the pendency of a bankruptcy is ***not*** the property of the estate. (*In re Riverwood Gas & Oil, LLC*, 601 B.R. 685, 690 (Bankr. C.D. Cal. 2019)

Under applicable California law, the KCDL Lease expired by its own terms for lack of production in paying quantities. As the Court held in *Montana-Fresno Oil Company v. Powell*, 219 Cal.App.2d 653, 659 (1963): "***An operating oil lease is both a conveyance and a contract*** designed to fit the needs of the owner of the land

6

CASSO & SPARKS, LLP
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA 91746

1  and the operator of the oil properties in making them productive. As such, it
2  contains traditional conveyancing portions and particularly phrased contractual
3  portions." (Emphasis added.) Following a long line of California authority, the
4  Court in *Montana-Fresno* ultimately held at 219 Cal.App.2d 665-667 that the lease,
5  the "fee simple determinable interest", automatically terminated upon the
6  occurrence of the stated condition, the lack of production in "paying quantities" and
7  that the complete cessation of production ended the term of the lease. (See, also,
8  *Lough v. Coal Oil, Inc.*, 217 Cal.App.3d 1518, 1528-1529 (1990); *San Mateo*
9  *Community College Dist. v. Half Moon Bay, L.P.*, 65 Cal.App.4th, 401, 410 (1998);
10 *Renner v. Huntington Hawthorne Oil and Gas Co.*, 39 Cal.2d 93, 98-99 (1952).)

11     Because the termination of a mineral lease for lack of production is self-
12 operative under California law, termination is not prevented by the automatic stay
13 arising from the filing of the bankruptcy petition. (*In re Trigg*, 630 F. 2d 1370, 1373
14 (10th Cir. 1980) [self-operative termination of mineral lease not barred by automatic
15 stay]; *Good Hope Refineries, Inc. v. Benavides*, 602 F. 2d 998 (1st Cir. 1979) [Texas
16 mineral lease terminated automatically for failure to tender delay rentals, without
17 regard to bankruptcy]).

18     Among the oil and gas leases which the Temblor had previously and
19 inaccurately identified as an asset in the Witter Field was the KCDL Lease. As set
20 forth in the Declaration of Douglas Donath filed in support of this Opposition
21 demonstrates, Temblor *never* produced oil and gas in paying quantities and the
22 KCDL Lease terminated for lack of production of oil and gas in paying quantities.
23 (*Donath Decl*. ¶7-14.) As a result, the estate no longer has a working interest in the
24 KCDL Lease and that interest could not be considered an asset of the estate.

25     Although the Trustee certainly is aware of KCDL's position regarding the
26 termination of the KVCDL Lease, and effectively conceded the point buy its
27 motion to abandon, its Motion here fails to even address how the Trustee can
28 possibly sell an asset in which it has no interest whatsoever.

All that remains of the KCDL Lease is the obligation to surrender the lease back to KCDL. The execution of a quitclaim deed surrendering the KCDL Lease does not necessarily import that the quitclaiming party possesses any interest at all. (*In re Atlantic Gulf Communities Corp.*, 326 B.R. 294, 300 (Bankr. D. Del. 2005).) A quitclaim is a release of whatever present title or interest the party executing the quitclaim has in the property quitclaimed, and when made by the owner of a dominant tenement, such as an oil and gas lease, to the owner of the servient tenement operates as a release and extinguishment. (*Westlake v. Silva*, 49 Cal. App. 2d 476, 478 (1942).) Customarily, the release is in the form of a quitclaim deed by the owner of the easement to the owner of the servient tenement. (6 *Miller & Starr*, Cal. Real Est. § 15:74 (4th ed.).) Accordingly, the Trustee would not be selling or transferring any interest to KCDL, but rather would simply acknowledge the termination of the KCDL Lease and the surrendering and releasing any lessee's interest by operation of law, thereby extinguishing the lease.

Considering that the Trustee cannot sell any working interest in the KCDL Lease and does not want to retain any interest in the KCDL Lease, the most appropriate course of action would be for the Trustee to surrender the lease through the execution of a quitclaim in recordable form, as the Trustee previously represented to the court he was prepared to do.. To the extent an order of the court is necessary, KCDL is prepared to stipulate to an order authorizing the Trustee to execute such a quitclaim.

### C. The Trustee Does Not Have the Ability Under Section 363(d) To Sell the Terminated KCDL Lease Without KCDL's Consent and Without Any Consideration or Protection of KCDL's Interests.

A bankruptcy court does not have ability to revive a lease which expired before the bankruptcy was filed. *In re Moore*, 290 B.R. 851, 871 and 909 (Bankr. N.D. Ala. 2003) As the Court held in *In re Gulf Coast Oil Corp.*, 404 B.R. 407,

422(Bankr. S.D. Tex. 2009), a trustee must consider its fiduciary duties to all creditors and interest holders before seeking approval of a transaction under § 363(b).

Here, the Trustee is asking this court to place its stamp of approval on a fraudulent effort to sell an oil and gas lease that indisputably terminated prior to the filing of Temblor's bankruptcy without any regard to the rights KCDL as both a lessor and creditor and without KCDL's consent. The Motion cites absolutely no case or statutory authority which would permit a Chapter 7 Trustee to do so.

## CONCLUSION

For the foregoing reasons, Creditor, Kings County Development Limited, requests that this Court enter an order sustaining its objections and denying the approval of the sale of the KCDL Lease.

Instead, the Court can and should direct and authorize the Trustee to execute a quitclaim of the KCDL Lease in recordable form so that KCDL can finally clear title to is property.

KCDL consents to the Court's resolution of disputed material factual issues (Fed. R. Civ. P. 43(c), Fed. R. Bankr. P. 9017 and Local Rule 9014-1(f)(1)(B).)

Dated: August 30, 2022          CASSO & SPARKS, LLP


                                By:    /s/ John J. Harris
                                       John J. Harris
                                       Attorneys for
                                       Kings County Development Limited

4867-2839-3262, v. 2

9

**OPPOSITION AND OBJECTIONS OF KINGS COUNTY DEVELOPMENT LIMITED TO MOTION TO SELL ESTATE'S INTEREST IN PROPERTY PURSUANT TO 11 U.S.C. SECTION 363(b) (DEBTOR'S WORKING INTEREST IN WITTER FIELD AKA WEST FIVE POINTS**