John J. Harris (SBN 93841)
**CASSO & SPARKS, LLP**
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA 91746
jharris@cassosparks.com
Telephone: 626.269.2980

Attorneys for Creditor, Kings County Development Limited

# UNITED STATES BANKUPTCY COURT

# EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| In Re<br><br>TEMBLOR PETROLEUM COMPANY, LLC<br><br>      Debtor-in-Possession. | CASE NO.: 2020-11367<br><br>**Chapter 7**<br><br>**DMG-9**<br><br>**SUPPLEMENTAL RESPONSE OF KINGS COUNTY DEVELOPMENT LIMITED IN SUPPORT OF OPPOSITION AND OBJECTIONS OF TO MOTION TO SELL ESTATE'S INTEREST IN PROPERTY PURSUANT TO 11 U.S.C. SECTION 363(b) (DEBTOR'S WORKING INTEREST IN WITTER FIELD AKA WEST FIVE POINTS)**<br><br>**Date:** October 19, 2022<br>**Time:** 1:30 p.m.<br>**Place:** United States Courthouse<br>      2500 Tulare St., 5th Fl.<br>      Fresno, CA<br>**Judge:** Hon. Jennifer E. Niemann |

.

In accordance with the Court's order dated September 14, 2022, Creditor, Kings County Development Limited ("KCDL"), hereby submits the following supplemental response to the "Supplemental Declaration Of Jeffrey M. Vetter Motion To Sell Estate's Interest In Property Pursuant To 11 U.S.C. Section 363 (b)", filed on September 30, 2022 ("Trustee's Supplemental Declaration" or " Trustee's Supp. Decl. ¶ __"). KCDL incorporates by reference its original "Objections, Opposition And Response Of Kings County Development Limited To Motion To Sell Estate's Interest In Property Pursuant To 11 U.S.C. Section 363(B) (Debtor's Working Interest In Witter Field Aka West Five Points)" filed on August 30, 2022 ("Opposition").

# I.
# **INTRODUCTION**

At the initial hearing on September 14, 2022 on the motion of the Trustee, Jeffrey M. Vetter, to sell the estate's interest in property pursuant to 11 U.S.C. Section 363 (b) (the "Motion"), and in response to KCDL's objections to the Motion, the Court directed the Trustee to (1) provide more detail as to the property of the estate that the Trustee was trying to sell; (2) explain precisely what interest the Trustee was claiming in the oil, gas and mineral rights in the property owned by KCDL located in the Northwest quarter (NW/4) of Section 21, Township 17 South, Range 17 East, M.D.B.&M. in Fresno County (the "Leased Land"); and (3) explain whether or not the estate was claiming an interest and trying to sell the lessee's interest in an oil and gas lease between Temblor, as lessee, and KCDL as lessor, dated October 3, 2005 ("KCDL Lease") covering the Leased Land.

No supplemental pleading was filed by the Trustee responding to these fundamental questions or explaining the legal basis for the Trustee's attempt here to try to sell something that the estate does not own, that is, any interest in the KCDL Lease. Instead, the Trustee filed a Supplemental Declaration which does not adequately respond to any of the Court's questions and provides the Court no

CASSO & SPARKS, LLP
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA 91746

CASSO & SPARKS, LLP
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA 91746

additional helpful information or clarity as to what exactly the Trustee is trying to sell.

The Trustee's Supplemental Declaration indicates that the Trustee apparently is still trying to sell a working interest in the KCDL Lease. However, nothing in either the original Motion or in the Trustee's Supplemental Declaration provides any evidence whatsoever to support any claim that the KCDL Lease remains in effect. Effectively, the Trustee is still trying to sell something which the estate does not own. The Bankruptcy Code does not give the Court jurisdiction to do so. Accordingly, the Motion must be denied on that ground alone.

Furthermore, even if the Court overlooked the fact that the KCDL Lease has terminated, the Trustee still has not satisfied the requirements of 11 U.S.C.A. § 365(f)(2) for the sale of the KCDL Lease and Motion could also be denied on that ground.

Lastly, despite the Trustee's assurances to the Court that it would provide further clarification of the terms of the proposed sale, neither the Motion nor the Trustee's Supplemental Declaration provide even the most minimal information that would allow the Court and the creditors and other parties in interest to evaluate the proposed sale. The Motion could be denied on that ground alone.

Ultimately, the Trustee needs to stop trying to sell something which the estate does not own and should be directed to provide KCDL with the quitclaim which should have been delivered three years ago. If the Trustee does not deliver a quitclaim, KCDL could be forced to file a motion for relief from the automatic stay in order to file and prosecute a quiet title action to clear its title to the Leased Land. The Trustee would be compelled to unnecessarily incur attorney's fees and other costs in defending such an action, as to which it would have no legal or factual basis to oppose.

///

///

## II.
## THE TRUSTEE'S SUPPLEMENTAL DECLARATION FAILS TO ANSWER THE COURT'S QUESTIONS

The Trustee and his counsel assured the Court at the hearing on September 14, 2022 that they would provide additional information regarding the terms of the proposed sale. The only thing that they have filed since then is the Trustee's Supplemental Declaration which still fails to provide that information.

### A. The Trustee's Supplemental Declaration Still Fails to Adequately Describe the Assets Which He Is Trying to Sell.

The Trustee's Supplemental Declaration asserts without any supporting or admissible evidence is that:

> "Among the assets of the estate is the working interest in what was to have been an oil producing field described herein as the Witter Field. In conferring with the Debtor's principals and professionals, I have come to understand that from 2015 to 2018 the Debtor acquired a 49% interest in the Witter Field and that Debtor, …" (Trustee's Supp. Decl. ¶ 2).

However, the Trustee fails to identify what exactly that "49% interest in the Witter Field" is. The Trustee also fails to state, as the Court directly requested, whether that "49% interest" includes any interest in the KCDL Lease.

The Trustee asserts:

> "A depiction of the field and the improvements that were made are found in Exhibit "A" to this supplemental declaration, which is filed concurrently herewith." (Trustee's Supp. Decl. ¶ 2)

Exhibit "A" to the Trustee's Supplemental Declaration is just an unauthenticated graphic purporting to depict what appears to be a wellsite with surface locations of wells, tanks and other facilities and personal property. Exhibit "A" does ***not*** show or identify:

///

CASSO & SPARKS, LLP
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA 91746

CASSO & SPARKS, LLP
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA 91746

1. Where the wellsite shown on the exhibit is located;
2. The specific oil and gas wells and other wells that the Trustee is trying to sell
3. The location and boundaries of the "Witter Oil and Gas Field";
4. Any oil and leases that might be part of the "49% interest in the Witter Field" claimed by the Trustee and which he is trying to sell; or
5. Any inventory of personal property that the Trustee is trying to sell.

The only reference to any oil and gas leases in the Trustee's Supplemental Declaration is the following vague reference in Paragraph 3:

> "There were three mineral lease blocks pending at the time Debtor filed for Chapter 11. They were leases in favor of an entity referred to as Hamish McCormick block (representing 6 individual lessors), The Westlands Water District/Labbe lease block, and Kings County Development Limited ("KCDL"). The KCDL lease is a relatively small portion of the leased interests in the field."

Again, the Trustee fails to define the term "mineral lease blocks" and what leases that term might comprise. More importantly, as discussed in detail in KCDL's Opposition to the Motion, the Trustee has offered absolutely no evidence that the KCDL Lease remains in effect nor has he offered any evidence to contradict any of the evidence submitted by KCDL in its Opposition to this Motion to the effect that the KCDL Lease expired by its own terms well before the Chapter 11 bankruptcy was filed on April 9, 2020.

The Trustee attempts to sidestep this fundamental problem with his assertion in Paragraph 4 of the declaration:

> "Petrolud, as the proposed buyer of the estate's interest, acquires the rights the Debtor has as a result of permitting and completing the various improvements described herein. ***The working interest is subject to liens, lease interests, if***

4
**SUPPLEMENTAL RESPONSE ISO OPPOSITION AND OBJECTIONS OF KCDL TO MOTION TO SELL ESTATE'S INTEREST IN PROPERTY (DEBTOR'S WORKING INTEREST IN WITTER FIELD AKA WEST FIVE POINTS)**

*any, to the three lessors described in the preceding paragraph, as well as the interests of various mineral rights owners as recorded.*" (Emphasis added.)

From the standpoint of describing a property interest which the Trustee is trying to sell here, Paragraph 4 is impenetrably vague. No "liens" or "lease interests" are identified. Again, the Trustee fails to explain how he can sell an asset which the estate does not own.

### B. The Trustee Is Still Trying to Sell the KCDL Lease Even Though That Lease Terminated Three Years Ago and Fails to Identify Any "Asset" Relating to the KCDL Lease.

The Trustee's Supplemental Declaration still assumes without any evidence whatsoever that the estate has a working interest in the KCDL Lease, when the *only* evidence before the court regarding the status of the lease is the Declaration of Douglas Donath submitted in support of KCDL's Opposition [hereinafter, "Donath Decl. ¶ ___"]) in which Mr. Donath stated:

> "Since oil and gas has not been produced in paying quantities from the HM #5 Well, and the well is not currently being produced in paying quantities, and Temblor failed to commence drilling operations to drill a subsequent well, *the KCDL Lease terminated for lack of production of oil and gas in paying quantities well before Temblor filed its bankruptcy petition on April 9, 2020.*" (Emphasis added; Donath Decl. ¶12-15)

This evidence remains unrefuted and uncontested.

Next, the Trustee asserts in Paragraph 4:

> "Acquisition of this interest does not resolve or affect the nature of those various rights. Petrolud is an experienced oil and gas producer and understands that to go forward, it will have to negotiate with the lessors and mineral rights owners and complete the necessary permitting and operational shortfalls that occurred prior to Temblor filing Chapter 11."

The Trustee cites no provision of the Bankruptcy Code nor any case authority

CASSO & SPARKS, LLP
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA 91746

interpreting Section 541(b) which would allow a trustee to sell a property intertest which he does not own, and then leave it to a prospective buyer and the property owner to litigate whether the trustee actually owned what he sold. This Court acknowledged at the hearing on September 14, 2022 that it did not believe that it had the jurisdiction to do so.

The Trustee asserts in Paragraph 4 of his declaration that:

"The fact that KCDL contends that the lease has expired does not mean that the Chapter 7 estate is left without an asset that has value to it".

However, the Trustee's Supplemental Declaration fails to identify any "asset" relating to the KCDL Lease which he believes that the estate has or if the KCDL Lease has terminated. The Trustee presents no evidence to refute KCDL's undisputed evidence that the **KCDL Lease terminated in 2019** approximately 8 months before the Chapter 11 bankruptcy was filed.

Furthermore, considering that the KCDL Lease required continuous production in paying quantities, the Trustee presents no evidence (nor could he) that either the Debtor or the Trustee has conducted any oil and gas production operations on the KCDL Lease since the bankruptcy was filed. Essentially, for the last 3 years, the Debtor and now the Trustee has without any factual or legal justification clouded KCDL's title to its mineral rights by refusing to execute a quitclaim that should have been delivered three years ago.

Next, and most importantly, since the KCDL Lease has, in fact and as a matter of law, terminated, the Trustee fails to explain what interest he could possibly hold in KCDL's property. In other words, what exactly is the "asset" that the Trustee believes that the estate owns involving the KCDL Lease or KCDL's property?

Finally, the Trustee contends in Paragraph 4:

"Petrolud is willing to pay $25,000 to step into the shoes of the Debtor with regard to its working interest."

CASSO & SPARKS, LLP
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA 91746

Again, the Trustee still assumes without evidence, and, indeed, in face of KCDL's uncontradicted evidence, that the estate has a working interest to sell to Petrolud. There are no shoes of the Debtor into which PetroLud can step.

### C. The Trustee Has Effectively Conceded That The KCDL Lease Has Terminated.

In Paragraph 5 of the Trustee's Supplemental Declaration, the Trustee admits that all of the leases in the Witter Field are not being operated and are, effectively, in default, stating: "The Chapter 7 estate does not have operational authority nor the means to bring the field into operation."

The KCDL Lease and, presumably, the other oil and gas leases in the Witter Field require the lessee to produce oil and gas in paying quantities. By his admission that the Trustee is conducting no operations on the KCDL Lease (or any other lease), the Trustee has also effectively admitted that the KCDL Lease has terminated. Again, the Trustee cites no provision of the Bankruptcy Code, or any case authority, which would permit the sale of a terminated oil and gas lease. Accordingly, to spare the Trustee from incurring any further unnecessary expenses, and since the Trustee clearly has no interest in retaining the KCDL Lease, KCDL believes that the Court should authorize the Trustee to deliver to KCDL a quitclaim of the KCDL Lease. *(Donath Decl. ¶22-23)*

### III.
### DISCUSSION

### A. The Court Cannot Authorize the Sale of Property Which Is Not Part of the Estate.

As this Court recognized at the previous hearing on September 14, 2022, Section 363 does not allow and the Trustee cannot sell property which is not part of the estate. (*In re Raborn*, 470 F. 3d 1319, 1323 (11th Cir. 2006). Section 541 of the Bankruptcy Code Section 541 cannot create a right or title in the debtor that does not exist under state law. As discussed in detail in KCDL's Opposition to the

Motion, an oil and gas lease which has terminated by its own terms either prior to the bankruptcy, or during the pendency of a bankruptcy is **not** the property of the estate. (*In re Riverwood Gas & Oil, LLC*, 601 B.R. 685, 690 (Bankr. C.D. Cal. 2019)

Under applicable California law, the KCDL Lease expired by its own terms for lack of production in paying quantities. *Montana-Fresno Oil Company v. Powell*, 219 Cal.App.2d 653, 659 (1963); See, also, *Lough v. Coal Oil, Inc.*, 217 Cal.App.3d 1518, 1528-1529 (1990); *San Mateo Community College Dist. v. Half Moon Bay, L.P.*, 65 Cal.App.4th, 401, 410 (1998); *Renner v. Huntington Hawthorne Oil and Gas Co.*, 39 Cal.2d 93, 98-99 (1952).) The Trustee does not contest this basic principle of California oil and gas law.

Because the termination of a mineral lease for lack of production is self-operative under California law, termination is not prevented by the automatic stay arising from the filing of the bankruptcy petition. (*In re Trigg*, 630 F. 2d 1370, 1373 (10th Cir. 1980) [self-operative termination of mineral lease not barred by automatic stay]; *Good Hope Refineries, Inc. v. Benavides*, 602 F. 2d 998 (1st Cir. 1979) [Texas mineral lease terminated automatically for failure to tender delay rentals, without regard to bankruptcy]). A bankruptcy court also does not have ability to revive a lease which expired before the bankruptcy was filed. *In re Moore*, 290 B.R. 851, 871 and 909 (Bankr. N.D. Ala. 2003). The ultimate burden of production and persuasion falls upon the Trustee who must show that the lease was not terminated prepetition under applicable state law. *In re Masterworks*, Inc., 94 B.R. 262, 265 (Bankr. D. Conn. 1988); *In re Memphis-Friday's Associates*, 88 B.R. 830, 841 (W.D.Tenn.1988).

Here, the Trustee is asking this court to place its stamp of approval on a fraudulent effort to sell an oil and gas lease that indisputably terminated prior to the filing of Temblor's bankruptcy without any regard to the rights of KCDL as both a lessor and creditor and without KCDL's consent. The Motion cites absolutely no

CASSO & SPARKS, LLP
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA 91746

case or statutory authority that would permit a Chapter 7 Trustee to do so.

Nevertheless, the Trustee persists in identifying the KCDL Lease as an asset within the Witter Field. As set forth in the Declaration of Douglas Donath filed in support of KCDL's Opposition demonstrates, Temblor *never* produced oil and gas in paying quantities and the KCDL Lease terminated for lack of production of oil and gas in paying quantities. (*Donath Decl*. ¶7-14.) As a result, the bankruptcy estate never had a working interest in the KCDL Lease and that interest could not be considered an asset of the estate.

Although the Trustee certainly is aware of KCDL's position regarding the termination of the KCDL Lease, and effectively conceded the point by its motion to abandon, its Motion here fails to even address how the Trustee can possibly sell an asset in which it has no interest whatsoever.

All that remains of the KCDL Lease is the obligation to surrender the lease back to KCDL. Considering that the Trustee cannot sell any working interest in the KCDL Lease and does not want to retain any interest in the KCDL Lease, the most appropriate course of action would be for the Trustee to surrender the lease through the execution of a quitclaim in recordable form, as the Trustee previously represented to the court he was prepared to do. To the extent an order of the court is necessary, KCDL remains willing to stipulate to an order authorizing the Trustee to execute such a quitclaim.

**B. The Trustee Does Not Have the Ability Under Section 365(d) To Assign the Terminated KCDL Lease.**

As discussed in KCDL's "Objections, Opposition And Response Of Kings County Development Limited To Notice Of Intent To Abandon Interest In Estate Property", filed on June 14. 2022, oil and gas leases are *not* among the types of leases or contracts subject to 11 U.S.C. § 365 which can be assumed or rejected by the Trustee. (*See*, *In re Heston Oil Co.*, 69 B.R. 34, 36 (N.D. Okla. 1986); *Matter of Topco, Inc.*, 894 F.2d 727, 740, fn. 17 (5th Cir. 1990); *In re Sandridge Energy, Inc.*,

No. 16-32488, 2018 WL 889357, at *10 (Bankr. S.D. Tex. Feb. 5, 2018)] [oil and gas lease is *not* that of an executory contract for purposes of 11 U.S.C. § 365].

Nevertheless, the Trustee has taken a contrary position. Assuming for the sake of argument that the KCDL Lease is a type of lease or contract which Trustee could assume, 11 U.S.C. § 365(f)(2) would bar the Trustee from selling and assigning the KCDL Lease. 11 U.S.C.A. § 365(f)(2) specifically states:

"The trustee may assign an executory contract or unexpired lease of the debtor only if--

(A) the trustee assumes such contract or lease in accordance with the provisions of this section; and

(B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease."

Furthermore, in order for section 365 to be applicable, the Code mandates the existence of an executory contract on the day the debtor files its petition for relief. (See, *HY—Test, Inc. v. New England Safety Shoe Corp. (In re Interco)*, 135 B.R. 634, 635 (Bankr.E.D.Mo.1992). Under Section 365(c)(3), the trustee cannot assign a lease if the lease terminated under applicable state law prior to the order for relief. It is also well established that an agreement or contract which is validly terminated prepetition under applicable state law is not assumable under section 365(a). *In re Memphis–Friday's Associates*, 88 B.R. 830 (W.D.Tenn.1988). *In re GISC, Inc.*, 130 B.R. 346, 348 (Bankr.M.D.Fla.1991); see also *In re Metro Air Northeast, Inc.*, 131 B.R. 555, 556 (Bankr.W.D.N.Y.1991) (stating that in order for a debtor to be able to assume a lease, that lease must be in existence on the date the bankruptcy petition was filed); *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1212–13 (7th Cir.), cert. denied, 469 U.S. 982, 105 S.Ct. 386, 83 L.Ed.2d 321 (filing of chapter 11 petition cannot resuscitate rights under a contract which was validly terminated prepetition). A court has no power to permit the cure of a termination. *In re Pyramid Operating*

SUPPLEMENTAL RESPONSE ISO OPPOSITION AND OBJECTIONS OF KCDL TO MOTION TO SELL ESTATE'S INTEREST IN PROPERTY (DEBTOR'S WORKING INTEREST IN WITTER FIELD AKA WEST FIVE POINTS)

CASSO & SPARKS, LLP
13300 Crossroads Pkwy. North, Suite 410
City of Industry, CA 91746

*Auth., Inc.*, 144 B.R. 795, 808–09 (Bankr. W.D. Tenn. 1992)

Also, the Trustee could not assign the KCDL Lease without KCDL's consent. Paragraph 40 of the KCDL Lease provides:

> "Any assignments or transfers of this oil and gas lease may only be assigned upon advance written consent of the lessor, which consent shall not be unreasonably withheld. "

Even assuming for the sake of argument that the Trustee had the ability to sell a terminated oil and gas lease, KCDL has not been asked to consent and has not consented to the transfer of the KCDL Lease to any third party nor has the Trustee proposed to cure the outstanding breaches of the lease. (Donath Decl. ¶25) The Trustee's Motion does not address his failure to obtain KCDL's consent to transfer or the uncured breaches or otherwise propose any protections for KCDL.

Necessarily, since the KCDL Lease has terminated, KCDL will not consent to any assignment considering Temblor's many uncured breaches of the KCDL Lease before it terminated, as set forth in KCDL's Amended Proof of Claim dated August 10, 2021 (Donath Decl. ¶25 and Exhibit "E" thereto.).

Here, again assuming the Trustee's argument that it could assume or reject the KCDL Lease, the Trustee certainly cannot sell it, first and foremost, because the lease indisputably terminated pre-petition.

The Trustee still could not sell the KCDL Lease consistent with 11 U.S.C.A. § 365(f)(2) since (1) the Trustee has not assumed the KCDL lease in accordance with Section 365; and (2) the Trustee has not cured any defaults in the lease and has not provided "adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease."

In other words, even assuming the Trustee's argument, he is not in position to sell the KCDL Lease to Petrolud consistent with 11 U.S.C. § 365(f)(2).

///

**C. The Trustee Has Still Not Provided Adequate Notice of the Proposed Sale.**

At the hearing on September 14, 2022, the Court advised the Trustee that the description of the sale in the Trustee's Motion was sparse and agreed with KCDL's objection on that point.  The Trustee's counsel assured the Court that the Trustee would provide more detail. The Trustee's Supplemental Declaration fails to do so.

The U.S. Department of Justice's "Handbook for Chapter 7 Trustees" sets forth the minimum provisions for giving notice of a proposed sale of property of the estate at page 4-15:

> "The notice of a proposed use, sale, or lease of property of the estate must be provided to the Clerk of the Bankruptcy Court, debtor, United States Trustee, and all creditors. The following information must be included in the notice:
>
> 1) Type of sale (private, auction, etc.);
>
> 2) Location, date, and time of public sale;
>
> 3) Description of assets;
>
> 4) Terms and conditions of sale;
>
> 5) Factors used to establish value (appraisal, book value, etc.) in a private sale;
>
> 6) Procedure and time period for filing objections;
>
> 7) Amount of liens and identity of lien holders; and
>
> 8) In a private sale, identity of purchaser and relationship, if any, to any creditor or party in interest."

 The Trustee here has failed to comply with these minimal standards.

First, the Trustee still has failed to provide a meaningful description of the assets which he has proposed to sell. The notice and the Trustee's Supplemental Declaration do not describe the assets actually being sold. For example, the items which are *not* described include, among other things:

(1) the specific oil and gas leases included in the sale and whether any of those leases remain in effect;

(2) any related pooling agreements and surface use agreements and the current status of those agreements;

(3) the wells being sold and their status;

(4) the equipment and facilities, such as any personal property depicted in Exhibit "A" to the Trustee's Supplemental Declaration; and

(5) Any intellectual property associated with the sale, such as seismic data, etc.

Second, the terms and conditions of the sale are not described in the Motion. No proposed purchase and sale agreement or even definitive letter of intent are included. Although the Trustee asserts in Paragraph 4 of his Supplemental Declaration that "Petrolud is an experienced oil and gas producer and understands that to go forward, it will have to negotiate with the lessors and mineral rights owners and complete the necessary permitting and operational shortfalls that occurred prior to Temblor filing Chapter 11", no evidence before the Court actually confirms this assertion.

Third, nothing in the Trustee's declaration states the "Factors used to establish value (appraisal, book value, etc.) in a private sale."

Fourth, no information has been provided regarding the amount of liens and identity of lien holders.

Fifth, no information has been provided regarding PetroLud and the relationship, if any, to any that it has to any creditor or party in interest, including Temblor.

In summary, the Trustee's Motion to sell does not even satisfy the most minimal requirements for an adequate notice of sale, and, as such, does not provide sufficient information for this Court to approve any sale. Accordingly, the Trustee's Motion could be denied on that ground alone.

## CONCLUSION

For the foregoing reasons, Creditor, Kings County Development Limited, requests that this Court enter an order sustaining its objections and denying the Motion and the approval of the sale of the KCDL Lease.

Instead, the Court can and should direct and authorize the Trustee to execute a quitclaim of the KCDL Lease in recordable form so that KCDL can finally clear title to is property.

KCDL consents to the Court's resolution of disputed material factual issues (Fed. R. Civ. P. 43(c), Fed. R. Bankr. P. 9017 and Local Rule 9014-1(f)(1)(B).)

Dated: October 11, 2022          CASSO & SPARKS, LLP


By:   /s/ John J. Harris
      John J. Harris
      Attorneys for
      Kings County Development Limited

4872-0304-2872, v. 1