STRADLING YOCCA CARLSON & RAUTH, P.C.
Paul R. Glassman (State Bar No. 76536)
Tatiana Ingman (State Bar No. 314284)
10100 Santa Monica Blvd., Suite 1400
Los Angeles, CA 90067
Telephone: (424) 214-7000
Facsimile: (424) 214-7010
E-mail: pglassman@stradlinglaw.com
        tingman@stradlinglaw.com

Attorneys for Genautica Oil Holdings, LP

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>TEMBLOR PETROLEUM COMPANY, LLC<br><br>Debtor. | Case No. 2020-11367<br><br>Chapter 7<br><br>DCN Number PRG-1<br><br>**NOTICE OF MOTION AND MOTION OF GENAUTICA OIL HOLDINGS, LP TO VACATE SALE ORDER, AS AMENDED**<br><br>Hearing<br>Date: March 9, 2023<br>Time: 10:00 a.m.<br>Place: U.S. Courthouse<br>      510 19th Street<br>      Bakersfield, CA 93301<br><br>Judge: Hon. Jennifer Niemann |

**TO THE HONORABLE JENNIFER NIEMANN, UNITED STATES BANKRUPTCY JUDGE AND ALL PARTIES IN INTEREST**:

**PLEASE TAKE NOTICE** that Genautica Oil Holdings, LP ("Genautica") hereby moves the Court (the "Motion") for entry of an order pursuant to Rule 9024 of the Federal Rules of Bankruptcy Procedure and Section 105 of title 11 of the United States Code vacating the Court's *Order on Motion to Sell Estate's Interest in Property Pursuant to 11 U.S.C Section 363(b) (Debtor's Working Interest Hangman Hollow Field, Monterey County, CA)* entered August 19, 2022 [Dkt. No. 432] and *Amended Order on Motion to Sell Estate's Interest in Property Pursuant to 11 U.S.C. Section 363(b) (Debtor's Working Interest Hangman Hollow Field, Monterey County, CA)* [Dkt. 473] entered November 3, 2022 on the grounds of mistake and to avoid manifest justice because (i) the bidders were induced to overbid based on the Brokers'[1] misstatements of fact (in which Trio is, at the very minimum, complicit); (ii) the bidders were bidding based on different, material, sales terms (namely whether or not the Property is free and clear of Trio's purported hundreds of thousands of dollars of claims); and (iii) the record is clear that a renewed auction of the Property would yield at least 50% more than Trio's stalking horse bid. Genautica respectfully requests that the Court reopen the auction so that the bidders can submit their bids in a fair and equitable process, for the benefit of the Debtor's estate..

In support of the Motion, Genautica files a Memorandum of Points and Authorities and Declaration of Dan Scholefield concurrently herewith.

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion will be held before the Honorable Jennifer E. Niemann, United States Bankruptcy Judge, via ZOOM and via Telephone, at 510 19th Street, Bakersfield, California 93301 (the "Bankruptcy Court") on March 9, 2023 at 10:00 a.m. (the "Hearing"). The Motion is based upon this notice of motion and Motion, the attached memorandum of points and authorities, the attached declaration of Dan Scholefield, the arguments of counsel, the record in this case, and other admissible evidence properly brought before the Court at or before the Hearing.

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Memorandum of Points and Authorities filed in the support of the Motion.

| | |
|---|---|
| 1 | **PLEASE TAKE FURTHER NOTICE** that Local Bankruptcy Rule 9014-1(f) requires |
| 2 | that any party opposing the Motion must file and serve a written response at least 14 days before |
| 3 | the Hearing. Pursuant to 9014-1(f), the Bankruptcy Court may deem the failure to timely file and |
| 4 | serve an opposition a waiver of such opposition. |

Dated: February 1, 2023        STRADLING YOCCA CARLSON & RAUTH, P.C.

By:   */s/ Paul R Glassman*
        Paul R. Glassman
        Tatiana Ingman
        Attorneys for Genautica Oil Holdings, LP

**MEMORANDUM OF POINTS OF AUTHORITIES**

Genautica Oil Holdings, LP ("Genautica") moves the Court to vacate its *Order on Motion to Sell Estate's Interest in Property Pursuant to 11 U.S.C Section 363(b) (Debtor's Working Interest Hangman Hollow Field, Monterey County, CA)* entered August 19, 2022 [Dkt. No. 432] (the "Sale Order") and *Amended Order on Motion to Sell Estate's Interest in Property Pursuant to 11 U.S.C. Section 363(b) (Debtor's Working Interest Hangman Hollow Field, Monterey County, CA)* [Dkt. 473] dated November 3, 2022 (the "Amended Order") pursuant to Rule 9024 of the Federal Rules of the Bankruptcy Procedure, and section 105(a) of title 11 of the United States Code §§ 101-1532 (the "Bankruptcy Code"). In support of its Motion, Genautica respectfully represents as follows:

**INTRODUCTION**

Genautica moves the Court to vacate the Sale Order, as amended, and reopen the auction held on August 10, 2022 of the Debtor's 24.22% interest (the "Property") in an oil field known as Hangman's Hollow (the "Project") because the Brokers' (defined below) mistakes and misstatements of fact impaired the sale process and tarnished its results.

First, the Brokers told the bidders that the Project was ready to produce oil, which is a material representation that the bidders relied on in submitting their bids. However, that representation was incorrect. Rather than being ready to produce oil, the Project has been stalled since 2018, and is many years and dollars away from producing.

Next, the only two bidders at auction were given different sale terms by the Trustee (defined below) and the Brokers. The procedures given to Genautica stated that the sale was "as is" and "subject to" the Debtor's liabilities. The procedures given to Prudent Resources ("Prudent"), did not. As a result, the two bidders bid on different, conflicting, material sale terms. The difference is especially material because the Project operator, Trio Petroleum LLC ("Trio") may assert substantial claims against the Property, which claims Genautica disputes.

When the bidders learned that the Project was in fact not ready to produce, but rather was stalled at the permitting stage, and Prudent learned that the Property was being sold subject to

4

Trio's purported claims against the Property, the bidders withdrew their bids. But rather than reopen the auction, the Trustee, believing he had no other option, moved to amend the Sale Order and award the Property to Trio, who in addition to being the operator of the Property was the stalking horse bidder. Trio did not bid at the auction; Trio's stalking horse bid is the lowest bid for the Property; Trio failed to obtain the necessary permits to let the Project proceed; Trio failed to disclose that the Project was stalled; Trio is asserting claims against the Property that Genautica believes are unfounded; and Trio asked CalGEM (defined below) to prioritize Trio's other projects over this one. Furthermore, in 2021, Trio told Genautica that the Project could deliver oil "tomorrow," which, as Genautica only recently learned, was not correct.

Genautica respectfully submits that when the mistakes and irregularities were discovered, the Trustee should have reopened the auction to submit the Property to fair and equitable competitive bidding for the benefit of the estate. Even after it withdrew its bid, Genautica remained and remains willing to purchase the Property for no less than 50% more than the stalking horse bid. By moving to amend the Sale Order and asking the Court to award the Property to Trio, the Trustee actually sought approval of the sale to the **lowest** bidder, and was manifestly not in the best interest of the estate.

Accordingly, pursuant to Federal Rule of Bankruptcy Procedure 9024 and the Court's inherent authority to modify its orders under section 105(a) of title 11 of the United States Code, Genautica respectfully requests that the Court vacate the Sale Order, as amended, on the grounds of mistake and to avoid manifest injustice because (i) the bidders were induced to overbid based on the Brokers' misstatements of fact (in which Trio is, at the very minimum, complicit); (ii) the bidders were bidding based on different, material, sales terms (namely whether or not the Property is free and clear of Trio's purported hundreds of thousands of dollars of claims); and (iii) the record is clear that a renewed auction of the Property would yield at least 50% more than Trio's stalking horse bid. Genautica respectfully requests that the Court reopen the auction so that the bidders can submit their bids in a fair and equitable process, for the benefit of the Debtor's estate.

# FACTUAL BACKGROUND

## General Background

Debtor Temblor Petroleum Company, LLC's (the "Debtor") commenced this bankruptcy proceeding under chapter 11 of the Bankruptcy Code on April 4, 2020. On September 30, 2020, the Debtor employed Energy Advisors Group as brokers (the "Brokers") to assist in the sale of the Debtor's assets which included interests in several oil fields. On May 5, 2021, the case was converted to chapter 7 because the Debtor was unable to confirm a chapter 11 plan. Jeffrey M. Vetter was appointed chapter 7 trustee (the "Trustee") and proceeded, with the Brokers, to market the Debtor's assets for sale for the benefit of creditors.

## The Hangman Hollow Project

The Debtor holds a 24.44% working interest in an oil field project referred to as Hangman Hollow. Trio is the operator of the Project and its largest working interest holder, holding 43%. See Declaration of Dan Scholefield ("Scholefield Decl.") filed concurrently herewith, ¶3. The Debtor is the second largest working interest holder, and Genautica is a working interest holder having purchased its 12.22% interest from both Trio and the Debtor (collectively) in 2013. Id. Acquisition of the Property would give Trio majority control of the Project. Id. at ¶4. In 2021, Trio's chairman told Genautica that the Project could start producing oil "tomorrow." Id. at ¶3.

## The Sale Process

Prior to the sale hearing and auction, the Brokers marketed the Property for sale. Scholefield Decl. at ¶9. In the weeks leading up to the auction, Genautica had telephone calls with Wesley Adams ("Adams"), the representative of the Brokers handling the sale, regarding the status of the Project and conditions of the sale. During those conversations, it was represented that the Project was ready to produce oil. The Brokers' statements seemed to confirm what Trio told Genautica in 2021. Genautica was later told by Kris Pitta ("Pitta") of Prudent Resources that he had had similar conversations prior to the auction. The representation that the Project is ready to produce oil is crucial to the value of the Property, and Prudent and Genautica relied on this representation in formulating their bids at the auction. However, this representation is incorrect. Scholefield Decl. at ¶9.

The Brokers posted promotional materials on their website. Scholefield Decl. at ¶10. Consistent with the Brokers' statements that the property was ready to produce, the marketing materials were posted on the Brokers' website under the category "Producing Properties." Scholefield Decl. at ¶11; Scholefield Decl. Exh. C (Energy Advisors Group Promotional Materials downloaded October 8, 2021, the "2021 Marketing Materials").

In describing the Project, the 2021 Marketing Materials state:

> The Hangman Hollow field is currently idled pending final approval of steam injection. Temblor recently received aquifer exemption to enable steam flood injection. The estate highlights 4.0 million barrels of original oil in place and 2.0 mm barrels recoverable."

At the top of the first page, in a section entitled "Recent Updates (5/21/21)" the materials state "Hangman Hollow project just received steam injection permit." The marketing materials imply that the permit that awaited final approval was recently approved as of May 21, 2021. The information in the 2021 Marketing Materials further confirmed the Brokers' statement that the Project was ready to produce. Id. at ¶ 12; Scholefield Decl. Exh. C (2021 Marketing Materials).

**The Sale Motion**

On June 16, 2022, prompted by the Trustee's notice of intent to abandon the Debtor's interest in another oil field, Genautica wrote to the Trustee stating Genautica's interest in bidding on the Property. Scholefield Decl. at ¶5.

On July 13, 2022, the Trustee filed a motion (the "Sale Motion") [Dkt. 416] to sell the Debtor's 24.44% "Working Interest in Hangman Hollow Field, Monterey County, CA" (the "Working Interest") to Trio Petroleum LLC ("Trio") as stalking horse bidder for $10,000, subject to higher and better offers.

On August 2, 2022, Genautica submitted its $10,000 deposit to the Trustee. Scholefield Decl. at ¶6.

On August 10, 2022, the Court held an auction of the Property at which Trio was present, but did not bid. See Scholefield Decl. at ¶7; Scholefield Decl. Exh. A (Transcript of August 10, 2022 hearing).

On August 19, 2022, the Court entered the Sale Order [Dkt. 432] authorizing the sale of the Property to Prudent (a third party) for $101,000, over ten times Trio's stalking horse bid, and if Prudent was unable to complete the sale authorized therein within 30 days from the entry of the Sale Order, the Trustee was authorized to sell the estate's interest to Genautica for $86,000, over eight times Trio's stalking horse bid.

**Prudent and Genautica Learn that the Brokers Misstated**

**that the Property was Ready to Produce Oil.**

Genautica and Prudent bid at the August 10th auction based on the representations of the Brokers that the Project was ready to produce oil, representations that we later learned were not correct. Scholefield Decl. at ¶8. After the Sale Order was entered, however, Genautica came to learn that the representation that Project was ready to produce oil was incorrect. Scholefield Decl. at ¶13. The Project is not producing or ready to produce oil; rather the Project is presently inoperable, the Project is likely one or more years away from being operable, and the Project will require significant further investment before becoming operable and before required approvals can be obtained. Id. In fact, Genautica has recently been advised by California Geologic Energy Management ("CalGEM") which is one of several regulatory bodies governing oil and gas in California, that comprehensive updates and reviews are required to reestablish Underground Injection Control ("UIC") related permits and proceed with several essential components of the Project including steam injection, oil and gas well production and storage, and proposed water disposal. Id. Furthermore, Genautica was informed that Trio instructed CalGEM to put the Project on the backburner and reassign its project review engineer to Trio's unrelated South Salinas prospect. Scholefield Decl. at ¶30.

Additionally, the materials prepared by the Brokers were inaccurate and misleading. Scholefield Decl. at ¶14. First, the representation that the Project was idled "pending final approval of the steam injection permit" is inaccurate. Id. The Project was idled because of an expensive, time-consuming permit updating and approval process involving the critical new water disposal well "WD-2" application. Scholefield Decl. at ¶14.

Next, while it is true in that in 2019 Trio obtained a steam injection permit, as indicated in an email dated September 13, 2022 from Pitta to the Trustee, in 2021, CalGEM provided written notice to Trio that the Project would need to undergo Project Approval Letter ("PAL") review. Scholefield Decl. at ¶15. Thus, the <u>injection permit was no longer current</u>. In other words, the representation in the marketing materials that the Project was idled pending *final* review of the injection permit was incorrect, the steam injection and/or water disposal permit needed to be brought current. Id.; Scholefield Decl. Exh. D (September 13, 2022 Email from Kris Pitta to the Trustee ("September 13 Email")).

Further, while the 2019 letter from CalGEM issuing the permit *was* provided to Prudent, the 2021 letter saying the Project would need to undergo PAL review *was not* provided to them until after the auction. Scholefield Decl. at ¶16; Scholefield Decl. Exh. D.

Finally, the representations in the marketing materials regarding the Debtor having received necessary aquifer exempt UIC permits are also incorrect. Scholefield Decl. at ¶17. Genautica only recently learned that the Project has been "on hold" by CalGEM since 2018 because the existing water disposal well is insufficient for the Project as planned. Id. In order to secure approvals and permits required to proceed, an updated project approval application must be submitted for approval and permitting to various governmental oversight agencies, none of which has happened nor is it certain to happen. Id.

Notably, in September 2022, after the auction, the marketing materials were updated to delete references to these permits and exemptions. Scholefield Decl. at ¶18. The reference to the Project being idled "pending final approval of steam injection" was deleted; and the reference to "Temblor recently received aquifer exemption to enable steam flood injection" was also deleted. *Compare* Scholefield Decl. Exhs. C and F (2022 Marketing Materials).

The 2021 Marketing Materials contain information, including graphs and charts, that is not readily accessible to any entity other than Trio, as Operator of the Project. Scholefield Decl. ¶28. The information in the marketing materials must have come from Trio as operator of the Project. Id. Such information is unlikely to have come from any other source. Id.

Trio never informed Genautica, nor was Genautica informed by the Brokers or Trustee, that CalGEM put the water disposal well application on hold together with the entire PAL, or of any of the other challenges facing the Project, all of which was never disclosed by Trio. Scholefield Decl. at ¶29.

**The Bidders Submit Bids Based on Conflicting Terms of Sale**

During and after the auction, it became apparent that the Brokers were mistaken and confused about whether and to what extent Trio would assert claims against the Property. Scholefield Decl. at ¶19. As a result, the Trustee and Brokers provided the bidders with materially different terms of the sale, and the bidders bid at auction based on different terms. Id. If for no other reason, the sale should be set aside due to the fact that the only two bidders competing in the auction were given different sets of bid instructions by the Brokers and Trustee; an auction was conducted in which bidders unknowingly were not bidding on the same terms, conditions, and/or assets. Id.

The Sale Motion states that the sale is to be "as is" and "subject to" charges attributed to the Debtor's share of the joint interest liabilities. Sale Motion ¶¶4(d), 6(i). The *Notice of Hearing on Motion to Sell Estate's Interest in Property Pursuant to 11 U.S.C. Section 363(b) (Debtor's Working Interest in Hangman Hallow Field Monterey County, CA)* (the "Sale Hearing Notice") [Dkt. 417], did not attach the Sale Motion, but described the terms of the sale. The Sale Hearing Notice included the procedures set forth in subparagraphs 6(a) through 6(h) of the Sale Motion but omitted subparagraph 6(i) stating that the sale was "as is". The Sale Hearing Notice contained no indication otherwise that the property was being sold "as is" and omitted any reference to the sale being "subject to" any interest or liabilities.

Thus, Adams represented to Genautica numerous times before and after the auction that Trio's claims would be extinguished or otherwise cut off against the buyer by the sale in the bankruptcy case. Scholefield Decl. at ¶20. Later, Genautica learned that the Adams had made the same representations to Prudent and that as a result, at the auction Prudent was bidding for the Property believing the Property would be transferred free and clear of Trio's purported interests. Id.

On August 17, 2022, after the auction, Genautica received a phone call from Adams in which Adams said that Prudent was upset that it was being asked to pay the Debtor's prior outstanding liabilities. Scholefield Decl. at ¶21. During the call, Scholefield stated that the bankruptcy papers said that the liabilities were included in the terms of sale, but the Broker disagreed. Id. Accordingly, Scholefield sent Adams the Sale Motion, *the Declaration of Jeffrey M. Vetter in Support of Motion to Sell Estate's Interest in Property Pursuant to 11 U.S.C. Section 363(b) (Debtor's Working Interest Hangman Hollow Field, Monterey County, CA)* (the "Declaration") and the *Exhibit to Motion to Sell Estate's Interest in Property Pursuant to 11 U.S.C. Section 363(b) (Debtor's Working Interest Hangman Hollow Field, Monterey, [sic] County, CA)* (the "Exhibit") [Dkts, 416, 418, and 419] which had been sent to him (Scholefield) by the Trustee. Scholefield Decl. at ¶21; Scholefield Decl. Exh. G (August 17, 2022 Email exchange between Scholefield and Adams without attachments). In response, Adams sent Scholefield the Notice of Hearing, Dkt. 417, which had been sent to him by the Trustee, and he stated that he had not seen the other documents. Id.

Adams told Scholefield that he relied on the Notice of Hearing which omitted any reference to the sale being subject to any other claims or interests, and that as a result, he believed that the sale would extinguish Trio's claim against the Debtor's working interest which would stay with the estate. Scholefield Decl. at ¶22. Adams provided the Notice of Hearing to Prudent, namely Dkt. 417. Id.

**Prudent Bids Up The Property And Then Withdraws From The Bidding**

Relying on the misstatements to Prudent both as to the condition of the property and as to Prudent's potential for liability to Trio, Prudent bid up the Property to $101,000, 10 times Trio's stalking horse bid. Scholefield Decl. at ¶23.[2] After the auction, Prudent learned that not only was the information about the permitting and status of the Project incorrect, but also that Trio would

---

[2] Notably, Trio's stalking horse bid was supported by only a $2,000 deposit, while the other bidders were required to post a deposit of $10,000. According to Trio's letter dated June 15, 2022, after a multi – year marketing process, Trio purportedly made its offer to purchase the Debtor's interest in the Project just one day before Genautica made its offer to purchase the interest to the Trustee. [Compare Exhibit, Dkt. 419 *with* Exh. G, pgs. 4-5].

11

claim that Prudent would potentially be charged with the Debtor's pre-petition liabilities, despite the representations the bidders received to the contrary. Scholefield Decl. at ¶24. Ultimately, Prudent pulled out of the sale. Scholefield Decl. at ¶21, 24, and Scholefield Decl. Exh. D (September 13 Email). Had Prudent known of the true facts, it likely would not have participated in the auction. Id.

**Genautica Withdraws Its Auction Bid But States That It Is Willing To Continue With Its Purchase.**

Had Prudent not participated in the auction, Genautica's opening bid at $15,000 would have been the highest bid. Scholefield Decl. at ¶24. Genautica is still interested in acquiring the Property, even though the true facts revealed that the Property was worth substantially less than previously thought. Id. at ¶25. Genautica offered to revise its bid to its opening bid amount ($15,000) and immediately close the transaction. Genautica remains willing to purchase the Property for $15,000 or to participate in a new auction for the purchase of the Property. Id.

**The Trustee Moves Ex Parte to Amend the Sale Order to Authorize Sale to Trio, the Lowest Bidder**

Without addressing the issues raised regarding the conditions of the sale, on November 3, 2022, at 1:53 p.m., the Trustee filed the *Motion to Amend Order on Motion to Sell Estate's Interest in Property Pursuant to 11 U.S.C. Section 363(b)* [Dkt. 470] (the "Motion to Amend"). Contrary to rule 9014-1 of the Local Bankruptcy Rules of the Eastern District of California, the Motion to Amend was not set for hearing, there was no notice provided and no opportunity to object. There was no exigency, no motion for shortened notice, no procedural safeguards. The Court was not advised of the allegations of misstatements of fact by the Brokers, and that the Trustee received an offer to purchase the Property for $15,000 from Genautica, 50% more than Trio's stalking horse bid. At 2:28 p.m. <u>the same day</u>, the Court entered an order granting the Motion to Amend [Dkt. 473] (the "Amended Order"). At 3:54 p.m. the Motion to Amend was served on Genautica. Scholefield Decl. ¶26.

**Genautica Vehemently Objects to the Ex Parte Motion, Appeals from the Ex Parte Order, and Engages the Trustee in Negotiations**

The following day, November 4, Genautica wrote to the Trustee objecting to the relief sought in the Motion to Amend and reiterating its willingness to purchase the Property for $15,000. Scholefield Decl. at ¶26. Nevertheless, on November 14, 2022 prior to the expiration of the 14-day stay period under Rule 6004(h), the Trustee filed its *Amended Return on Sale* [Dkt. 478] reporting that the Property had been sold to Trio for $10,000, notice having been mailed to creditors and no objections having been received. However, as the Trustee advised the Court at the December 14, 2022 hearing, and has since confirmed to Genautica, the sale to Trio has not been consummated. On November 17, 2022, Genautica filed a Notice of Appeal of the Amended Order [Dkt. 481]. The schedule for briefing of the appeal was extended by the district court to allow for resolution of this Motion. [See District Ct. Case No. 22-1507, Dkt. 4, 5 and 7].

At the December 14 hearing on the Trustee's motion to abandon a different property, the Trustee indicated that he would consider filing a motion for relief from the Sale Order and putting the Debtor's interest in the Project back up for bid. Approximately two weeks ago, the Trustee advised Genautica that he had decided not to file a motion for relief from the Sale Order. However, the Trustee also made clear that he had no objection to Genautica filing such a motion and did not intend to take a position on the motion, subject to the need to correct the record in any respect.[3]

**Trio's Role**

As a result of the entry of the Amended Order, the Trustee proposes to sell the Debtor's interest in the Project to Trio. As the Operator of the Project, only Trio knew the true status of the Project, and the problems with the Project. Yet, Trio apparently failed to disclose these conditions to the Trustee. Indeed, Trio never informed Genautica, who, like the Debtor is a holder of a working-interest in the Project, and who has already significantly invested in this Project, that CalGEM put the water disposal well application on hold together with the entire PAL, or of any of the other challenges facing the Project, all of which was concealed by Trio. Scholefield Decl. at ¶29.

---

[3] The Trustee also agreed to hold off consummating the sale while this motion is being resolved.

13

In effect, Trio's silence regarding the representations in the marketing materials, caused the parties to bid up the auction price which Trio thought would result in payment of its claims. When the bidders discovered the true facts and failed to close on the purchase, Trio was awarded the Property, giving itself a majority interest in the Project. This marred the sale process and left the estate with less than it could get in a full and fair process. This result is contrary to the letter and spirit of the Bankruptcy Code and applicable federal and local rules of procedure and should not be countenanced.

## **JURISDICTION**

This court has jurisdiction over this motion pursuant to 28 USC §§ 1334 and 157 and, to the extent applicable, Federal Rule of Bankruptcy Procedure 8008.

## **ARGUMENT**

The Sale Order and Amended Order should be vacated pursuant to Federal Rule of Civil Procedure 60, made applicable in bankruptcy by Rule 9024. Rule 60(b) permits a bankruptcy court to grant relief from a final judgment, order, or proceeding on six separate grounds, including, in pertinent part, "(1) mistake, inadvertence, surprise, or excusable neglect"; and "(6) any other reason that justifies relief." A Civil Rule 60(b) motion must be made "within a reasonable time." Fed. R. Civ. P. 60(c). Civil Rule 60(b)(6) is to be liberally applied to accomplish justice. *Zurich Am. Ins. Co. v. Int'l Fibercom, Inc. (In re Int'l Fibercom, Inc.),* 503 F.3d 933, 941 (9th Cir. 2007).

This motion was brought within a reasonable time because the sale to Trio has not closed, and the Trustee has confirmed that he will not close the sale pending outcome of this motion, and the parties investigated the facts and attempted informal resolution before turning to the Court.

Granting the requested relief is amply justified on the basis of mistake.

An auction in which the bidders bid based on material misstatements of fact, and on the basis of conflicting terms and conditions of sale, is the tarnished opposite of the orderly sales process envisioned by section 363 of the Bankruptcy Code. It is axiomatic that representations, if made, must be true, and that bidders must bid on the same property and on same terms and

1  conditions. The auction process here did not meet those standards, and Genautica respectfully
2  submits that correcting of this kind of situation is precisely what Rule 60 is intended to accomplish.
3        On the other hand, leaving the Sale Order, as amended, in place is manifestly unjust. The
4  Sale Order, as amended, rewards Trio for submitting the lowest bid, not participating at the auction,
5  not disclosing the true facts about the Project's permitting, or lack thereof. *See Redus Fla.*
6  *Commercial, LLC v. Coll. Station Retail Ctr., LLC*, 777 F.3d 1187, 1194 n.14 (11th Cir. 2014)
7  ("Although 'equity will not set aside a sale for mere inadequacy of price, it will do so if the
8  inadequacy is so great as to shock the conscience or if there are additional circumstances against
9  its fairness. . .'") (*quoting Gelfert v. Nat'l City Bank of N.Y.*, 313 U.S. 221 (1941)).
10       The injustice was compounded by the manner in which the Motion to Amend was filed, in
11 violation of the local rules of this court, without an opportunity to be heard, and in the absence of
12 any attenuating circumstances justifying the haste. *See In re Fisker Auto Holdings, Inc.,* 510 B.R.
13 55, 60 (Bankr. D. 2014)( secured lender precluded from credit bidding for cause under section
14 363(k), because, among other things the sale was being conducted with haste that was not justified
15 under the circumstances and that did not allow time to discover the true facts).
16       Finally, the injustice is even further magnified because the result is detrimental to the
17 estate. Genautica's offer for the Property is, and always has been, at a minimum, 50% higher than
18 Trio's.
19       Accordingly, the Court should vacate the Sale Order and the Amended Sale Order, and
20 reopen the bidding in the interests of justice and for the benefit of the estate.

## **CONCLUSION**

For the foregoing reasons, Genautica respectfully requests that the Court vacate the Sale Order and the Amended Sale Order, reopen the auction of the Property, and grant such other and further relief as the Court deems just and proper.

DATED: February 1, 2023      STRADLING YOCCA CARLSON & RAUTH, P.C.

By: */s/ Paul R Glassman*
Paul R. Glassman
Tatiana Ingman
Attorneys for Genautica Oil Holdings, LP

# PROOF OF SERVICE

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 10100 Santa Monica Blvd, Suite 1400, Los Angeles, CA 90067

A true and correct copy of the foregoing document NOTICE OF MOTION AND MOTION OF GENAUTICA OIL HOLDINGS, LP TO VACATE AMENDED ORDER will be served or was served (a) in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On February 2, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Leonard K. Welsh on behalf of Debtor  TEMBLOR PETROLEUM COMPANY, LLC
lwelsh@lkwelshlaw.com; nmarin@lkwelshlaw.com

D. Max Gardner on behalf of Trustee Jeffrey M. Vetter
jeffreyvetter@hotmail.com; CA97@ecfcbis.com

D. Max Gardner on behalf of Trustee Jeffrey M. Vetter
dmgardner@dmaxlaw.com

Office of the U.S. Trustee
ustpregion17.fr.ecf@usdoj.gov

D. Keith B. Dunnagan on behalf of Creditor  California Energy Exchange Corporation
kbdunnagan@bpelaw.com; sarahm@bpelaw.com

Leena M. Sheet on behalf of Creditor  California State Lands Commission
Leena.Sheet@doj.ca.gov

Donald C. Oldaker on behalf of Creditor  Eagle Petroleum Monterey, LLC
doldaker@clifford-brownlaw.com; kmharleston@clifford-brownlaw.com

Hyun Suk Choi on behalf of Creditor  Eagle Petroleum Monterey, LLC
hchoi@choiandpark.com; lkleist@choiandpark.com

Donald C. Oldaker on behalf of Creditor  Eagle Petroleum, LLC
doldaker@clifford-brownlaw.com; kmharleston@clifford-brownlaw.com

Hyun Suk Choi on behalf of Creditor  Eagle Petroleum, LLC
hchoi@choiandpark.com; lkleist@choiandpark.com

Hyun Suk Choi on behalf of Creditor  Hanwha Resources (USA) Corporation
hchoi@choiandpark.com; lkleist@choiandpark.com

Chris D. Kuhner on behalf of Creditor  Inproinvest, LLC
c.kuhner@kornfieldlaw.com

John J. Harris on behalf of Creditor  Kings County Development Limited
jharris@cassosparks.com; ldominguez@cassosparks.com

Thomas R. Phinney on behalf of Creditor  Paul Graham Drilling
tom@parkinsonphinney.com; allison@parkinsonphinney.com

Michael N. Mills on behalf of Creditor  Petro-Lud, Inc.
michael.mills@stoel.com; tammy.ross@stoel.com

Ashley Teesdale on behalf of Creditor  Primoris Build Own and Operate LLC

    ashley@ringstadlaw.com

    Paul R. Glassman on behalf of Interested Party  Genautica Oil Holdings, LP
    pglassman@stradlinglaw.com; cpesis@stradlinglaw.com

    Justin C. Valencia on behalf of U.S. Trustee Tracy Hope Davis
    justin.c.valencia@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:** On _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows:

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows:

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 2, 2023 | Christine Pesis | */s/ Christine Pesis* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |