1

2   STRADLING YOCCA CARLSON & RAUTH, P.C.
Paul R. Glassman (State Bar No. 76536)

3   Tatiana Ingman (State Bar No. 314284)
10100 Santa Monica Blvd., Suite 1400

4   Los Angeles, CA 90067
Telephone: (424) 214-7000

5   Facsimile: (424) 214-7010
E-mail: pglassman@stradlinglaw.com

6           tingman@stradlinglaw.com

7   Attorneys for Genautica Oil Holdings, LP

8

9

10

11            **UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF CALIFORNIA**

12

13   In re

14   TEMBLOR PETROLEUM COMPANY, LLC

15                              Debtor.

16

17

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| In re | Case No. 2020-11367 |
| TEMBLOR PETROLEUM COMPANY, LLC | Chapter 7 |
| Debtor. | Docket Control Number: PRG-3 |
| | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF GENAUTICA OIL HOLDINGS, LP'S AMENDED MOTION TO VACATE SALE ORDER, AS AMENDED** |
| | Hearing |
| | Date: June 14, 2023 |
| | Time: 1:30 p.m. |
| | Place: 2500 Tulare Street, Suite 2501 Fresno, CA 93721 |
| | Judge: Hon. Jennifer Niemann |

**MEMORANDUM OF POINTS OF AUTHORITIES**

Genautica Oil Holdings, LP ("Genautica") moves the Court to vacate its *Order on Motion to Sell Estate's Interest in Property Pursuant to 11 U.S.C Section 363(b) (Debtor's Working Interest Hangman Hollow Field, Monterey County, CA)* entered August 19, 2022 [Dkt. No. 432] (the "Sale Order") and *Amended Order on Motion to Sell Estate's Interest in Property Pursuant to 11 U.S.C. Section 363(b) (Debtor's Working Interest Hangman Hollow Field, Monterey County, CA)* [Dkt. 473] dated November 3, 2022 (the "Amended Order") pursuant to Rule 9024 of the Federal Rules of the Bankruptcy Procedure, and section 105(a) of title 11 of the United States Code §§ 101-1532 (the "Bankruptcy Code"). In support of its Motion, Genautica respectfully represents as follows:

**INTRODUCTION**

Genautica moves the Court to vacate the Sale Order, as amended, and reopen the auction held on August 10, 2022 of the Debtor's 24.22% interest (the "Property") in an oil field known as Hangman's Hollow (the "Project") because the Brokers' (defined below) mistakes and misstatements of fact impaired the sale process and tarnished its results.

First, the Brokers told the bidders that the Project was ready to produce oil, which is a material representation that the bidders relied on in submitting their bids. However, that representation was incorrect. Rather than being ready to produce oil, the Project has been stalled since 2018, and is many years and dollars away from producing.

Next, the only two bidders at auction were given different sale terms by the Trustee (defined below) and the Brokers. The procedures given to Genautica stated that the sale was "as is" and "subject to" the Debtor's liabilities. The procedures given to Prudent Resources ("Prudent"), did not. As a result, the two bidders bid on different, conflicting, material sale terms. The difference is especially material because the Project operator, Trio Petroleum LLC ("Trio") may assert substantial claims against the Property, which claims Genautica disputes.

When the bidders learned that the Project was in fact not ready to produce, but rather was stalled at the permitting stage, and Prudent learned that the Property was being sold subject to

Trio's purported claims against the Property, the bidders withdrew their bids. But rather than reopen the auction, the Trustee, believing he had no other option, moved to amend the Sale Order and award the Property to Trio, who in addition to being the operator of the Property was the stalking horse bidder. Trio did not bid at the auction; Trio's stalking horse bid is the lowest bid for the Property; Trio failed to obtain the necessary permits to let the Project proceed; Trio failed to disclose that the Project was stalled; Trio is asserting claims against the Property that Genautica believes are unfounded; and Trio asked CalGEM (defined below) to prioritize Trio's other projects over this one. Furthermore, in 2021, Trio told Genautica that the Project could deliver oil "tomorrow," which, as Genautica only recently learned, was not correct.

Genautica respectfully submits that when the mistakes and irregularities were discovered, the Trustee should have reopened the auction to submit the Property to fair and equitable competitive bidding for the benefit of the estate. Even after it withdrew its bid, Genautica remained and remains willing to purchase the Property for no less than 50% more than the stalking horse bid. By moving to amend the Sale Order and asking the Court to award the Property to Trio, the Trustee actually sought approval of the sale to the **lowest** bidder, and was manifestly not in the best interest of the estate.

Accordingly, pursuant to Federal Rule of Bankruptcy Procedure 9024 and the Court's inherent authority to modify its orders under section 105(a) of title 11 of the United States Code, Genautica respectfully requests that the Court vacate the Sale Order, as amended, on the grounds of mistake and to avoid manifest injustice because (i) the bidders were induced to overbid based on the Brokers' misstatements of fact (in which Trio is, at the very minimum, complicit); (ii) the bidders were bidding based on different, material, sales terms (namely whether or not the Property is free and clear of Trio's purported hundreds of thousands of dollars of claims); and (iii) the record is clear that a renewed auction of the Property would yield at least 50% more than Trio's stalking horse bid. Genautica respectfully requests that the Court reopen the auction so that the bidders can submit their bids in a fair and equitable process, for the benefit of the Debtor's estate.

## FACTUAL BACKGROUND

**General Background**

Debtor Temblor Petroleum Company, LLC's (the "Debtor") commenced this bankruptcy proceeding under chapter 11 of the Bankruptcy Code on April 4, 2020. On September 30, 2020, the Debtor employed Energy Advisors Group as brokers (the "Brokers") to assist in the sale of the Debtor's assets which included interests in several oil fields. On May 5, 2021, the case was converted to chapter 7 because the Debtor was unable to confirm a chapter 11 plan. Jeffrey M. Vetter was appointed chapter 7 trustee (the "Trustee") and proceeded, with the Brokers, to market the Debtor's assets for sale for the benefit of creditors.

**The Hangman Hollow Project**

The Debtor holds a 24.44% working interest in an oil field project referred to as Hangman Hollow. Trio is the operator of the Project and its largest working interest holder, holding 43%. See Declaration of Dan Scholefield ("Scholefield Decl.") filed concurrently herewith, ¶3. The Debtor is the second largest working interest holder, and Genautica is a working interest holder having purchased its 12.22% interest from both Trio and the Debtor (collectively) in 2013. Id. Acquisition of the Property would give Trio majority control of the Project. Id. at ¶4. In 2021, Trio's chairman told Genautica that the Project could start producing oil "tomorrow." Id. at ¶3.

**The Sale Process**

Prior to the sale hearing and auction, the Brokers marketed the Property for sale. Scholefield Decl. at ¶9. In the weeks leading up to the auction, Genautica had telephone calls with Wesley Adams ("Adams"), the representative of the Brokers handling the sale, regarding the status of the Project and conditions of the sale. During those conversations, it was represented that the Project was ready to produce oil. The Brokers' statements seemed to confirm what Trio told Genautica in 2021. Genautica was later told by Kris Pitta ("Pitta") of Prudent Resources that he had had similar conversations prior to the auction. The representation that the Project is ready to produce oil is crucial to the value of the Property, and Prudent and Genautica relied on this representation in formulating their bids at the auction. However, this representation is incorrect. Scholefield Decl. at ¶9.

The Brokers posted promotional materials on their website. Scholefield Decl. at ¶10. Consistent with the Brokers' statements that the property was ready to produce, the marketing materials were posted on the Brokers' website under the category "Producing Properties." Scholefield Decl. at ¶11; Scholefield Decl. Exh. C (Energy Advisors Group Promotional Materials downloaded October 8, 2021, the "2021 Marketing Materials").

In describing the Project, the 2021 Marketing Materials state:

> The Hangman Hollow field is currently idled pending final approval of steam injection. Temblor recently received aquifer exemption to enable steam flood injection. The estate highlights 4.0 million barrels of original oil in place and 2.0 mm barrels recoverable."

At the top of the first page, in a section entitled "Recent Updates (5/21/21)" the materials state "Hangman Hollow project just received steam injection permit." The marketing materials imply that the permit that awaited final approval was recently approved as of May 21, 2021. The information in the 2021 Marketing Materials further confirmed the Brokers' statement that the Project was ready to produce. Id. at ¶ 12; Scholefield Decl. Exh. C (2021 Marketing Materials).

**The Sale Motion**

On June 16, 2022, prompted by the Trustee's notice of intent to abandon the Debtor's interest in another oil field, Genautica wrote to the Trustee stating Genautica's interest in bidding on the Property. Scholefield Decl. at ¶5.

On July 13, 2022, the Trustee filed a motion (the "Sale Motion") [Dkt. 416] to sell the Debtor's 24.44% "Working Interest in Hangman Hollow Field, Monterey County, CA" (the "Working Interest") to Trio Petroleum LLC ("Trio") as stalking horse bidder for $10,000, subject to higher and better offers.

On August 2, 2022, Genautica submitted its $10,000 deposit to the Trustee. Scholefield Decl. at ¶6.

On August 10, 2022, the Court held an auction of the Property at which Trio was present, but did not bid. See Scholefield Decl. at ¶7; Scholefield Decl. Exh. A (Transcript of August 10, 2022 hearing).

5

1        On August 19, 2022, the Court entered the Sale Order [Dkt. 432] authorizing the sale of

2 the Property to Prudent (a third party) for $101,000, over ten times Trio's stalking horse bid, and

3 if Prudent was unable to complete the sale authorized therein within 30 days from the entry of the

4 Sale Order, the Trustee was authorized to sell the estate's interest to Genautica for $86,000, over

5 eight times Trio's stalking horse bid.

6 **Prudent and Genautica Learn that the Brokers Misstated**

7 **that the Property was Ready to Produce Oil.**

8        Genautica and Prudent bid at the August 10th auction based on the representations of the

9 Brokers that the Project was ready to produce oil, representations that we later learned were not

10 correct. Scholefield Decl. at ¶8. After the Sale Order was entered, however, Genautica came to

11 learn that the representation that Project was ready to produce oil was incorrect. Scholefield Decl.

12 at ¶13. The Project is not producing or ready to produce oil; rather the Project is presently

13 inoperable, the Project is likely one or more years away from being operable, and the Project will

14 require significant further investment before becoming operable and before required approvals can

15 be obtained. Id. In fact, Genautica has recently been advised by California Geologic Energy

16 Management ("CalGEM") which is one of several regulatory bodies governing oil and gas in

17 California, that comprehensive updates and reviews are required to reestablish Underground

18 Injection Control ("UIC") related permits and proceed with several essential components of the

19 Project including steam injection, oil and gas well production and storage, and proposed water

20 disposal. Id. Furthermore, Genautica was informed that Trio instructed CalGEM to put the Project

21 on the backburner and reassign its project review engineer to Trio's unrelated South Salinas

22 prospect. Scholefield Decl. at ¶30.

23        Additionally, the materials prepared by the Brokers were inaccurate and misleading.

24 Scholefield Decl. at ¶14. First, the representation that the Project was idled "pending final

25 approval of the steam injection permit" is inaccurate. Id. The Project was idled because of an

26 expensive, time-consuming permit updating and approval process involving the critical new water

27 disposal well "WD-2" application. Scholefield Decl. at ¶14.

28

1    Next, while it is true in that in 2019 Trio obtained a steam injection permit, as indicated in

2  an email dated September 13, 2022 from Pitta to the Trustee, in 2021, CalGEM provided written

3  notice to Trio that the Project would need to undergo Project Approval Letter ("PAL") review.

4  Scholefield Decl. at ¶15. Thus, the <u>injection permit was no longer current</u>. In other words, the

5  representation in the marketing materials that the Project was idled pending *final* review of the

6  injection permit was incorrect, the steam injection and/or water disposal permit needed to be

7  brought current. Id.; Scholefield Decl. Exh. D (September 13, 2022 Email from Kris Pitta to the

8  Trustee ("September 13 Email")).

9    Further, while the 2019 letter from CalGEM issuing the permit *was* provided to Prudent,

10  the 2021 letter saying the Project would need to undergo PAL review *was not* provided to them

11  until after the auction. Scholefield Decl. at ¶16; Scholefield Decl. Exh. D.

12    Finally, the representations in the marketing materials regarding the Debtor having

13  received necessary aquifer exempt UIC permits are also incorrect. Scholefield Decl. at ¶17.

14  Genautica only recently learned that the Project has been "on hold" by CalGEM since 2018

15  because the existing water disposal well is insufficient for the Project as planned. Id. In order to

16  secure approvals and permits required to proceed, an updated project approval application must be

17  submitted for approval and permitting to various governmental oversight agencies, none of which

18  has happened nor is it certain to happen. Id.

19    Notably, in September 2022, after the auction, the marketing materials were updated to

20  delete references to these permits and exemptions. Scholefield Decl. at ¶18.   The reference to the

21  Project being idled "pending final approval of steam injection" was deleted; and the reference to

22  "Temblor recently received aquifer exemption to enable steam flood injection" was also deleted.

23  *Compare* Scholefield Decl. Exhs. C and F (2022 Marketing Materials).

24    The 2021 Marketing Materials contain information, including graphs and charts, that is not

25  readily accessible to any entity other than Trio, as Operator of the Project. Scholefield Decl. ¶28.

26  The information in the marketing materials must have come from Trio as operator of the Project.

27  Id. Such information is unlikely to have come from any other source. Id.

28

1 　　　Trio never informed Genautica, nor was Genautica informed by the Brokers or Trustee,

2 that CalGEM put the water disposal well application on hold together with the entire PAL, or of

3 any of the other challenges facing the Project, all of which was never disclosed by Trio.

4 Scholefield Decl. at ¶29.

5 **The Bidders Submit Bids Based on Conflicting Terms of Sale**

6 　　　During and after the auction, it became apparent that the Brokers were mistaken and

7 confused about whether and to what extent Trio would assert claims against the Property.

8 Scholefield Decl. at ¶19. As a result, the Trustee and Brokers provided the bidders with materially

9 different terms of the sale, and the bidders bid at auction based on different terms.  Id. If for no

10 other reason, the sale should be set aside due to the fact that the only two bidders competing in the

11 auction were given different sets of bid instructions by the Brokers and Trustee; an auction was

12 conducted in which bidders unknowingly were not bidding on the same terms, conditions, and/or

13 assets. Id.

14 　　　The Sale Motion states that the sale is to be "as is" and "subject to" charges attributed to

15 the Debtor's share of the joint interest liabilities. Sale Motion ¶¶4(d), 6(i). The *Notice of Hearing*

16 *on Motion to Sell Estate's Interest in Property Pursuant to 11 U.S.C. Section 363(b) (Debtor's*

17 *Working Interest in Hangman Hallow Field Monterey County, CA)* (the "Sale Hearing Notice")

18 [Dkt. 417], did not attach the Sale Motion, but described the terms of the sale. The Sale Hearing

19 Notice included the procedures set forth in subparagraphs 6(a) through 6(h) of the Sale Motion but

20 omitted subparagraph 6(i) stating that the sale was "as is". The Sale Hearing Notice contained no

21 indication otherwise that the property was being sold "as is" and omitted any reference to the sale

22 being "subject to" any interest or liabilities.

23 　　　Thus, Adams represented to Genautica numerous times before and after the auction that

24 Trio's claims would be extinguished or otherwise cut off against the buyer by the sale in the

25 bankruptcy case. Scholefield Decl. at ¶20. Later, Genautica learned that the Adams had made the

26 same representations to Prudent and that as a result, at the auction Prudent was bidding for the

27 Property believing the Property would be transferred free and clear of Trio's purported interests.

28 Id.

1      On August 17, 2022, after the auction, Genautica received a phone call from Adams in

2  which Adams said that Prudent was upset that it was being asked to pay the Debtor's prior

3  outstanding liabilities. Scholefield Decl. at ¶21. During the call, Scholefield stated that the

4  bankruptcy papers said that the liabilities were included in the terms of sale, but the Broker

5  disagreed. Id.  Accordingly, Scholefield sent Adams the Sale Motion, *the Declaration of Jeffrey*

6  *M. Vetter in Support of Motion to Sell Estate's Interest in Property Pursuant to 11 U.S.C. Section*

7  *363(b) (Debtor's Working Interest Hangman Hollow Field, Monterey County, CA)* (the

8  "Declaration") and the *Exhibit to Motion to Sell Estate's Interest in Property Pursuant to 11 U.S.C.*

9  *Section 363(b) (Debtor's Working Interest Hangman Hollow Field, Monterey, [sic] County, CA*)

10  (the "Exhibit") [Dkts, 416, 418, and 419] which had been sent to him (Scholefield) by the Trustee.

11  Scholefield Decl. at ¶21; Scholefield Decl. Exh. G (August 17, 2022 Email exchange between

12  Scholefield and Adams without attachments).  In response, Adams sent Scholefield the Notice of

13  Hearing, Dkt. 417, which had been sent to him by the Trustee, and he stated that he had not seen

14  the other documents. Id.

15      Adams told Scholefield that he relied on the Notice of Hearing which omitted any reference

16  to the sale being subject to any other claims or interests, and that as a result, he believed that the

17  sale would extinguish Trio's claim against the Debtor's working interest which would stay with

18  the estate. Scholefield Decl. at ¶22.  Adams provided the Notice of Hearing to Prudent, namely

19  Dkt. 417. Id.

20  **Prudent Bids Up The Property And Then Withdraws From The Bidding**

21      Relying on the misstatements to Prudent both as to the condition of the property and as to

22  Prudent's potential for liability to Trio, Prudent bid up the Property to $101,000, 10 times Trio's

23  stalking horse bid. Scholefield Decl. at ¶23.[1]  After the auction, Prudent learned that not only was

24  the information about the permitting and status of the Project incorrect, but also that Trio would

25

26  [1] Notably, Trio's stalking horse bid was supported by only a $2,000 deposit, while the other

27  bidders were required to post a deposit of $10,000. According to Trio's letter dated June 15, 2022, after a multi – year marketing process, Trio purportedly made its offer to purchase the

28  Debtor's interest in the Project just one day before Genautica made its offer to purchase the interest to the Trustee.  [Compare Exhibit, Dkt. 419 *with* Exh. G, pgs. 4-5].

1  claim that Prudent would potentially be charged with the Debtor's pre-petition liabilities, despite

2  the representations the bidders received to the contrary. Scholefield Decl. at ¶24. Ultimately,

3  Prudent pulled out of the sale. Scholefield Decl. at ¶21, 24, and Scholefield Decl. Exh. D

4  (September 13 Email). Had Prudent known of the true facts, it likely would not have participated

5  in the auction. Id.

6  **Genautica Withdraws Its Auction Bid But States That It Is Willing To Continue With Its**

7  **Purchase.**

8       Had Prudent not participated in the auction, Genautica's opening bid at $15,000 would

9  have been the highest bid. Scholefield Decl. at ¶24. Genautica is still interested in acquiring the

10  Property, even though the true facts revealed that the Property was worth substantially less than

11  previously thought. Id. at ¶25. Genautica offered to revise its bid to its opening bid amount

12  ($15,000) and immediately close the transaction. Genautica remains willing to purchase the

13  Property for $15,000 or to participate in a new auction for the purchase of the Property. Id.

14  **The Trustee Moves Ex Parte to Amend the Sale Order to Authorize Sale to Trio, the Lowest**

15  **Bidder**

16       Without addressing the issues raised regarding the conditions of the sale, on November 3,

17  2022, at 1:53 p.m., the Trustee filed the *Motion to Amend Order on Motion to Sell Estate's Interest*

18  *in Property Pursuant to 11 U.S.C. Section 363(b)* [Dkt. 470] (the "Motion to Amend"). Contrary

19  to rule 9014-1 of the Local Bankruptcy Rules of the Eastern District of California, the Motion to

20  Amend was not set for hearing, there was no notice provided and no opportunity to object. There

21  was no exigency, no motion for shortened notice, no procedural safeguards. The Court was not

22  advised of the allegations of misstatements of fact by the Brokers, and that the Trustee received an

23  offer to purchase the Property for $15,000 from Genautica, 50% more than Trio's stalking horse

24  bid. At 2:28 p.m. <u>the same day</u>, the Court entered an order granting the Motion to Amend [Dkt.

25  473] (the "Amended Order"). At 3:54 p.m. the Motion to Amend was served on Genautica.

26  Scholefield Decl. ¶26.

27

28

**Genautica Vehemently Objects to the Ex Parte Motion, Appeals from the Ex Parte Order, and Engages the Trustee in Negotiations**

The following day, November 4, Genautica wrote to the Trustee objecting to the relief sought in the Motion to Amend and reiterating its willingness to purchase the Property for $15,000. Scholefield Decl. at ¶26. Nevertheless, on November 14, 2022 prior to the expiration of the 14-day stay period under Rule 6004(h), the Trustee filed its *Amended Return on Sale* [Dkt. 478] reporting that the Property had been sold to Trio for $10,000, notice having been mailed to creditors and no objections having been received. However, as the Trustee advised the Court at the December 14, 2022 hearing, and has since confirmed to Genautica, the sale to Trio has not been consummated. On November 17, 2022, Genautica filed a Notice of Appeal of the Amended Order [Dkt. 481]. The schedule for briefing of the appeal was extended by the district court to allow for resolution of this Motion. [See District Ct. Case No. 22-1507, Dkt. 4, 5 and 7].

At the December 14 hearing on the Trustee's motion to abandon a different property, the Trustee indicated that he would consider filing a motion for relief from the Sale Order and putting the Debtor's interest in the Project back up for bid. Approximately two weeks ago, the Trustee advised Genautica that he had decided not to file a motion for relief from the Sale Order. However, the Trustee also made clear that he had no objection to Genautica filing such a motion and did not intend to take a position on the motion, subject to the need to correct the record in any respect.[2]

**Trio's Role**

As a result of the entry of the Amended Order, the Trustee proposes to sell the Debtor's interest in the Project to Trio. As the Operator of the Project, only Trio knew the true status of the Project, and the problems with the Project. Yet, Trio apparently failed to disclose these conditions to the Trustee. Indeed, Trio never informed Genautica, who, like the Debtor is a holder of a working-interest in the Project, and who has already significantly invested in this Project, that CalGEM put the water disposal well application on hold together with the entire PAL, or of any of the other challenges facing the Project, all of which was concealed by Trio. Scholefield Decl. at ¶29.

---

[2] The Trustee also agreed to hold off consummating the sale while this motion is being resolved.

1    In effect, Trio's silence regarding the representations in the marketing materials, caused

2 the parties to bid up the auction price which Trio thought would result in payment of its claims.

3 When the bidders discovered the true facts and failed to close on the purchase, Trio was awarded

4 the Property, giving itself a majority interest in the Project. This marred the sale process and left

5 the estate with less than it could get in a full and fair process.  This result is contrary to the letter

6 and spirit of the Bankruptcy Code and applicable federal and local rules of procedure and should

7 not be countenanced.

8                                          **JURISDICTION**

9    This court has jurisdiction over this motion pursuant to 28 USC §§ 1334 and 157 and

10 Federal Rule of Bankruptcy Procedure 8008.

11                                          **ARGUMENT**

12    The Sale Order and Amended Order should be vacated pursuant to Federal Rule of Civil

13 Procedure 60, made applicable in bankruptcy by Rule 9024.  Rule 60(b) permits a bankruptcy court

14 to grant relief from a final judgment, order, or proceeding on six separate grounds, including, in

15 pertinent part, "(1) mistake, inadvertence, surprise, or excusable neglect"; and "(6) any other

16 reason that justifies relief." A Civil Rule 60(b) motion must be made "within a reasonable time."

17 Fed. R. Civ. P. 60(c). Civil Rule 60(b)(6) is to be liberally applied to accomplish justice. *Zurich*

18 *Am. Ins. Co. v. Int'l Fibercom, Inc. (In re Int'l Fibercom, Inc.),* 503 F.3d 933, 941 (9th Cir. 2007).

19    This motion was brought within a reasonable time because the sale to Trio has not closed,

20 and the Trustee has confirmed that he will not close the sale pending outcome of this motion, and

21 the parties investigated the facts and attempted informal resolution before turning to the Court.

22    Granting the requested relief is amply justified on the basis of mistake.

23    An auction in which the bidders bid based on material misstatements of fact, and on the

24 basis of conflicting terms and conditions of sale, is the tarnished opposite of the orderly sales

25 process envisioned by section 363 of the Bankruptcy Code. It is axiomatic that representations, if

26 made, must be true, and that bidders must bid on the same property and on same terms and

27 conditions. The auction process here did not meet those standards, and Genautica respectfully

28 submits that correcting of this kind of situation is precisely what Rule 60 is intended to accomplish.

1      On the other hand, leaving the Sale Order, as amended, in place is manifestly unjust.  The

2   Sale Order, as amended, rewards Trio for submitting the lowest bid, not participating at the auction,

3   not disclosing the true facts about the Project's permitting, or lack thereof. *See Redus Fla.*

4   *Commercial, LLC v. Coll. Station Retail Ctr., LLC*, 777 F.3d 1187, 1194 n.14 (11th Cir. 2014)

5   ("Although 'equity will not set aside a sale for mere inadequacy of price, it will do so if the

6   inadequacy is so great as to shock the conscience or if there are additional circumstances against

7   its fairness. . .'") (*quoting Gelfert v. Nat'l City Bank of N.Y.*, 313 U.S. 221 (1941)).

8      The injustice was compounded by the manner in which the Motion to Amend was filed, in

9   violation of the local rules of this court, without an opportunity to be heard, and in the absence of

10  any attenuating circumstances justifying the haste.  *See In re Fisker Auto Holdings, Inc.,* 510 B.R.

11  55, 60 (Bankr. D. 2014)( secured lender precluded from credit bidding for cause under section

12  363(k), because, among other things the sale was being conducted with haste that was not justified

13  under the circumstances and that did not allow time to discover the true facts).

14     Finally, the injustice is even further magnified because the result is detrimental to the

15  estate. Genautica's offer for the Property is, and always has been, at a minimum, 50% higher than

16  Trio's.

17     Accordingly, the Court should vacate the Sale Order and the Amended Sale Order, and

18  reopen the bidding in the interests of justice and for the benefit of the estate.

19

20

21

22

23

24

25

26

27

28

## **CONCLUSION**

For the foregoing reasons, Genautica respectfully requests that the Court vacate the Sale Order and the Amended Sale Order, reopen the auction of the Property, and grant such other and further relief as the Court deems just and proper.

DATED:  May 16, 2023                    STRADLING YOCCA CARLSON & RAUTH, P.C.


                                        By:    */s/ Paul R. Glassman*
                                               Paul R. Glassman
                                               Tatiana Ingman
                                               Attorneys for Genautica Oil Holdings, LP