1  Michael J. Gomez (State Bar No. 251571)
   mgomez@frandzel.com
2  Gerrick M. Warrington (State Bar No. 294890)
   gwarrington@frandzel.com
3  FRANDZEL ROBINS BLOOM & CSATO, L.C.
   1000 Wilshire Boulevard
4  Nineteenth Floor
   Los Angeles, California  90017-2427
5  Telephone: (323) 852-1000
   Facsimile: (323) 651-2577
6
   Attorneys for Creditor
7  TRIO PETROLEUM, LLC

8

9  **UNITED STATES BANKRUPTCY COURT**

10  **EASTERN DISTRICT OF CALIFORNIA**

11  **FRESNO DIVISION**

12

13  In re

   TEMBLOR PETROLEUM COMPANY,
14  LLC,

15        Debtor.

16

17

18

19

20

21

22

CASE No. 2020-11367

Chapter 7

DCN: PRG-3

**TRIO PETROLEUM, LLC'S
STATEMENT OF POSITION ON
AMENDED MOTION OF GENAUTICA
OIL HOLDINGS, LP TO VACATE SALE
ORDER, AS AMENDED**

Date:    June 14, 2023
Time:   1:30 p.m.
Place:   Courtroom 11, Dept. A
        2500 Tulare Street, Fifth Floor
        Fresno, CA 93721

Judge:   Hon. Jennifer Niemann

23

24

25

26

27

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1 **TO THE HONORABLE JENNIFER E. NIEMANN, UNITED STATES**

2 **BANKRUPTCY JUDGE:**

3      Trio Petroleum, LLC ("Trio"), a creditor in the chapter 7 bankruptcy of Temblor

4 Petroleum Company, LLC (the "Debtor"), hereby respectfully submits this Statement of Position

5 on the *Amended Motion of Genautica Oil Hol*dings, LP to Vacate Sale Order, as Amended (Dkt.

6 518) ("Motion") filed by Genautica Oil Holdings, LP ("GOHo").

7

## I.     Introduction

9      This is the second attempt to upset a sale by a backtracking bidder. Unhappy with its bid

10 and seeing that the successful overbidder is not going to close, this bidder wants to trade the

11 $86,000 purchase price it originally promised in the heat of an auction and under the threat of

12 impending loss for a discounted $15,000.[1] The backtracking bidder wants to restart a sale *after* it

13 failed to close despite being given the opportunity to do so; *after* it has heard all of the other bids

14 following a lengthy marketing process and going through the rigors of an auction; and *after* the

15 winning overbidder—the competition that bid up the price—has disappeared.

16      And this backtracking bidder knows the asset well. For years this bidder has held an

17 interest in the very same oilfield it tried to acquire another share of. It has seen the ups and downs

18 of this oilfield. Further, it appears the principal of the bidder has been an interest-holder in the

19 Debtor as well. For this bidder to claim it was misled as to the status of the oilfield smacks of

20 disingenuousness.

21      The quality of the evidence submitted in support of the Motion supports this conclusion. It

22 is riddled with hearsay and lacks foundation. There is practically nothing supporting the Motion.

23 The fact is that the oilfield has the requisite permits and the reneging bidders had no valid reason

24 for not completing the sale. Accordingly, the Motion should be denied.

25

26

27       [1] Trio disputes the argument that GOHo could acquire the Debtor's interest in the oilfield

28 without taking on the Debtor's obligations to Trio.

4931698v1 | 101458-0001

2

STATEMENT OF POSITION

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

## II.　Factual Background

### A.　Procedural History

On April 9, 2020, the Debtor filed a petition for relief under chapter 11.  With its petition, the Debtor included its Bankruptcy Schedules and Statement of Financial Affairs ("SoFA").  At question 26 of the SoFA, the Debtor provided a list of its equity-interest holders, attached as Exhibit 1 to the end of the SoFA.

Among the equity-holders listed are Daniel B. Scholefield of Agoura Hills, California; the "Scholefield Fam Trust" of the same street address in Agoura Hills, California; the "Charles B. Scoville JR. Trust" of the same address; the "Scholefield Educ Trust" also of the same address; and the "Temblor Scholefield Gen Ptrshp" also of the same address (Dkt. 1).[2]  GOHo holds an interest in the same oilfield the Debtor does.  (Dkt. 520, ¶ 3.)

On May 5, 2021, the Court converted the Debtor's bankruptcy case to chapter 7.

### B.　The Sale

On July 13, 2022, the Chapter 7 Trustee filed a motion to sell the estate's working interest in the oilfield known as Hangman Hollow.  The sale was in an "'as-is condition with no warranty or representations, express, implied, or otherwise by the bankruptcy estate, **the Debtor or its representatives, the Trustee, or his representatives**." (Vetter Decl., Dkt. 418, ¶ 6.i.)  (Emphasis added.)[3,4]  Indeed, the terms of the sale were "as-is" and "subject to any [sic] all liens, encumbrances, charges, taxes, fees, and delinquencies attributed to the Debtor's share of joint interest liabilities." (Sale motion, Dkt. 416, ¶ 4.d.)  Any successful overbid would have its deposit applied to the overbid price.  (Vetter Decl., Dkt. 418, ¶ 6.d.)

---

[2] Trio has not conducted discovery yet to confirm that all of these trusts and the entity are related to GOHo's principal, Daniel B. Scholefield.

[3] The sale motion contained the same disclosure.  (Dkt. 416, p. 4,  ¶ 6.i.)

[4] The civil minutes from the hearing reflect that the sale was "'as-is' and subject to any and all liens, encumbrances, charges, taxes, fees, and delinquencies attributed to the Debtor's share of Hangman Hollow Field joint interest liabilities."  The minutes reflect that the Court authorized the sale to Trio too.  (Dkt. 431.)

4931698v1 | 101458-0001

STATEMENT OF POSITION

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1       For a year, the Chapter 7 Trustee marketed the project to various parties, but received no

2 interest. (*Id.* at ¶ 8.) In fact, the Court authorized the employment of the broker for this project as

3 far back as October, 2020. (Dkt. 175.) As of June, 2022 though, the Trustee was prepared to

4 abandon the Debtor's interest in the field. (Dkt. 408.)

5       The sale motion required written opposition in advance of the hearing. (Dkt. 417.) There

6 was no written opposition to the motion. On August 10, 2022, the Court held the sale hearing.

7 Prudent Resources LLC prevailed at the auction with a winning bid of $101,000. GOHo was the

8 back-up bidder with a bid of $86,000. The sale order was entered on August 19, 2022. (Dkt.

9 432.)[5]

10       Astonishingly, in the middle of bidding with overbids flying, Mr. Scholefield broke the

11 action to seek clarification as to the liabilities to be assumed before placing a higher bid, and asked

12 for a continuance. (Dkt. 521, Exh. A, p. 13-14.) Though no clarification was provided and the

13 auction continued at the request of the Chapter 7 Trustee, GOHo continued bidding. (*Id.*)

14       After providing more than the 30 days set forth in the sale motion to close the sale, by

15 November 3, 2022, both bidders had defaulted and the Chapter 7 Trustee moved to amend the sale

16 order to authorize the sale to the original stalking horse bidder, Trio. According to the Trustee, in

17 refusing to close, the bidders expressed "unawareness of pre-existing liens and encumbrances

18 against the property." (Vetter Decl., Dkt. 471, ¶ 4.)[6] That same day, the Court entered an

19 amended order authorizing the sale to Trio. (Dkt. 473.) And on November 14, 2022, the Trustee

20 reported that he sold the asset to Trio. (Dkt. 478.)

21       On November 17, 2022, GOHo, which has not timely filed a proof of claim or is listed in

22 the Bankruptcy Schedules as a creditor and which is not an equity-holder in the Debtor, appealed

23 the sale order, as amended. (Dkt. 481.) Among the issues on appeal, GOHo contends the Court

24 erred because "selling the property to the lowest bidder was neither an exercise of the trustee's

25 _____

26       [5] As reported by the Trustee, this was an unexpected, lively auction "where the price to be
paid went up dramatically." (Dkt. 470, p.2:2.)

27

28       [6] This reason for refusing to close the sale was emphasized again by the Chapter 7 Trustee
in his status report dated December 7, 2022. (Dkt. 493, ¶ 1.a., p. 2:3-5.)

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1    reasonable business judgment nor in the best interest of the estate."  (Dkt. 490, Statement of Issues

2    on Appeal.)

3          Over two months later after filing its appeal, on February 1, 2023, GOHo filed an earlier

4    version of the Motion which is nearly identical to the Motion.  (Dkt. 500.)

5          **C.      The Documentary Evidence In Support of the Motion**

6          Putting aside the Declaration of Mr. Scholefield, the Motion has seven exhibits in support

7    of it: (1) four versions of marketing materials, which Trio knows nothing about (*see* Rowlee

8    Declaration); (2) a transcript of the sale hearing; and (3) two email chains, one last dated August

9    17, 2022 and another last dated September 13, 2022.[7]

10         The September 13, 2022 email chain contains an email from a Kris Pitta and based on the

11   contents of that email, GOHo contends the content shows there was a misrepresentation in the sale

12   process as to the status of the project's permit.  Mr. Scholefield was copied on that email on

13   September 13, 2023.

14         The August 17, 2022 email chain is actually an email chain that stretches back to June 16,

15   2022.  According to the August 1, 2022 email attached to the chain Mr. Scholefield received all of

16   the sale motion documents, *i.e.*, the motion, the notice, the supporting declaration, and the

17   exhibits.  Hence, GOHo itself knew the sale was subject to liens, claims, and interests, and it knew

18   this was an "as-is" sale.

19         With respect to the marketing materials, the Scholefield declaration indicates the 2021

20   marketing materials were obtained on October 8, 2021.  (Dkt. 520, ¶ 10.)  Mr. Scholefield is rather

21   vague as to when in September, 2022, he obtained the 2022 marketing materials.  (*Id.* at ¶ 16.)

22         **D.      The Scholefield Declaration**

23         As with the 2022 marketing materials, Mr. Scholefield's declaration is remarkably unclear

24   as to dates and times when events occur.  Mr. Scholefield does reference an August 17, 2022 call

25

26         [7] There are several evidentiary objections to this declaration and the applicable exhibits
27   which the declaration seeks to authenticate should be stricken from the record if the objections are
     sustained.  The reference to the contents of the exhibits or the Scholefield declaration here is not
28   meant to confer them with any validity or to otherwise introduce them as evidence.

4931698v1 | 101458-0001                          5

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1    with the Debtor's broker, a certain Mr. Adams, and apparently all of the discussions with Mr.

2    Adams occurred on that day that did not occur prior to the auction. That seems to be when he

3    learned of various matters. However, the timing of the events described is hopelessly vague (*e.g.*,

4    "After the auction" ¶ 24, "I recently was informed" ¶ 30, "before and after the auction" and

5    "Later" ¶ 20, "only recently" ¶ 17, "recently been advised" ¶ 13, "later told by Kris Pitta" ¶ 9,

6    *etc*.). No specificity is provided as to just when exactly "after," recently," and "later" transpired.

7          **E.**      **Trio's Position**

8          Trio is largely filing this because there are a number of misstatements and inaccuracies in

9    Mr. Scholefield's declaration. Much of it, though not admissible evidence, casts aspersions on

10   Trio. To be clear, Trio did not collaborate with the Chapter 7 Trustee regarding the marketing of

11   Hangman Hollow. (Rowlee Declaration.) Further, most of the Mr. Scholefield's declaration is

12   based on the premise that Hangman Hollow does not have approvals to produce oil. That too is

13   inaccurate. (Eschner Declaration.) Despite the inaccuracies, Trio holds no ill will towards GOHo

14   and hopes that as a working-interest holder in the project it will resume shouldering its

15   obligations.

16

17   **III.**     **Argument**

18          **A.**      **The Motion is One to Set Aside the Judgment for Newly Discovered Evidence**

19              **and Must be Denied**

20          It is hornbook law that a motion to vacate a judgment based on newly discovered evidence

21   must be brought under Rule 60(b)(2), not the catch-all 60(b)(6).[8]   Fed. R. Civ. P., Rule 60(b)(2);

22   *Feature Realty, Inc. v. City of Spokane*, 331 F.3d 1082 (9th Cir. 2003) (explaining Rule 60(b)(2)

23   elements); *Liljeberg v. Health Serv. Acquisition Corp.*, 486 U.S. 847, 863 (1988) (Rule 60(b)(6)

24   motion must be based on grounds other than those set forth in subsections (b)(1) through (b)(5));

25   *Molloy v. Wilson*, 878 F.2d 313, 316 (9th Cir. 1989) (same).

26

27          [8] Citations to the Federal Rules of Civil Procedure include their Federal Rules of
Bankruptcy Procedure counterparts, such as Bankruptcy Rule 9024 for Civil Rule 60. The Civil

28   Rules are referred to exclusively for purposes of brevity.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1    Here, GOHo presented its Motion exclusively under Rule 60(b)(6).  (Dkt. 522, p. 12:16-18

2  [citing Rule 60(b)(6) and only one case which was decided under 60(b)(6), and not analyzing or

3  mentioning 60(b)(2) at all – no other grounds analyzed or presented].)  The Motion therefore does

4  not seek relief under Rule 60(b)(2) and should be denied on that basis.

5    Regardless, any motion under Rule 60(b) must be brought within a reasonable time.    Fed.

6  R. Civ. P., Rule 60(c)(1); *In re Pac. Far East Lines, Inc.*, 889 F.2d 242, 249 (9th Cir. 1989).

7  GOHo did not present any evidence or any explanation as to why it delayed in filing the Motion.

8  Further, from the submissions, it appears that all of the information was available to GOHo prior

9  to the Court entering the amended sale order.  Yet, GOHo did not move for rehearing or to reopen

10  the evidence.  In the meantime, according to the Chapter 7 Trustee, this asset has been sold (Dkt.

11  478) and to its prejudice, Trio continues to incur costs for the project.  Instead of moving for

12  rehearing or to reopen the evidence, GOHo appealed and only belatedly settled upon this collateral

13  attack tactic over two months later.  This scheme should not be rewarded.

14    **B.    The Elements for Rule 60(b)(6) Have Not Been Met**

15    Rule 60(b)(6) is to be used sparingly and only where extraordinary circumstances

16  prevented the party from taking action in a timely manner.  *Fantasyland Video, Inc. v. County of*

17  *San Diego*, 505 F.3d 996, 1005 (9th Cir. 2007).  The court itself must provide "an explicit

18  determination . . . that the circumstances are . . . extraordinary or exceptional" and how the

19  evidence supports the determination.  *Ford Motor Co. v. Mustangs Unlimited, Inc.*, 487 F.3d 465,

20  470 (6th Cir. 2007).

21    There is little admissible evidence to support the Motion.  It largely consists of hearsay and

22  lay opinion masquerading as expert opinion.  Moreover, GOHo which is a direct interest holder in

23  the oilfield and whose principal, Mr. Scholefield, has a direct and potential several indirect

24  interests in the Debtor, is one of the parties with the most access to information on Hangman

25  Hollow.[9]

26

27    ────────────────
    [9] Trio has not yet conducted any discovery as to what GOHo knew and when it knew it;
28  what documents it obtained, whom it spoke with, and when it all occurred.

4931698v1 | 101458-0001                          7
                              STATEMENT OF POSITION

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1      As Mr. Scholefield admits, he has been stalking this asset since at least October 2021,

2 when he first downloaded the Debtor's broker's materials. Putting aside GOHo and Mr.

3 Scholefield's prior knowledge, that means GOHo had about a year before the sale to conduct its

4 due diligence. Further, despite any confusion about sale terms, GOHo decided to proceed with the

5 auction, even going so far as to interrupt the bidding to seek clarification—which it was not given

6 _and it still continued bidding_. In that vein, GOHo admits it received all of the sale materials. It

7 admits it knew this was an "as-is" sale with no representations made. But, strangely enough,

8 GOHo now contends certain misrepresentations were made to it. "[E]xtraorindary circumstances

9 rarely exist when a party seeks relief from a judgment that resulted from the party's deliberate

10 choices." *Budget Blinds, Inc. v. White*, 536 F.3d 244, 255 (3rd Cir. 2008). GOHo knew it did not

11 have all of the information and that there were no representations being made, but it decided to

12 proceed with the sale. At this late stage and now that it does not like the price, GOHo should not

13 be permitted to change the terms of the sale.[10] There is nothing extraordinary at all about a

14 backtracking bidder.

15      Additionally, the only two arguments advanced in the Motion are that there was an

16 inadequacy of price due to the sale ending for $10,000 (Dkt. 522, p.13:1-7) and that there was no

17 opportunity to be heard because the sale order was amended so quickly. (*Id.* at p. 13:8-13.) These

18 arguments have a number of holes to them.

19      First, the inadequacy of price asserted here is based on a whopping potential overbid of

20 $5,000. That is not any kind of windfall for the estate. The estate has likely incurred more costs

21 in excess of $5,000 dealing with GOHo's appeal and the Motion. Running a new sale will only

22

23      [10] Much of what Mr. Scholefield testifies to is about potential harm visited upon Prudent

24 Resources LLC. (*E.g.*, Dkt. 520, ¶ 23.) However, this is sheer speculation and it goes without saying that GOHo has no standing to assert any claims on behalf of Prudent Resources LLC,

25 constitutional, statutory, prudent, or otherwise. *Warth v. Seldin*, 422 U.S. 490 (1975) (a "plaintiff must generally assert his own legal rights and interests, and cannot rest his claim to relief on the

26 legal rights or interests of third parties."); *see also Casillas v. Madison Avenue Assocs., Inc.*, 926

27 F.3d 329, 332 (7th Cir. 2019) ("Article III grants federal courts the power to redress harms that defendants cause **plaintiffs**, not a freewheeling power to hold defendants accountable for legal

28 infractions.") (Emphasis added.)

1    add to those costs to the detriment of creditors.

2         Second, the argument fails to consider that anyone who takes on the estate's interest will

3    have to pay the claims and costs associated with it, Trio's bid eliminated those expenses to the

4    estate, and GOHo did not absolutely nothing to analyze this issue.

5         Third, the Court has the absolute authority to correct clerical errors to its orders.  Fed. R.

6    Civ. P., Rule 60(a).  The Court can change the order sua sponte, without notice.  *Garamendi v.*

7    *Henin*, 683 F.3d 1069, 1077-81 (9th Cir. 2012).  The sale motion prayed to sell the working-

8    interest in the field to Trio.  The Court's minutes reflect that it meant to include Trio in the sale

9    order.  There is nothing untoward or procedurally unusual about the Court correcting that

10   oversight immediately.

            **C.      Factual Dispute – Evidentiary Hearing Required**

11        If the Court were to consider the Scholefield Declaration, as it can see from the Eschner

12   Declaration, there is a substantive factual dispute as to the state of the project.  Based on that

13   alone, the Court cannot resolve the matter on merely the declarations and should conduct an

14   evidentiary hearing if it believes there is a material factual dispute.  *See In re Caviatta Attached*

15   *Homes, LLC*, 481 B.R. 34, 45-46 (B.A.P. 9th Cir. 2012) (court may decide dispute without

16   evidentiary hearing only if the parties stipulate or where there are no disputed material factual

17   issues).

18

19   **IV.    Conclusion**

20        For the foregoing reasons, the Motion must be denied.

21   DATED: May 31, 2023              FRANDZEL ROBINS BLOOM & CSATO, L.C.
                                      MICHAEL J. GOMEZ
22                                    GERRICK M. WARRINGTON

23

24

25                                    By:   /s/ Michael J. Gomez
                                            MICHAEL J. GOMEZ
26                                          Attorneys for Creditor
                                            TRIO PETROLEUM, LLC
27

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000